IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL PUBLIC RADIO, INC., *et al.* <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> *Defendants*. | Case No. 25-cv-1674-RDM |

**REPLY IN SUPPORT OF NATIONAL PUBLIC RADIO, INC.'S MOTION FOR A TEMPORARY RESTRAINING ORDER**

Miguel A. Estrada (D.D.C. Bar No. 456289)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504

Theodore J. Boutrous, Jr. (D.D.C. Bar No. 420440)
Katie Townsend (D.C. Bar No. 1026115)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197

Elizabeth A. Allen (*Admitted Pro Hac Vice*)
NATIONAL PUBLIC RADIO, INC.
1111 North Capitol Street, NE
Washington, D.C. 20002

*Counsel for Plaintiff*
*National Public Radio, Inc.*

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................................. 1

ARGUMENT .................................................................................................................................... 2

    I.    CPB Is Enforcing Executive Order 14290 and Should Be Enjoined from Doing So ................................................................................................................. 2

    II.    The Public Broadcasting Act Independently Entitles NPR to Injunctive Relief ...................................................................................................................... 5

        A.    The Act Requires CPB to Distribute Satellite Interconnection Funds to NPR ............................................................................................ 5

        B.    NPR Has an *Ultra Vires* Cause of Action to Enforce the Act .................... 9

    III.    NPR Will Suffer Irreparable Harm Absent Emergency Relief .............................. 9

CONCLUSION .............................................................................................................................. 10

**INTRODUCTION**

In a misguided attempt to appease a President bent on retribution, the Corporation for Public Broadcasting (CPB) is poised to violate both the First Amendment principles that it was entrusted to promote and the very law that gives rise to its existence.

CPB does not contest that it abruptly reneged on its commitment to provide NPR funding to manage and operate the Public Radio Satellite System (PRSS), as it is required to do by law. Its claims that its actions are anything other than enforcement of the President's unlawful May 1, 2025 Executive Order and the pressure campaign that accompanied it are facially implausible. At best, CPB can show that it began capitulating to that pressure before the Order was formally issued. But the Order sealed NPR's fate and hardened CPB's resolve to deprive it of PRSS funding.

CPB's intent to provide this funding to a new entity that is not legally permitted to receive it only further confirms that it is acting pursuant to the Order. The Public Broadcasting Act (PBA) could not be clearer: CPB must distribute satellite interconnection funding either to those public telecommunications entities participating in the PRSS or to "the national entity they designate for satellite interconnection purposes." 47 U.S.C. § 396(k)(10)(D)(i). That "national entity" is NPR, and CPB has no authority to transfer tens of millions of dollars at the eleventh hour to a new entity that does not meet the statutory criteria. There is no plausible explanation for CPB's actions, other than as a last-ditch attempt to carry out the President's desire to defund NPR and thereby curry his favor. Yet even if the Court were not convinced that CPB is implementing the Order, CPB's violation of the PBA provides an independent basis to enjoin its actions. And, absent such relief, CPB's actions will irreparably harm NPR as well as the hundreds of public radio stations nationwide that rely on NPR's operation and management of the PRSS.

CPB had ample time to avoid violating NPR's rights. Contrary to its insinuations, *e.g.*, Dkt. 40 at 26, NPR has made plain for months that it is statutorily entitled to the PRSS funds.

1

From the start, NPR's Complaint discussed the "*requirement* that the Corporation 'shall' distribute designated Satellite Interconnection Funds to 'the national entity' that public radio stations 'designate for satellite interconnection purposes.'" Dkt. 1 at 30 (¶ 113) (emphasis added). *CPB admitted to this allegation*. Dkt. 36 at 8 (¶ 113). Assuming CPB read the allegations it was admitting to (and every subsequent NPR filing making the same argument), it has long known that NPR is the rightful recipient of the public radio satellite interconnection funding. Because CPB is poised to violate that entitlement, emergency relief is warranted.

## ARGUMENT

I.  **CPB Is Enforcing Executive Order 14290 and Should Be Enjoined from Doing So**

CPB does not contest that the Order violates the First Amendment. Instead, it asks this Court to believe that its abrupt decision to divorce all satellite interconnection funding from NPR had nothing to do with the Order. CPB's arguments defy common sense.

CPB's primary defense is that it had already begun attempting to oust NPR as the manager and operator of the PRSS before the Order was issued. *See* Dkt. 40 at 34–38. But the fact that CPB started capitulating to the President's unconstitutional pressure campaign shortly before he issued the Order does not help its case. In the month leading up to the Order, as the President's public campaign against NPR escalated and rumors of impending executive actions swirled, CPB abruptly reneged on its long-held plan to distribute PRSS funding to NPR. Tellingly, CPB does not dispute that it informed NPR that it had approved a three-year extension of NPR's PRSS grant on April 2, 2025—only to inform NPR on April 11 that it had changed course.[1]

---

[1] *See* Dkt. 38-2 at 2 (¶¶ 8–10). Mr. Merkley's Declaration mistakenly averred that Kathy Merritt, CPB's then-Chief Operating Officer, informed him that CPB had changed course during a telephone call on April 14, 2025. That telephone call, during which Ms. Merritt told Mr. Merkley that NPR should submit a proposal to "spin out" the PRSS into an independent entity took place on April 11, 2025.

Even then, however, CPB apparently had not made a final decision. CPB has represented to this Court through a sworn declaration by its General Counsel that "at the time of the President's purported termination of CPB's board members [on April 28, 2025] and the [Executive Order], CPB was negotiating the extension of [the PRSS] grant to NPR." Dkt. 12-1 at 14 (¶ 36) (Decl. of Evan Slavitt), *Corp. for Pub. Broad. v. Trump*, No. 25-cv-1305. Unless Mr. Slavitt now wishes to recant his declaration, the Court should take CPB at its word that whatever demands CPB had begun making in mid-April, it was still engaged in negotiations with NPR before the Order was issued. But once the President's demands crystalized in the Order, CPB abandoned any possibility of continuing NPR's funding and took affirmative steps to award that funding to someone else, issuing an RFP in July gerrymandered to guarantee that NPR would not be selected, then failing to give serious consideration to NPR's proposal. *See* Dkt. 38-1 at 13–14; Dkt. 38-3 at 4–5 (¶¶ 17–18).[2]

CPB's assertion that it independently decided sometime "[i]n early 2025" that the Interconnection system should be managed by an "independent entity with a corporate governance structure that is . . . not controlled by a single public media stakeholder," Dkt. 40 at 21, is not credible. CPB does not contest that it never complained about NPR's operation and management of the PRSS, alluding only to a vague "concern" that NPR was somehow neglecting the needs of non-NPR Member Stations. *Id.* That purported "concern" is impossible to square with the uncontested facts that CPB invited NPR (and only NPR) to submit a proposal for a three-year

---

[2] CPB cites a number of NPR statements acknowledging instances where CPB did not comply with the Executive Order. Dkt. 40 at 15–16. But those statements—issued months ago—have no bearing on whether CPB now is implementing the Order by cutting off PRSS funding to NPR. All but one of the statements CPB cites are from last May, at which time CPB had not yet withheld funding that it by law must release to NPR. And the August statement from NPR's president spoke only generally about CPB's history of upholding the values of the Public Broadcasting Act in the wake of CPB's federal funding being rescinded. *Id.* at 16.

extension of its grant, and informed NPR on April 2 that it had approved the grant. *See* Dkt. 38-1 at 12–13; Dkt. 38-3 at 3 (¶ 10). The only thing that changed was the degree of political pressure the Administration was placing on NPR. CPB does not contest that it informed NPR on April 11, 2025 that it was reneging. *See* Dkt. 38-1, at 13–14. And, indeed, just days later the White House issued a press release entitled, "The NPR, PBS Grift Has Ripped Us Off for Too Long."[3] In fact, CPB admits that its purported concerns about the need for a new entity to manage and operate the system were "heightened with funding for public media coming under assault." Dkt. 40 at 21. That assault, of course, came from President Trump—who demanded repeatedly that NPR be defunded. In short, CPB is enforcing the Order by depriving NPR of the most significant source of direct funds that CPB could provide—and had provided for decades prior to now.

In doing so, CPB has violated the First Amendment. Although CPB denies that it is a government actor for purposes of the First Amendment, CPB ignores the separate and sufficient reason why there is state action here: that it is acting because of government compulsion (or at least significant encouragement). Dkt. 38-1 at 20. Based on this forfeiture, the Court need not address whether CPB is a state actor under *Lebron*. But plainly CPB is. The arguments it advanced in *CPB v. Trump* are meritless. *See* Dkt. 35-1 at 25–28; Dkt. 42 at 16–19, No. 25-cv-1305. Though CPB cited various purported differences between it and Amtrak, CPB does not argue that it differs from Amtrak across the three factors that *Lebron* rested on: that "the Government create[d] a corporation by special law, for the furtherance of governmental objectives, and retains for itself permanent authority to appoint a majority of the directors of that corporation." *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 392 (1995). CPB's citation to *Herron v. Fannie Mae*, 861

---

[3] *The NPR, PBS Grift Has Ripped Us Off for Too Long*, The White House (Apr. 14, 2025), https://www.whitehouse.gov/articles/2025/04/the-npr-pbs-grift-has-ripped-us-off-for-too-long/.

4

F.3d 160 (D.C. Cir. 2017), only confirms that it is a state actor. In *Heron*, the court held that *Lebron*'s third prong was not met when the government had taken merely a temporary conservatorship over a business, in contrast to when a corporation is "under the direction and control of federal governmental appointees"—the situation here. 861 F.3d at 168.[4]

In short, the Order violates NPR's First Amendment rights, *see* Dkt. 21-1 at 35–48, and CPB should be enjoined from enforcing the Order.[5]

## II. The Public Broadcasting Act Independently Entitles NPR to Injunctive Relief

### A. The Act Requires CPB to Distribute Satellite Interconnection Funds to NPR

The Public Broadcasting Act unambiguously requires CPB to distribute satellite interconnection funding to "those public telecommunications entities participating in the public radio satellite interconnection system or the national entity they designate for satellite interconnection purposes," 47 U.S.C. § 396(k)(10)(D)(i), and there is no serious dispute that NPR is that "national entity." CPB already admitted in its Answer to NPR's Complaint that the Executive Order violates the PBA by prohibiting CPB "from funding NPR's management and

---

[4] It is irrelevant whether *CPB* had retaliatory animus against NPR. *Contra* Dkt. 40 at 35. NPR's argument is that the *Executive Order* was based on an illegal desire to retaliate against NPR speech; any government action to implement the Order is therefore also unconstitutional. *See*, *e.g.*, *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of President*, 784 F. Supp. 3d 127, 171 (D.D.C. 2025) (enjoining government employees from implementing an executive order that retaliated against speech, without inquiring whether each government employee within the order's scope personally harbored animus against the plaintiff's speech).

[5] CPB's argument that this Court "has no jurisdiction to grant the required relief because Plaintiffs seek no such relief from CPB in the Complaint," Dkt. 40 at 29, is inexplicable. NPR's lawsuit names CPB as a Defendant. Dkt. 1 at 8 (¶ 22). Each count of NPR's Complaint then states that "The Court should therefore … enjoin *Defendants* from implementing [the Order]." *Id.* at 32 (¶ 118), 34 (¶ 129), 36 (¶ 138) (emphasis added). CPB admitted to each of these allegations. CPB invokes NPR's statement that it named CPB as a defendant "solely for the purpose of obtaining complete relief." Dkt. 40 at 29. NPR indeed named CPB for that reason—and now NPR is filing a motion to obtain complete relief. If NPR had truly asserted no claims against CPB, then CPB would have had no reason to answer the Complaint at all.

5

operation of the PRSS, notwithstanding the Act's *requirement* that the Corporation 'shall' distribute designated Satellite Interconnection Funds to 'the national entity' that public radio stations 'designate for satellite interconnection purposes.'" Dkt. 1 at 30 (¶ 113) (quoting 47 U.S.C. § 396(k)(10)(D)(i)) (emphasis added); Dkt. 36 at 8 (¶ 113). CPB has therefore waived any argument that the PBA permits it to do anything other than distribute these funds to NPR.

In any event, CPB has no meaningful support for its new position. To the extent CPB even discusses the relevant PBA provision at all, it merely points out that it is permitted to distribute satellite interconnection funds to those individual public telecommunications entities (PTEs) participating in the system instead. *See* Dkt. 40 at 18–19. But it is up to those PTEs whether they want to designate a national entity to manage and operate the PRSS; if they do, then CPB must fund that entity. CPB's argument—that even after the PTEs designate a national entity, CPB is free to ignore that designation and give the funds to someone else entirely—is a spurious interpretation of the statute. *See* Dkt. 34 at 25.

Moreover, even if CPB did have the ability to ignore the designation, it still would have to give the money to the PTEs. But CPB cannot (and does not) seriously suggest that the public media infrastructure coalition (PMI Coalition) is a PTE. The statute defines a PTE as an enterprise which "(A) is a public broadcast station or a noncommercial telecommunications entity; and (B) distributes public telecommunications services to the public." 47 U.S.C. § 397(12). "Public telecommunications services" are in turn defined as "noncommercial educational and cultural radio and television programs, and related noncommercial instructional or informational material." *Id.* § 397(14). In other words, a PTE must deliver programming to the public. There is no evidence to suggest that the PMI Coalition does this. Indeed, it is not even clear at this point whether the PMI Coalition actually exists, let alone has any meaningful structure or function. Nor does it

matter that some participants in the PMI Coalition happen to be PTEs. *See* Dkt. 40 at 32. It is PMI, not PMI's members or constituents, that CPB intends to distribute PRSS funding to.

In any event, even if the PMI Coalition were a PTE, CPB is not permitted to select one or a small handful of PTEs to receive satellite interconnection funds. If CPB gives funding to the PTEs as opposed to their designee, the PBA requires CPB to distribute the funds to "*those* [PTEs] participating in the public radio satellite interconnection system"—not to "*a*" or "*some*" PTEs participating in the system. *Id.* § 396(k)(10)(D)(i) (emphasis added). This means CPB must distribute satellite interconnection funds to *all* PTEs participating in the system; it is not allowed to pick and choose. That is consistent with other provisions of the Act that provide formulaic criteria for the distribution of funds. *See, e.g.*, *id.* § 396(k)(3)(A)(iii)(I), 396(k)(4)–(9) (providing that 70 percent of public radio funds be distributed to public radio stations and providing eligibility criteria). It would make no sense for Congress to have permitted CPB to provide tens of millions of dollars for satellite interconnection funds to only one or a small handful of PTEs—and to have provided absolutely no criteria for CPB to apply when making that selection. This is especially true given that the PRSS is a *network* whose very purpose is to connect numerous small public radio stations around the country to many providers of national content.

The PBA does, of course, provide a pathway CPB must follow if it does not distribute satellite interconnection funds equally to all PTEs: it must distribute these funds to "the national entity [the PTEs] designate for satellite interconnection purposes." *Id.* 396(k)(10)(D)(i). There can be no serious dispute that NPR is that national entity.

*First*, CPB itself has acknowledged that NPR is that "national entity." Its current grant agreement with NPR—signed in 2023 and renewed in 2024—states that "the Interconnected [PTEs] have designated [NPR] as their national entity for interconnection purposes." Dkt. 38-3,

7

at 2 (¶ 7).  CPB's budget request to Congress for Fiscal Year 2025 is likewise replete with references to the PRSS's budgetary needs.  *See* Corporation for Public Broadcasting, Appropriation Request and Justification: FY 2025 / FY 2027 at 55–56, 59–66.[6]  *Second*, while CPB now attempts to portray the Interconnected Stations' designation of NPR as some relic of the past, CPB fails even to acknowledge that NPR has an active contract with each Interconnected Station in which that station agrees to compensate NPR in return for its operation and management of the PRSS.  Dkt. 38-3, at 2 (¶ 5).  *Third*, CPB has failed to offer any meaningful account as to how the Interconnected Stations could have revoked that designation or how that designation could now apply to the PMI Coalition.

CPB's other statutory arguments are non-sequiturs.  It is true that CPB is authorized to "assist in the establishment and development of one or more interconnection systems" and to "arrange," by "grant" or "contract," for "interconnection facilities."  47 U.S.C. § 396(g)(1)(B), (2)(E); *see* Dkt. 40 at 32.  But a separate subsection of the PBA specifically provides for a "*satellite* interconnection system" and appropriates a pool of money, called the "*Satellite* Interconnection Fund," which is to be distributed to the national entity "designate[d] for *satellite* interconnection purposes."  *Id.* § 396(k)(10) (emphasis added).  The other more general statutory language concerning other (possibly non-satellite) interconnection systems does not purport to displace that clear command.  Finally, contrary to CPB's insinuation, the fact that NPR and CPB typically negotiate contractual agreements to implement PRSS grants, *see* Dkt. 40 at 19, does not disprove that CPB is bound by statute to distribute satellite interconnection funds to NPR.  The contractual agreements between CPB and NPR set the terms for budgets, projects, and other specific commitments agreed to by the parties.  The fact that the parties negotiate these agreements does

---

[6] https://cpb.org/sites/default/files/FY25-27%20Congressional%20Justification.pdf.

not mean that CPB is free to ignore the PBA.

### B. NPR Has an *Ultra Vires* Cause of Action to Enforce the Act

All the conditions necessary for NPR to bring a "suit in equity seeking injunctive relief" are present here: there is no statutory preclusion of judicial review; there is no alternative procedure for review of its claims; and CPB has acted contrary to "clear and mandatory" statutory requirements. *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 763 (D.C. Cir. 2022).

Nor does CPB contest NPR's ability to seek *ultra vires* review. Instead, CPB makes the misguided argument that it is not subject to the Administrative Procedure Act. Dkt. 40 at 30–31. NPR agrees that it cannot seek relief against CPB under the APA because CPB is not an "agency" for statutory purposes. That is why *ultra vires* review is necessary—because there is no alternative procedure to review NPR's claims. *Fed. Express Corp.*, 39 F.4th at 763. And for the reasons NPR has explained—again uncontested by CPB—CPB's statutory status as a private non-profit entity does not insulate it from *ultra vires* review. *See* Dkt. 38-1 at 22–23 & n.2.

### III. NPR Will Suffer Irreparable Harm Absent Emergency Relief

A violation of NPR's First Amendment rights indisputably constitutes irreparable harm. Further, as the Supreme Court recently explained, the loss of money can be considered an irreparable harm "if the funds 'cannot be recouped' and are thus 'irrevocably expended.'" *Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2659 (2025) (quoting *Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010) (Scalia, J., in chambers)). D.C. Circuit precedent is in accord. *See, e.g.*, *In re NTE Connecticut, LLC*, 26 F.4th 980, 990 (D.C. Cir. 2022) ("financial injury can be irreparable where no adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation" (citation, alteration marks, and quotation marks omitted); *Xiaomi Corp. v. Dep't of Defense*, 2021 WL 950144, at *10 (D.D.C. Mar. 12, 2021) (collecting cases).

In its Opposition filed on September 29, CPB now represents that "interconnection funds will not begin to be issued for at least another thirty days." Dkt. 40 at 11. CPB could have facilitated a temporary resolution to NPR's motion if its counsel had responded with this information to NPR counsel's email—sent Friday afternoon, immediately after NPR filed its TRO motion—asking CPB's counsel to confirm that CPB would not disburse the funds at issue before this Court could rule. That said, NPR would be amenable to converting its motion to a preliminary injunction motion if CPB agrees to a stipulated order stating that before this Court rules, CPB will not (1) disburse appropriated public radio satellite interconnection funding to an entity other than NPR, (2) obligate itself to disburse that funding, or (3) take any other action with respect to that funding that could not be unwound.

## CONCLUSION

This Court should issue a temporary order restraining the Corporation from distributing appropriated public radio satellite interconnection funding to any entity or entities other than NPR or from taking any other steps to implement the unlawful Order pending a resolution of this case on the merits.

September 30, 2025                              Respectfully submitted,

                                                       */s/ Miguel A. Estrada*

Miguel A. Estrada (D.D.C. Bar No. 456289)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
(202) 955-8500
MEstrada@gibsondunn.com

Theodore J. Boutrous, Jr. (D.D.C. Bar No. 420440)
Katie Townsend (D.C. Bar No. 1026115)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000
TBoutrous@gibsondunn.com
KTownsend@gibsondunn.com

Elizabeth A. Allen (*Admitted Pro Hac Vice*)
NATIONAL PUBLIC RADIO, INC.
1111 North Capitol Street, NE
Washington, D.C. 20002
(202) 513-2000
EAAllen@npr.org

*Counsel for Plaintiff*
*National Public Radio, Inc.*