**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL PUBLIC RADIO, INC., *et al.* <br><br> *Plaintiffs,* <br><br> *v.* <br><br> DONALD J. TRUMP, *et al.* <br><br><br> *Defendants.* | Case No. 25-cv-1674 |

**PLAINTIFF NATIONAL PUBLIC RADIO, INC.'S MOTION TO COMPEL OR, IN THE
ALTERNATIVE, FOR EVIDENTIARY SANCTIONS**

Pursuant to Rule 26(e)(1)(B) of the Federal Rules of Civil Procedure and this Court's October 7 scheduling order, Plaintiff National Public Radio, Inc. (NPR) moves to compel production of highly relevant, responsive, non-privileged documents concerning the basis for decisions made by the Board of Directors for the Corporation for Public Broadcasting (CPB) that are central to NPR's claims in this litigation.

**INTRODUCTION AND RELEVANT BACKGROUND**

In its Amended Complaint, NPR alleges that by refusing to distribute federal funds to NPR as the designated manager and operator of the Public Radio Satellite System (PRSS)—funds that Congress appropriated for that specific purpose—CPB is implementing the Executive Branch's viewpoint-based, retaliatory Executive Order 14290, entitled "Ending Taxpayer Subsidization of Biased Media" (the Order), 90 Fed. Reg. 19415, and violating both its statutory obligations and the First Amendment, *see, e.g.*, Doc. 46-1 (Amended Complaint) at 33–34 ¶¶ 113–20.

The documents and testimony obtained by NPR to date under the expedited discovery schedule ordered by the Court support no other conclusion. They make clear that CPB's Board

voted on April 2, 2025, to disburse nearly $36 million in public radio satellite interconnection funding to NPR for the PRSS, and that on April 4, 2025—one day after CPB met with officials from the Trump Administration—the Board abruptly reversed course. Specifically, the documents and testimony show:

- On April 2, CPB's Board ███████████████████████████████ ████████████████████████████████████ Declaration of Katie Townsend (Townsend Decl.), Ex. A[1]; *see also* Doc. 38-3 (Munipalla Decl.) at 3 ¶ 10.

- The next day, April 3, ████████████████████████████████

  ██████████████████████████████████████████

  ████████████████████████████████████████ *See* Townsend Decl., Ex. B.

- The next day, on April 4, CPB's Board ██████████████████████

  ██████████████████████████████████████████

  ███████████████████████████████ Townsend Decl., Ex. C.

- Three days later, on April 7, CPB's Board ████████████████

  ██████████████████████████████████████████

  ██████████████████████████████████████████

  ████████████████████ Townsend Decl., Ex. D.

- Two days later, on April 9, CPB's Board █████████████████████

---

[1] CPB designated every document produced to NPR in this matter "Confidential" pursuant to the Protective Order entered by the Court on October 14, 2025. Doc. 52. NPR has informed CPB's counsel that it objects to that improper, blanket confidentiality designation. Townsend Decl., at 5 ¶ 12. It is NPR's position that none of the documents produced by CPB that are being filed as exhibits in connection with this Motion are properly designated "Confidential." In an abundance of caution, however, and in compliance with the terms of the Protective Order, NPR is submitting those exhibits under seal.

███████████████████████████████████████████    Townsend, Decl., Ex. E.

- On April 11, Kathy Merritt, then CPB's Chief for Station and System Strategies, informed NPR's Chief Operating Officer, Ryan Merkley, that CPB would not distribute federal funds for the PRSS unless the PRSS became a separate entity with no ties to NPR.  Doc. 38-2 (Merkley Decl.) at 3 ¶ 12.

The Board's sudden determination that it would not disburse federal funds directly to NPR set off a scramble within CPB to identify some—indeed, *any*—alternative to CPB fulfilling its statutory obligation to distribute public radio interconnection funds to NPR, the national entity that has been designated by the interconnected stations, and that has effectively managed and operated the PRSS for decades.  CPB rushed to develop and issue a Request for Proposals (RFP) designed to disqualify NPR and ultimately announced that it had "awarded" public radio interconnection funding to Public Media Infrastructure (PMI)—a non-existent entity that is being formed for the purpose of receiving interconnection funds from CPB.

The motivation for CPB's abrupt about-face, as NPR alleges, was CPB's determination that in order to survive it would have to comply with the Executive Branch's retaliatory demands to defund NPR.  *See, e.g.*, Doc. 46-1 (Amended Complaint) at 33–34 ¶¶ 113–20.  And the turning point, as the record makes clear, was ███████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████    Townsend Decl., Ex. F; *see also, e.g.*, *id.*, Ex. G (stating that CPB's Board ██

████████████████████████████████████████████████████████

██████████████████████████████████████████ ).

CPB maintains that its Board did not reverse course on a proposed extension of its then-

existing grant agreement with NPR for PRSS funding in response to Administration pressure. *See, e.g.*, Doc. 47 at 10 ¶ 116, 14 ¶ 197. But while CPB claims its Board had other reasons for its whiplash decision-making in early April of 2025, CPB has stonewalled efforts to obtain discovery from its Board members, including its Board Chair Ruby Calvert, that would shed light on the reasons for those decisions.[2] Moreover, CPB has failed to produce responsive Board materials, including minutes from meetings held between April 1 and April 15, 2025,[3] notwithstanding the fact those materials were expressly requested by NPR.[4] As detailed below, in light of documents produced by CPB on October 15 and 16, 2025, and deposition testimony given by CPB's President and Chief Executive Officer Patricia Harrison on October 17, 2025, it has become clear these documents are critical.

For the reasons herein, NPR respectfully requests an order requiring CPB to promptly produce all relevant, responsive documents, including minutes and recordings, memoranda,

---

[2] Counsel for NPR first raised the issue of whether CPB intended to collect and produce documents in the possession of its Board members and to make its Board members available to testify in this matter during a meet-and-confer call with counsel for CPB on October 6, 2025. *See* Townsend Decl. at 1 ¶ 3, 2 ¶ 4 (in a follow-up email to CPB's counsel, NPR's counsel asking for confirmation that "CPB will include the following individuals as custodians for purposes of document collection/review/production in this matter: Ruby Calvert, Laura Ross and Tom Rothman.") NPR's counsel subsequently made repeated efforts to confirm with CPB's counsel regarding whether CPB would facilitate testimony and obtain documents and communications from Ms. Calvert, in particular. *Id*. at 2 ¶ 6, 4 ¶ 9, 4 ¶ 11, 5 ¶ 13, 6 ¶ 15.

[3] It is unclear whether CPB has failed to produce minutes and other Board materials from the series of meetings the Board held in early April of 2025 because it failed to search for and collect those documents in response to NPR's request for production or because CPB is asserting privilege over those materials. While CPB provided NPR with a privilege log late last night, it is unclear from the limited information in that log whether meeting minutes, for instance, are encompassed within any of the entries for withheld documents.

[4] The documents and communications at issue are responsive to NPR's First Set of Requests for Production which seek, *inter alia*, all documents related to any meeting of CPB's Board of Directors and all documents related to NPR or any actual or feared action by the Executive Branch targeting CPB. Townsend Decl., Ex. H at 8–9.

presentations, and briefing materials, related to any meeting of the CPB Board from January 20, 2025 to the present (or, at minimum, from March 1 to April 15, 2025), as well as relevant, responsive, non-privileged documents and communications in the possession of CPB Board members and in the control of CPB, subject only to redactions of specific privileged statements documented in a privilege log.  In the alternative, NPR moves for evidentiary sanctions—namely, that this Court draw adverse inferences based on CPB's failure to produce the aforementioned documents.  A proposed order is attached.

## ARGUMENT

### I.  THE REQUESTED DOCUMENTS ARE RELEVANT AND NOT PRIVILEGED.

In general, parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  "'[R]elevance' for discovery purposes is broadly construed."  *Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1012 (D.C. Cir. 1997).  Evidence is relevant if it "has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.

The relevance standard is easily satisfied here.  CPB's Board members, including, specifically CPB's Board Chair, Ruby Calvert, have highly relevant documents and communications not available from any other source.  The *only* notable occurrence between the Board's decision to distribute interconnected funds to NPR on April 2 and ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ was ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *See* Townsend Decl., Ex. I; *id.*, Ex. J.  NPR now knows that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮.  Townsend Decl., Ex. N at 7–9 (testifying that ▮▮▮▮▮▮▮▮▮▮



). And NPR also now knows that Ms. Calvert, in her capacity as CPB Board Chair, was

, Townsend Decl., Ex. K, and that CPB made no attempt to collect those communications in response to NPR's discovery requests. In addition, Ms. Calvert appears to have

Townsend Decl., Ex. L. According to CPB's President and CEO, Ms. Harrison,

Townsend Decl., Ex. N at 13–15.

Further, with respect to the non-produced Board minutes and other Board meeting materials requested by NPR, it does not appear that any non-Board member is capable of testifying as to what occurred during the series of meetings that occurred in early April of 2025. While acknowledging that                                        , Ms. Harrison, CPB's President and CEO, testified repeatedly during her deposition that

*See* Townsend Decl., Ex. N at 4–6; 10–12.

The documents and communications at issue go to the heart of NPR's First Amendment claim that CPB is attempting to implement an unlawful Administration mandate to cut off all federal funding to NPR. Documents like minutes or recordings of CPB's board meetings are highly likely to contain evidence of the Board's motivations for rapidly approving, modifying, and then rescinding its decision to distribute interconnection funds to NPR for the PRSS, as well as its

decisions to issue an RFP and eventually "award" interconnection funding to PMI instead.

Because the requested documents satisfy Rule 26's relevance requirement, CPB may only withhold those documents on the basis of privilege, *see* Fed. R. Civ. P. 26(b)(1), (5)—though, as noted above, it is unclear whether CPB is in fact asserting privilege over its Board minutes and other materials or whether it has simply failed to collect and produce them. In any event, the only potentially applicable privilege here is the attorney-client privilege.[5] And that privilege "is narrowly construed by the D.C. Circuit because of its adverse effects on the full disclosure of truth." *United States v. Philip Morris Inc.*, 212 F.R.D. 421, 424 (D.D.C. 2002) (citing *S.E.C. v. Lavin*, 111 F.3d 921, 929 (D.C.Cir.1997)). It protects "confidential communications between attorneys and their clients made for the purpose of obtaining or providing legal advice." *Banneker Ventures, LLC v. Graham*, 253 F. Supp. 3d 64, 73 (D.D.C. 2017) (citing *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984)). Importantly, the attorney with whom the communication is made must be "acting as a lawyer" "in connection with this communication," and the communication must "relate[] to a fact of which the attorney was informed . . . for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding." *In re Sealed Case*, 737 F.2d at 99 (quotation marks omitted). The "burden" is on the "claimant[]" to "present to the court sufficient facts to establish the privilege" with "reasonable certainty." *Id.*

When it comes to board meetings in particular, federal courts routinely reject sweeping claims of privilege. There is no general "executive session privilege" under federal common law

---

[5] No deliberative-process privilege is applicable here because that privilege applies only to "records documenting the decisionmaking of executive officials"—i.e., *government* officials, *Protect Democracy Project, Inc. v. Nat'l Sec. Agency*, 10 F.4th 879, 885 (D.C. Cir. 2021)—and, as CPB has argued repeatedly, it is not a government agency.

for "private entities." *Wilstein v. San Tropai Condo. Master Ass'n*, 189 F.R.D. 371, 376 (N.D. Ill. 1999). Instead, as with any communication, a party cannot invoke attorney-client privilege over minutes of a board meeting if it "fail[s] to establish that [the minutes] pertain[] to any request for legal advice." *Guy v. United Healthcare Corp.*, 154 F.R.D. 172, 178 (S.D. Ohio 1993) (rejecting claim of privilege with respect to draft minutes of board meeting). Moreover, the attorney-client privilege "does not provide blanket protection from discovery"; "[o]nly the relevant portions of the executive session meeting discussing confidential information disclosed to the attorney or advice from the attorney relating to pending or anticipated litigation are privileged." *Wilstein*, 189 F.R.D. at 380. "Even if confidential communications within the purview of the attorney-client privilege were made at closed meetings, such communications would not cloak the entire proceeding in secrecy." *S. Cal. Hous. Rts. Ctr. v. Los Feliz Towers Homeowner's Ass'n*, 2005 WL 3954720, at *4 (C.D. Cal. Apr. 25, 2005) (quotation marks omitted).

Accordingly, courts reject blanket claims of privilege as to entire sessions of board meetings and instead require the party asserting the privilege to specifically identify which portions involved privileged attorney-client communications. *See, e.g.*, *Washington Bancorp. v. Said*, 1989 WL 946533, at *1–2 (D.D.C. May 10, 1989) (because it "remain[ed] unclear what portions of the meetings of October 13, 17, 21 and 26 merit protection under the attorney-client privilege," the court "order[ed] plaintiffs to submit the minutes from these meetings to the court for *in camera* inspection"); *Krenning v. Hunter Health Clinic, Inc.*, 166 F.R.D. 33, 35 (D. Kan. 1996) (rejecting blanket privilege claim over minutes of board of directors meeting and ordering company to provide "a privilege log for each portion of the minutes which they claim is privileged").

CPB cannot meet its burden to prove that its Board meetings were privileged in their entirety. Even if a CPB attorney were present, it is practically certain that non-privileged

discussions and communications occurred during those meetings—for instance, discussions about business and government-relations strategy or pressure from the Executive Branch, unrelated to CPB seeking from an attorney "(i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding." *In re Sealed Case*, 737 F.2d at 99 (quotation marks omitted); *see, e.g.*, *Alexander v. F.B.I.*, 186 F.R.D. 21, 45 (D.D.C. 1998) ("[T]he mere fact that an individual communicates with an attorney does not make the communication privileged."); *Neuder v. Battelle Pac. Nw. Nat'l Lab'y*, 194 F.R.D. 289, 295 (D.D.C. 2000) (the claimant "bears the burden of demonstrating that in-house counsel was [at a meeting] to provide legal, rather than business advice").

In sum, under Rule 26, CPB must produce documents relating to the meetings of its Board, including minutes of those meetings and Board briefing materials, including memoranda, subject only to redactions of specific privileged statements made by or to an attorney for the purposes of providing a legal opinion or legal services. This Court should compel CPB to make that production.

## II. BOARD COMMUNICATIONS ARE IN CPB'S CONTROL.

Documents and communications in the possession of CPB's Board members, including Ms. Calvert's emails from her personal account communicating with government officials about CPB, are within CPB's control and therefore must be produced. A party may obtain discovery of items in an opposing party's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "Control" is "defined not only as possession, but as the legal right to obtain the documents on demand." *In re Barnwell Enters. Ltd.*, 265 F. Supp. 3d 1, 16 (D.D.C. 2017) (quotation marks omitted). A party need not "have legal ownership or actual physical possession of the documents at issue, but rather the *right, authority, or practical ability to obtain the documents from a non-party to the action*."

*Id.* (quotation marks omitted; emphasis added).

While the caselaw is sparse with respect to whether a corporation has control over documents possessed by a member of its board of directors, CPB undoubtedly has at least the practical ability to obtain from CPB Board members like Ms. Calvert documents that were produced in the course of conducting official CPB business from their personal email accounts.

When a Board member like Ms. Calvert speaks or negotiates with the Executive Branch on CPB's behalf, she acts as CPB's agent. *See McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 80 (D.D.C. 1999) (rejecting argument that party lacked "control" over an individual for purposes of discovery because they stood in "a principal-agent relationship"). If CPB could be bound by Ms. Calvert's representations to the Executive Branch, it must have sufficient control over her to direct her to produce copies of the communications she made to the government on CPB's behalf—lest CPB be unable to view the communications that bind it. Moreover, corporate board members typically have indemnification agreements with the corporation that require them to cooperate with the corporation in litigation, and such cooperation provisions encompass the corporation's "legal right to request" the member's "assistance in all aspects of litigation, including discovery." *Zimmerman v. Al Jazeera Am. LLC*, 2018 WL 11411310, at *4 (D.D.C. Sept. 26, 2018). If CPB's Board members are subject to such agreements, CPB not only has the practical ability but also the authority to obtain relevant documents in its Board members' possession. Here, CPB's counsel has represented that the only document collected from Ms. Calvert in response to NPR's Requests for Production was a letter. Townsend Decl. at 6 ¶ 15.

As explained above, the evidence produced thus far establishes that Ms. Calvert was conducting CPB business from her personal email account and possesses information central to the claims at issue in this case; her ███████████████████████████████████ are nearly certain

to shed light on the pressure the Administration placed on CPB to cut off NPR's funding and how

CPB responded.  To date, however, CPB has not produced *any* communications from the personal

email account Ms. Calvert used to ██████████████████████████████████████████.

That failure is unjustifiable and substantially prejudices NPR.[6]

### III. ALTERNATIVELY, EVIDENTIARY SANCTIONS ARE WARRANTED.

In the alternative, this Court should impose evidentiary sanctions for CPB's refusal to

produce this highly relevant, non-privileged evidence.  "District courts have considerable

discretion in managing discovery . . . and possess broad discretion to impose sanctions for

discovery violations under Rule 37."  *Parsi v. Daioleslam*, 778 F.3d 116, 125 (D.C. Cir. 2015)

(quotation marks omitted).  In particular, this Court should conclude that an "adverse[] finding of

fact" or an "adverse inference" is warranted with respect to the Board documents and

communications that CPB is refusing to disclose.  *Nunnally v. District of Columbia*, 243 F. Supp.

3d 55, 73 (D.D.C. 2017) (quotation marks omitted); *see, e.g.*, *Int'l Union, United Auto., Aerospace*

*& Agr. Implement Workers of Am. (UAW) v. N.L.R.B.*, 459 F.2d 1329, 1336 (D.C. Cir. 1972)

(explaining that "when a party has relevant evidence within his control which he fails to produce,

that failure gives rise to an inference that the evidence is unfavorable to him").

Here, the best explanation for why CPB is refusing to disclose these documents and

communications is that they will show that its Board reversed course with respect to distributing

interconnection funding to NPR for the PRSS in an attempt to appease the President and his allies.

*See, e.g.*, Townsend Decl., Ex. M (CPB President and CEO explaining that ██████████████

---

[6] In fact, CPB has refused to make Ms. Calvert available for a deposition or to testify at the evidentiary hearing, claiming that NPR would need to subpoena her personally—while also maintaining that Ms. Calvert lies outside the subpoena power of this Court.  *See* Townsend Decl., at 6 ¶ 14.

███████████████████████████████████████████).    Accordingly, NPR

respectfully requests, in the alternative, that this Court make an "adverse[] finding of fact" or draw

the appropriate "adverse inference" from CPB's refusal to produce key Board documents and

communications: namely, that CPB's Board decided not to disburse public radio interconnection

funding to NPR for the PRSS and instead planned to distribute that funding to an entity not under

NPR's control or management, in order to comply with the demands of the Executive Branch.

## CONCLUSION

For the foregoing reasons herein, NPR respectfully requests an order requiring CPB to

promptly produce all relevant, responsive documents, including minutes and recordings,

memoranda, presentations, and briefing materials, related to any meeting of the CPB Board from

January 20, 2025 to the present (or, at minimum, from March 1 to April 15, 2025), as well as

relevant, responsive, non-privileged documents and communications in the possession of CPB

Board members and in the control of CPB, subject only to redactions of specific privileged

statements documented in a privilege log.    Alternatively, the Court should enter appropriate

evidentiary sanctions against CPB for its failure to produce the aforementioned documents.

October 20, 2025

Respectfully submitted,

*/s/ Miguel A. Estrada*

Miguel A. Estrada (D.D.C. Bar No. 456289)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
(202) 955-8500
MEstrada@gibsondunn.com

Theodore J. Boutrous, Jr. (D.D.C. Bar No. 420440)
Katie Townsend (D.C. Bar No. 1026115)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000
T Boutrous@gibsondunn.com
KTownsend@gibsondunn.com

Elizabeth A. Allen (*Admitted Pro Hac Vice*)
NATIONAL PUBLIC RADIO, INC.
1111 North Capitol Street, NE
Washington, D.C. 20002
(202) 513-2000
EAAllen@npr.org

*Counsel for Plaintiff*
*National Public Radio, Inc.*

Steven D. Zansberg (*Admitted Pro Hac Vice*)
Zansberg Beylkin LLC
100 Fillmore Street, Suite 500
Denver, CO 80206
(303) 564-3669
steve@zblegal.com

*Counsel for Plaintiffs Roaring Fork Public*
*Radio, Inc. d/b/a Aspen Public Radio, Colo-*
*rado Public Radio, and KUTE, Inc. d/b/a*
*KSUT Public Radio*

13

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2025, I filed this motion on CM/ECF, causing it to be electronically served on counsel for Defendant.

Respectfully submitted,

*/s/ Miguel A. Estrada*