IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL PUBLIC RADIO, INC., *et al.*,<br><br>                        *Plaintiffs*,<br><br>     v.<br><br>DONALD J. TRUMP, *et al.*,<br>                        *Defendants*. | Civil Case No. 25-cv-1674<br><br>**DECLARATION OF<br>KATIE TOWNSEND** |

## **DECLARATION OF KATIE TOWNSEND**

I, Katie Townsend, hereby declare as follows:

1. I am over 18 years of age, am competent, and make this declaration based upon my own personal knowledge. I make this declaration in support of Plaintiffs' Motion to Compel or, in the Alternative, for Evidentiary Sanctions. If called to do so, I could and would competently testify to these matters under oath.

2. I am a Partner in the Los Angeles and Washington, D.C. offices of Gibson, Dunn & Crutcher LLP ("Gibson Dunn"). I am one of the Gibson Dunn attorneys representing Plaintiff National Public Radio, Inc. (NPR) in the above-captioned case.

3. On Monday, October 6, 2025, I telephonically met and conferred with Jason McElroy, one of the attorneys at the law firm of Saul Ewing LLP representing Defendant the Corporation for Public Broadcasting (CPB) in the above-captioned case. During that call, we discussed, among other discovery-related issues, who would be identified as custodians for the purpose of identifying and collecting responsive documents in connection with anticipated requests for the production of documents, and whether CPB would make its Board members available for deposition.

4. On Tuesday, October 7, 2025, I sent an email to Mr. McElroy "[f]ollowing up on our meet and confer" call. In that email, I noted that Mr. McElroy had "indicated during our call that for purposes of document collection [he] did not view any documents and communications in the possession of CPB's current or former Board members to be within the possession, custody or control of CPB." I explained that "[w]e disagree and, in particular, as I noted on the call, because decisions re: PRSS funding were necessarily made at the Board level by CPB, we think documents and communications in the possession of Board members are highly relevant." Accordingly, I asked Mr. McElroy to "please confirm that CPB will include the following individuals as custodians for purposes of document collection/review/production in this matter: Ruby Calvert, Laura Ross and Tom Rothman."

5. The next day, Wednesday, October 8, 2025, Mr. McElroy replied to that email. In his reply, Mr. McElroy stated that "[w]ith respect to the members of the board of directors, our position remains the same: any responsive emails the corporation possesses of these individuals will be produced." He wrote that he was "confirming that the board members do not have CPB email addresses" and "[i]f they do not, as [he] believe[s] is the case, CPB does not have possession, custody, or control over their personal email accounts or their email accounts related to their other jobs. We will not be collecting those." He asked that, "[t]o the extent you believe you have a legal basis to suggest otherwise, please provide us with the authority on which you rely for such a proposition. I have found none."

6. That same day, I replied to Mr. McElroy and noted that he "indicated during our call on Monday morning that [he] would be getting back to us regarding whether CPB would make Board members available to testify via notice." I requested that he "[p]lease let us know [his] position on that." I also stated in my email that I was "not aware of any bright-line distinction

2

between employees, officers, and directors (i.e., Board members) of an entity for purposes of Rule 34" and asked that if he has "authority for the proposition that documents in the possession of a director, in their capacity as a director, are necessarily/automatically deemed outside the control of an entity, please share it." I also provided Mr. McElroy with D.C. Circuit case law defining "control" for purposes of discovery "as 'the legal right, authority, or ability to obtain documents upon demand,'" *see U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 247 (D.C. Cir. 2005), and explained that, in NPR's view, CPB "has, at minimum, the ability to obtain documents in the possession of a Board member, in his or her capacity as a Board member, on demand, regardless of where those documents are maintained."

7. In the same email, I explained that "in addition to the fact that CPB's decisions re: PRSS funding were made at the Board level, CPB Board members met with members of the Trump Administration during the relevant time period[,]" and "[g]iven these facts and the expedited time frame for discovery," I asked that Mr. McElroy "please let us know whether [he was] willing to collect documents and communications from Ruby Calvert and Diane Kaplan[.]" I emphasized in my email that this request was limited "to two current Board members" and only "records from January 20, 2025 to the present." I also asked that, if the answer was "'no,' and it is your position that even current CPB Board members are third parties for purposes of document collection/production and/or for testimony in this matter, please advise whether you (Saul Ewing) will be representing individual Board members Ms. Calvert and Ms. Kaplan in this litigation."

8. The next day, Thursday, October 9, I informed Mr. McElroy via email that NPR intended to notice Patricia Harrison and Kathy Merritt for depositions in this matter. I also informed him that would advise him "with respect to the third deponent as soon as practicable"

3

and again asked that he "let us know as soon as possible your position with respect to the discovery issues raised in my prior email concerning CPB's Board members."

9. On Friday, October 10, 2025, I emailed Mr. McElroy to again request that he "[p]lease inform us of [his] position with respect to CPB's Board members." I explained that "[w]e need to know whether" CPB would be "collecting/producing their documents" or would "make them available for deposition or live testimony at the hearing." I also reiterated our request that Mr. McElroy "inform us, if not, whether [he] will be representing them as third parties."

10. That same day, Mr. McElroy responded "we can make the ask" and "[w]e are doing so with respect to emails for the two board members you have asked to be custodians." With respect to testimony from Board members, he noted that NPR had not identified a Board member as one of its three deponents and stated that "unless we know that you want to depose them, we cannot make the ask."

11. Following that email, I met and conferred with Mr. McElroy by phone. Among other things, I informed him that because the parties had agreed to a limit of three depositions per side, and because the Court had given the parties a deadline of October 11, 2025 to serve notices of deposition, NPR would not notice a CPB Board member for deposition without knowing that individual would be made available. Accordingly, I informed Mr. McElroy that NPR would serve a deposition notice for Clayton Barsoum, a CPB employee, and I asked Mr. McElroy to determine whether CPB would make Ruby Calvert or Diane Kaplan available to testify at the October 28, 2025, evidentiary hearing in this matter. Mr. McElroy noted that Ms. Calvert lives in Wyoming and indicated that he would get back to me.

12. CPB produced documents to NPR in response to NPR's First Set of Requests for Production on October 15 and October 16, 2025. All documents produced by CPB in response to

NPR's First Set of Requests for Production on October 15 and October 16, 2025 were marked "Confidential." On Friday, October 17, I emailed Mr. McElroy to inform him that "NPR objects to the confidentiality designation of every document included in CPB's October 15, 2025 and October 16, 2025 productions pursuant to the Protective Order entered by the Court." I also asked that CPB agree that the documents marked as exhibits during the deposition of Patricia Harrison were incorrectly designated "Confidential" and that the "Confidential" designation could be removed. Mr. McElroy did not respond to my email.

13. On Sunday, October 19, 2025, I emailed Mr. McElroy regarding certain "items we need clarity on." First, I explained that "we have been unable to locate in your productions any final meeting minutes or Board materials (e.g., memos) from meetings of CPB's Board of Directors and, in particular, any such materials from the series of Board meetings that took place between April 1 and April 15, 2025." I asked that, "[s]ince we have yet to receive your privilege log, please advise whether you are withholding those materials and, if so, on what grounds." Second, I noted that "[w]e have been unable to locate in your productions any emails that would indicate that you collected emails from email accounts used by CPB's Board members (e.g., ███████████)." I asked that Mr. McElroy "[p]lease tell us what steps you took to collect CPB Board-related communications from any of CPB's current or former Board members, including communications maintained on personal email accounts or devices," and said that if he "only collected and produced emails from @cpb.org email addresses, please say so." Finally, I wrote that "it has become clear from the documents that CPB has produced and from Ms. Harrison's testimony on Friday that CPB's Board Chair, Ruby Calvert, is a critical witness. Accordingly, as I initially asked you on October 6 (and a number of times since), please tell us whether CPB will make Ms. Calvert available for testimony at the October 28 evidentiary hearing;

5

if your position is that Ms. Calvert is a third-party witness that must be subpoenaed to appear, please tell us whether Saul Ewing is representing her in this matter and whether you are authorized to accept service of a subpoena on her behalf."

14. Mr. McElroy responded to my email that same day. First, he wrote that CPB has "produced the board materials" and is "not withholding any specific board documents that I am aware of, unless it is something attached to a privileged email." He also noted that, "[t]o the extent that we are withholding any board material on the basis of privilege, it will be noted in our privilege log when we produce it." Second, he wrote that "[w]e requested material from both Ms. Calvert and Ms. Kaplan. We received information from Ms. Calvert, which is represented in our Interrogatory responses and in our document production." Finally, he wrote that "CPB cannot make Ms. Calvert available. Ms. Calvert is not an employee of CPB, and CPB has no authority to accept service on her behalf. As we have discussed previously, Ms. Calvert resides outside the subpoena jurisdiction of the court."

15. On the same day, I responded and asked Mr. McElroy to "please clarify whether or not you obtained responsive emails from Ms. Calvert from the following email address: ▮▮▮▮▮▮▮▮▮▮ and whether those are included in your document production[.]" I explained that the "only emails we have seen with that email address were sent or received by someone with an @cpb.org email address." Mr. McElroy responded the same day that "[w]e received a written letter" which "is reflected in both our interrogatory responses and our document production."

16. Earlier today, Mr. McElroy and I exchanged additional emails in which I noted that "[w]hile certain materials, including a handful of Board resolutions," were included in CPB's productions, it did not appear that "minutes, audio recordings and other materials" from the

6

executive sessions of the CPB Board that took place in early April 2025 were produced, and that "those materials d[id] not obviously appear (though it [was] difficult to discern) on the face of [CPB's] privilege log." Mr. McElroy responded that they "pulled and produced our client's records related to the board materials, as well as produced a large volume of emails related to them." As I reiterated to Mr. McElroy via email, however, the minutes from the Board's executive sessions and related materials from meetings held between April 1, 2025 and April 15, 2025, do not appear to be included in the CPB's productions.

17. Attached hereto as Exhibit A is a true and correct copy of a document produced by CPB to NPR in the above-captioned litigation as CPB_0095820, ███████████████████████████████████████████████████████████████████████████

18. Attached hereto as Exhibit B is a true and correct copy of a document produced by CPB to NPR in the above-captioned litigation as CPB_0022179, ███████████████████████████████████████████.

19. Attached hereto as Exhibit C is a true and correct copy of a document produced by CPB to NPR in the above-captioned litigation as CPB_0106552, ███████████████████████████████████████████████████████████.

20. Attached hereto as Exhibit D is a true and correct copy of a document produced by CPB to NPR in the above-captioned litigation as CPB_0106554, ███████████████████████████████████████████████████████████.

21. Attached hereto as Exhibit E is a true and correct copy of a document produced by CPB to NPR in the above-captioned litigation as CPB_0389639, ███████████████████████████████████████████████████████████ ████████.

22. Attached hereto as Exhibit F is a true and correct copy of a document produced by CPB to NPR in the above-captioned litigation as CPB_0001429, ███████████████████████████████████████████████████████████ ████████████.

23. Attached hereto as Exhibit G is a true and correct copy of a document produced by CPB to NPR in the above-captioned litigation as CPB_0022696, █████████████████████████████████████████████████.

24. Attached hereto as Exhibit H is a true and correct copy of NPR's First Set of Requests for Production, which were served on CPB on October 8, 2025.

25. Attached hereto as Exhibit I is a true and correct copy of a document produced by CPB to NPR in the above-captioned litigation as CPB_0224777, ████████████████████████████████████████.

26. Attached hereto as Exhibit J is a true and correct copy of a document produced by CPB to NPR in the above-captioned litigation as CPB_0111299, ████████████████████████████████████████████████████████.

27. Attached hereto as Exhibit K is a true and correct copy of a document produced by CPB to NPR in the above-captioned litigation as CPB_0152428, ████████████████████████████████████████████████████████.

28. Attached hereto as Exhibit L is a true and correct copy of a document produced by CPB to NPR in the above-captioned litigation as CPB_0001511, ██████████████████████████████████████.

29. Attached hereto as Exhibit M is a true and correct copy of a document produced by CPB to NPR in the above-captioned litigation as CPB_0026621, ██████████████████████████████████████.

30. Attached hereto as Exhibit N is a true and correct copy of excerpts from the rough transcript of the deposition of Pat Harrison, taken in the above-captioned litigation on October 17, 2025.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 20th day of October 2025 in Washington, D.C.

/s/ Katie Townsend
_____

Katie Townsend