IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL PUBLIC RADIO, INC., *et al.*,

*Plaintiffs*,

v.

DONALD J. TRUMP, *et al.*,

*Defendants*.

Civil Case No. 25-cv-1674

## SUPPLEMENTAL STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT CORPORATION FOR PUBLIC BROADCASTING

Pursuant to Local Civil Rule 7(h)(1), Plaintiff National Public Radio, Inc. (NPR) respectfully submits the following supplemental statement of material facts that are not in genuine dispute.

**NPR's Management and Operation of the Public Radio Satellite System (PRSS)**

1.      The Public Radio Satellite System (PRSS) is the satellite and terrestrial content distribution system that serves as the backbone of the nationwide infrastructure for the public radio system.  Dkt. 21-4 at 2 (¶ 5) (Munipalla Decl.); *see also* Townsend Decl., Ex. 11 at 21:25–17:3 (Merritt Tr.) (testifying that the PRSS is currently the system that provides public radio interconnection).

2.      NPR Distribution is the mission critical division of NPR that manages and operates the PRSS.  Dkt. 21-4 at 2 (¶ 5) (Munipalla Decl.).

1

3.    The PRSS was built in the 1970s from funds provided by Congress through the Corporation for Public Broadcasting (CPB).  Townsend Decl., Ex. 1 at 18 (Verified Response to Interrogatories).

4.    There are currently 375 broadcasting entities participating in the PRSS (collectively, the "Interconnected Stations").  *Id*. at 22 (Verified Response to Interrogatory 2).

5.    The original mandate to form a national system to interconnect public radio stations flowed from the 1967 Public Broadcasting Act to CPB.  With federally appropriated funds, CPB designed and built the first satellite systems for public TV (in or around 1976–77) and public radio (in or around 1979–80).  *Id.* at 19.

6.    CPB purchased the ground hardware and granted the asset rights to each interconnected station. CPB also negotiated the lease for public radio's first satellite transponder on Westar I.  At that point in time, CPB delegated management of the PRSS to NPR by contract. Title to the central system operating hardware was originally held by NPR.  *Id.*

7.    In 1981, NPR's Board of Directors adopted a document called "The Philosophy and Policy for the Utilization of the Public Radio Satellite System."  Townsend Decl., Ex. 2 (NPR0022681).  It created operational policies for NPR as the system manager, defined the role of the Technology/Distribution or T/D (today the Distribution/Interconnection or D/I) Committee, and spelled out procedures for station participation in the system governance process.  Townsend Decl., Ex. 1 at 19–20 (Verified Response to Interrogatories).

8.    That same year, the Interconnected Stations voted to assume "full financial responsibility" for the distribution system.  *Id.* at 20.

9.    In 1983, NPR faced a financial crisis and ownership of the central system equipment was renegotiated as part of a loan agreement between CPB and NPR.  Because CPB

2

was prohibited by statute from owning or operating a distribution system, it created a charitable trust to hold title to the system equipment.  NPR continued to manage the PRSS through a lease arrangement with the trust.  *Id.* at 20.

10.    When the loan was repaid in 1985, the trust expired.  The Interconnected Stations, however, decided to create a successor trust with new trustees to retain title to the system equipment.  *Id.*

11.    Concurrently with voting in favor of creating a new successor trust in 1985, the Interconnected Stations voted for the management and governance responsibility for the PRSS to remain under the NPR Board of Directors.  *Id.*

12.    When CPB purchased the satellite transponder for public radio in 1987, it created another charitable trust to hold title to this asset and any funds the system might accumulate for the purpose of satellite replacement.  The two trusts were merged into the contemporary Public Radio Satellite Interconnection System Charitable Trust (the "Trust" or "PRST") in 1991.  *Id.*

13.    Since 1985, NPR has been the national entity responsible for managing and operating the PRSS.  Dkt. 38-3 at 2 (¶ 4) (2d Munipalla Decl.); Townsend Decl., Ex. 3 at 2–3 (NPR0021992).

14.    NPR, as designated manager and operator of the system, has entered into an interconnection agreement with each Interconnected Station.  Townsend Decl., Ex. 1 at 19 (Verified Response to Interrogatories); *see also*, *e.g.*, Dkt. 38-3 (2d Munipalla Decl.), Exs. A–D.

15.    With few exceptions, those agreements automatically renew annually; for agreements that do not automatically renew annually, NPR and the Interconnected Station sign a renewal agreement each year.  Dkt. 38-3 at 2 ¶¶ 4–5 (2d Munipalla Decl.).

3

16.     Because NPR has served as the manager and operator of the PRSS for decades, many of its agreements with Interconnected Stations have been in place for many years.  Townsend Decl., Ex. 1 at 21 (Verified Response to Interrogatories).

17.     When a new Interconnected Station joins the system, that station will sign a new interconnection agreement with NPR.  *Id.*

18.     As an example of such an agreement, on or about February 12, 2025, NPR entered into a Public Radio Satellite Interconnection Agreement with the public telecommunications entity currently using the call letters KBCK-FM in Columbia Falls, Montana.  *Id.*

19.     That agreement, which provides that it "will be automatically renewed for one-year periods," sets forth the "rights and privileges" and the "financial responsibility" of stations participating in the PRSS, and expressly recognizes NPR as "the entity designated by public telecommunications entities participating in the national public radio interconnection system to manage and operate the system."  *Id.*

20.     NPR has an active interconnection agreement with each of the Interconnected Stations currently participating in the system.  *Id.*

21.     CPB has recognized in grant agreements it has entered into with NPR for the purpose of distributing funds appropriated by Congress for interconnection purposes that the Interconnected Stations have designated NPR as their national entity for interconnection purposes. Dkt. 38-3 at 2 (¶ 6) (2d Munipalla Decl.).

22.     The Interconnected Stations share full financial responsibility for the system. Each Interconnected Station is subject to the obligations and responsibilities of participating in the system, which include annual payment of a Distribution/Interconnection fee.  Townsend Decl., Ex. 1 at 21 (Verified Response to Interrogatories).

4

23.    Under the operation and management of NPR Distribution, the PRSS has been consistently praised by the Interconnected Stations.  Doc. 38-3 at 4 (¶ 14) (2d Munipalla Decl.); Townsend Decl., Ex. 5 at 2 (Munipalla Ex. 29).

24.    The PRSS has an approximately 90 percent satisfaction rating from the Interconnected Stations.  Townsend Decl., Ex. 6 (Munipalla Tr. 187:21–188:8).

25.    In 2023, CPB and NPR entered into a grant agreement entitled "Public Radio Satellite System Interconnection Funding FY23-24" (the 2023–2024 Grant Agreement) through which NPR was awarded $11,866,755 to "plan, design, procure, construct, replace, upgrade and manage the PRSS Interconnection System on behalf of, for the benefit of, and made available to all of those public telecommunications entities participating in the public radio interconnection system." Townsend Decl., Ex. 10 at 3 (Merkley Ex. 10B).

26.    The 2023–2024 Grant Agreement expressly acknowledges that "the Interconnected [public telecommunications entities] have designated [NPR] as their national entity for interconnection purposes."  Townsend Decl., Ex. 10 at 9 (Merkley Ex. 10B).

27.    In March 2024, CPB submitted to Congress its Fiscal Year 2025/2027 congressional appropriation request.[1]  Townsend Decl., Ex. 8 at 2.  CPB requested $60 million for "all interconnection costs," noting that it would "work[] with PBS, NPR, and system leaders" and "extend the current interconnection contracts with PRSS and PBS beyond September 30, 2024." *Id.* at 59–60.

28.    The public television interconnection system is managed and operated by PBS. Townsend Decl., Ex. 11, at 20:24–21:12 (Merritt Tr.)

---

[1] The proposal requests Interconnection Funding for Fiscal Year 2025 and otherwise (as is usual with CPB appropriations) requests the remainder of the funding on a two-year forward basis.

29.     In September 2024, NPR and CPB extended the 2023–2024 Grant Agreement, which was set to expire on September 30, 2024, to September 30, 2025, by adding $4,450,000 to the budget for the grant and bringing the total to $16,317,755.  Dkt. 38-3 at 3 (¶ 8) (2d Munipalla Decl.).

30.     CPB recognized that for the entity which manages and operates the PRSS to change, the Interconnected Stations would need to vote to designate a new entity.  Townsend Decl., Ex. 7 at 3 (CPB_0023266).

**CPB Initially Agrees to Extend NPR's PRSS Grant Agreement For Three More Years**

31.     Because NPR's most recent interconnection funding contract with CPB was set to expire on September 30, 2025, in early 2025, NPR and CPB began the process of negotiating an extension.  Townsend Decl., Ex. 6, 123:21–125:8.

32.     Historically, the process for obtaining funding from CPB has been so inefficient that one consultant found it costs NPR "2 million [dollars] to negotiate a contract with CPB in terms of time and people."  Townsend Decl., Ex. 6, 118:19–119:12.

33.     To "speed up the process and keep it as efficient as possible," during the 2025 negotiating cycle, NPR submitted a "concept paper" before sending the full grant proposal so that both sides could be sure they had "a fundamental understanding" of what NPR was going to request.  *Id.* 160:8–161:6.

34.     This concept paper was intended to help facilitate "getting an approval from [CPB's] board" at their April 2025 meeting.  *Id.*

35.     By February 2025, "it was becoming clear that there was a threat to public media funding" and  accordingly "the [CPB] board wanted to act with urgency." Townsend Decl., Ex. 11 (Merritt Tr. 30:3–19).

6

36.     On March 5, 2025, Maryfran Tyler, NPR's Executive Director for Strategy, sent Kathy Merritt, who was then serving as CPB's Chief for Station and System Strategies, a "concept document" that provided a "high-level view of everything we're planning to do for the next three years and the associated budget." Townsend Decl., Ex. 13 at 2 (CPB_0307145).

37.     The concept document provided for interconnection funding to go directly to NPR Distribution; it did not propose or reference spinning off the PRSS into an entity independent from NPR. Townsend Decl., Ex. 14 (CPB_0307147).

38.     When CPB received the concept document, it "took [NPR] at their word, that this is what they were planning to do." Townsend Decl., Ex. 11 at 36:18–37:07 (Merritt Tr.).

39.     Ms. Merritt testified that if CPB had any questions about the concept document, CPB would have emailed them to NPR. *Id.* at 38:10–38:21.

40.     Ms. Merritt does not recall any specific questions, emails sent to NPR, or conversations with NPR about the concept document. *Id.*

41.     After reviewing the concept document, Ms. Merritt asked NPR to "proceed with giving us a full proposal . . . as soon as possible based on th[e] concept note." *Id.* at 40:08–13.

42.     On March 20, 2025, Ms. Merritt attended a meeting of NPR's D/I Committee, which oversees the PRSS. Townsend Decl., Ex. 15 at 2 (NPR0031093) (meeting minutes).

43.     During that March 20, 2025 D/I Committee meeting Ms. Merritt "reported that CPB was expecting a formal proposal from NPR on March 21, 2025, for a three-year extension of the current Public Radio Satellite System (PRSS) funding agreement … based on [NPR's] concept document." *Id.* at 3; *see* Townsend Decl., Ex. 11 at 46:17–47:2 (Merritt Tr.) (stating that she has no reason to doubt that the minutes are accurate).

44.     During that March 20, 2025 D/I Committee meeting, Ms. Merritt also "reported that the CPB Board will consider approving a funding amount sufficient to move the Proposal forward" and "expressed that CPB management desires to secure the CPB Board's approval of the proposed PRSS funding extension in April 2025." Townsend Decl., Ex. 15 at 3 (NPR0031093).

45.     On March 21, 2025, NPR submitted its formal proposal for a three-year extension of its PRSS grant agreement, which included a proposed budget of $26,236,211. Townsend Decl., Ex. 16 at 6.

46.     The proposal included a proposal narrative, a spreadsheet breaking down the financials, and a budget narrative providing additional details about the financial estimates. *Id.* at 2; *see* Dkt. 38-3 at 3 (¶ 9) (2d Munipalla Decl.).

47.     NPR's submission proposed that funding be awarded to "National Public Radio, Inc." and stated that "NPR Distribution is requesting a three-year cost extension." Townsend Decl., Ex. 16 at 6 (CPB_0304825).

48.     CPB's management, including Merritt, reviewed NPR's formal proposal. Townsend Decl., Ex. 11 at 51:8–16 (Merritt Tr.).

49.     After reviewing NPR's formal proposal that was submitted on March 21, 2025, Merritt and other members of CPB's management submitted a memorandum recommending to CPB's Board of Directors that the Board authorize CPB management to negotiate an extension of CPB's grant agreement with NPR for the PRSS. Townsend Decl., Ex. 17 at 2 (CPB_0136269)

50.     In its memorandum to the CPB Board, CPB management concluded that NPR's proposal "aligned with our expectations" and would "ensure continuity of service as well as future facing strategies." *Id.* at 8. The memorandum concluded that "due to consideration for the importance of continuity of interconnection service to all [Community Service Grant] qualified

8

radio stations," the Board should extend NPR's PRSS grant agreement "for five years, to September 30, 2030, and increase[e] the funding for the public radio interconnection system." *Id.*

51.    In that same memorandum, CPB management recommended that the CPB Board approve a proposal by PBS for public television interconnection funding that CPB management had been considering in parallel.  *Id.* at 2.

52.    In its memorandum to the Board, CPB management did not express any concerns with NPR's proposal; however, it identified two aspects of PBS's proposal that "require[d] further evaluation."  *Id.* at 9.

53.    CPB's Board of Directors met on April 1 and 2.  Townsend Decl., Ex. 18 at 2 (Harrison Ex. 1).  It met in a closed executive session to discuss interconnection.  *Id.*

54.    During its Board meeting on April 2, 2025, the CPB Board of Directors passed a resolution authorizing "CPB Management to negotiate an amendment to the existing agreement with NPR for the design and implementation of the updated public radio interconnection system to extend the term by five years and increase funding by up to $36 million, as appropriated in FY 2024 and prior."  Townsend Decl., Ex. 53 at 9–10 (CPB_0148527).

55.    When the CPB Board authorizes management to negotiate a contract, that is generally the final formal action that the CPB Board takes with respect to that contract.  For example, on April 2, 2025, the same day the Board voted to pass a resolution directing CPB management to negotiate an extension of its grant agreement with NPR for the PRSS, the Board also authorized CPB management to negotiate an extension of its grant agreement with PBS for television interconnection.  Townsend Decl., Ex. 53 at 7–8 (CPB_0148527).  CBP management later executed that agreement with PBS, and there were no further Board approvals or resolutions concerning that agreement.  Townsend Decl., Ex. 11, at 71:3–73:9 (Merritt Tr.).

9

56.     Badri Munipalla is NPR's Vice President of NPR Distribution, the entity that oversees the PRSS.  Townsend Decl., Ex. 6, at 13:22–14:3 (Munipalla Tr.).

57.     On April 2, 2025, after the CPB Board meeting, Merritt called Badri Munipalla. Deborah Carr of CPB, who is currently CPB's Senior Vice President of Operations, was present in Merritt's office during the phone call. Townsend Decl., Ex. 11, at 73:23–74:2 (Merritt Tr.).

58.     According to Merritt, she called Munipalla to inform him that CPB's Board of Directors had authorized CPB management to negotiate a grant agreement with NPR for interconnection.  *Id.* at 74:15–21; Dkt. 38-3 at 3 (¶ 10) (2d Munipalla Decl.).

59.     During that April 2 phone call, Merritt further informed Munipalla that CPB planned to transfer the entire budget amount of $26,236,211 proposed by NPR Distribution, as well as the remaining balance from the existing grant agreement to NPR over the next few days, which Merritt indicated would result in a transfer of more than $30 million to NPR.  Dkt. 38-3 at 3 (¶ 10) (2d Munipalla Decl.).

60.     Merritt also told Munipalla during that April 2, 2025 telephone call that CPB anticipated that President Trump would issue an executive order related to CPB, but she did not know what the order would say.  *Id.* (¶ 11).

61.     Merritt told Munipalla that the Board wanted management to act "with some urgency."  Townsend Decl., Ex. 11, at 74:6–14, 75:12–17 (Merritt Tr.) (testifying that she "may have expressed [to Mr. Munipalla] th[e] sense of urgency that the [CPB] board conveyed").

62.     In a later email exchange with Carr, Merritt recounted that "we call[ed] [NPR] and offer[ed] all the funding."  Townsend Decl., Ex. 21, at 2 (CPB_0111058).

**CPB Reverses Course in Response to Government Pressure and in Retaliation for NPR's Perceived Viewpoints**

63.     On March 25, 2025, President Trump announced in a press conference that he would "love to" defund NPR and PBS because of his belief that they are "biased."  Townsend Decl., Ex. 22 at 3 (Ali Bianco & John Hendel, DOGE's next target: NPR and PBS, Politico (Mar. 26, 2025), https://www.politico.com/news/2025/03/26/doge-npr-pbs-hearing-00004556).

64.     On March 27, 2025 President Trump wrote on social media: "NPR and PBS, two horrible and completely biased platforms (Networks!), should be DEFUNDED by Congress, IMMEDIATELY. Republicans, don't miss this opportunity to rid our Country of this giant SCAM, both being arms of the Radical Left Democrat Party. JUST SAY NO AND, MAKE AMERICA GREAT AGAIN!!!"  Townsend Decl., Ex. 23 at 2 (@readlDonaldTrump, Truth Social (Mar. 27, 2025), https://truthsocial.com/@realDonaldTrump/posts/114232752130631453).

65.     On March 31, CPB was contacted by the White House's Office of Management and Budget (OMB) with a request to meet with CPB leadership.  Townsend Decl., Ex. 24 at 2 (Barsoum Ex. 2).

66.     On April 1, 2025 CPB "began to hear rumors that an executive order would be issued shuttering CPB imminently."  Townsend Decl., Ex. 25 at 3 (CPB_0143805).

67.     On April 1, 2025 President Trump wrote again on social media that "REPUBLICANS MUST DEFUND AND TOTALLY DISASSOCIATE THEMSELVES FROM NPR & PBS, THE RADICAL LEFT "MONSTERS" THAT SO BADLY HURT OUR COUNTRY!"  Townsend Decl., Ex. 27 at 2 (@readlDonaldTrump, Truth Social (Apr. 1, 2025), https://truthsocial.com/@realDonaldTrump/posts/114264549657133828).

68.     Patricia Harrison is CPB's President and CEO.  Townsend Decl., Ex. 35 (Harrison Tr. 19:2–7).

69.    Debra Sanchez is CPB's Chief of Staff and Corporate Secretary.  Townsend Decl., Ex. 44 (Barsoum Tr. 43:20–24).

70.    Evan Slavitt is CPB's General Counsel. Townsend Decl., Ex. 44 (Barsoum Tr. 43:15–16).

71.    Clayton Barsoum is CPB's Vice President, Government and External Affairs. Townsend Decl., Ex. 44 (Barsoum Tr. 10:5–7).

72.    Michael Levy was formerly CPB's Chief Operating Officer. Townsend Decl., Ex. 44 (Barsoum Tr. 42:7–8).

73.    On April 2, Sanchez informed her CPB colleagues Slavitt, Barsoum, Harrison, and Levy that "[she] heard from a colleague last night that an EO may only target PBS and NPR funding."  Townsend Decl., Ex. 26 at 2 (Barsoum Ex. 3).

74.    On the morning of April 3, 2025 Ruby Calvert, Chair of CPB's Board of Directors, Barsoum, and Slavitt met with Katharine Sullivan, Associate Director of OMB.  Townsend Decl., 28 at 3 (CPB_0022179).

75.    During that meeting on April 3, Sullivan expressed "her intense dislike for NPR" but that "it would be a shame to throw the baby out with the bath water."   Townsend Decl., Ex. 25 at 4 (CPB_0143805); Ex. 29 at 3 (Barsoum Ex. 12).

76.    The CPB Board met the afternoon of April 3, 2025 to "debrief the meeting with OMB." Townsend Decl., Ex. 30 at 2 (Harrison Ex. 2).

77.    At 4:47pm on April 3, 2025, Donna Joe (CPB Vice President and Assistant General Counsel) emailed Harry Kelly (NPR Deputy General Counsel) that "the CPB Board has been meeting all day today, and they are in a bit of crisis mode."  Townsend Decl., Ex. 31 at 2 (NPR0012787).

78.    In her April 3 email to Kelly, Joe stated that she had "been instructed to wait to send [him] the draft of the amendment [to extend NPR's grant agreement for interconnection] until after the Board's next meeting," which would occur at 11am on April 4.  Id.

79.    On April 4, 2025 at 9:19am, Elizabeth Allen (NPR's General Counsel) emailed Slavitt, stating that NPR still had not "received the contract you envisioned us getting earlier this week."  Townsend Decl., Ex. 32 at 3 (NPR0010361).

80.    Ms. Allen asked that Mr. Slavitt let her know "how early today we'll be able to see the contract" "[i]f we are still aiming to close today."  Id.

81.    At 3:52pm on April 4, 2025, Mr. Slavitt responded by "apologiz[ing] for the delays" and stated that he had been "swamped with Board meetings."  Id. at 2.

82.    Ms. Allen asked about a revised timeline for "the closing wire," to which Mr. Slavitt responded, "realistically it will have to be Monday/Tuesday at best."  Id.

83.    The CPB Board met on April 4, 2025 and adopted a resolution amending the Board's April 2 resolution to require "the contract with NPR for interconnection to include a contingency that NPR provide a plan within 60 days of amendment execution to establish PRSS as an entity independent of NPR."  Townsend Decl., Ex. 33, at 2 (CPB_0106552).

84.    The April 4 meeting was not publicly noticed.  See Board Meetings, Corporation for Public Broadcasting, https://cpb.org/about/board/meetings.

85.    Merritt found it "very surprising" that the April 4, 2025 CPB Board meeting was not publicly noticed.  Townsend Decl., Ex. 11 at 78:5–9 (Merritt Tr.)

86.    The evening of April 4, 2025, Harrison emailed Laura Ross, a member of CPB's Board of Directors, stating that "DOGE is coming tonight" to PBS.  Townsend Decl., Ex. 34 at 2 (Harrison Ex. 3).  Ross responded to that email to ask Harrison whether she should "call Ruby

13

[Calvert] now and convene a meeting tomorrow to get the money out and reverse today's decision." *Id.* Harrison, referring to Tom Rothman, a member of CPB's Board of Directors, responded, "This what Tom wants." *Id.*; *see* Townsend Decl., Ex. 35 at 106:1:17 (Harrison Tr.).

87.    On April 5, 2025 Harrison emailed Katherine Maher (NPR's President and CEO) and Paula Kerger (PBS's President and CEO), stating that "[t]hese rumors have potential to turn into boy who cried wolf. Except the wolf is really coming." Townsend Decl., Ex. 36 (Harrison Ex. 5).

88.    Harrison's email to Maher and Kerger further stated that "OMB has requested list of all grants in past two quarters and future." *Id.*

89.    Harrison's email to Maher and Kerger further stated that Sullivan of OMB had "expressed her thoughts re pub media—never watch it" and that Sullivan thought CPB's "board was more 'balanced' than most" and did "not want to throw out the baby with the bath water." *Id.*

90.    Harrison's email to Maher and Kerger described possible scenarios, with the first being that "[t]hey keep board, fire ceo, and replace. Shrink power of CPB to follow money tree re distribution, no fund directly to npr and perhaps pbs. Reward certain states/stations." *Id.*

91.    CPB's Board of Directors met again in executive session on Monday, April 7, 2025. During that meeting, Calvert "noted that she had spoken to board members about her meeting with OMB Associate Director Katherine Sullivan" and stated that "Ms. Sullivan was negative toward public media." Townsend Decl., Ex. 38 at 2 (CPB_0390059).

92.    At the April 7, 2025 Board meeting Harrison told the Board that CPB "needed to be more prepared for" the "eventuality" that DOGE would visit. *Id.* at 3.

93.    At the April 7, 2025 Board meeting, CPB's Board passed a resolution "amend[ing] its resolution of April 2 and 4 regarding interconnection funding."  Townsend Decl., Ex. 38 at 2 (Merkley Ex. 14).

94.    The April 7 resolution directed CPB management to include in the NPR interconnection agreement a contingency that "one third of the [PRSS] funds will be withheld should NPR not comply with the spin off obligatoins [*sic*]" to "establish PRSS as an entity independent of NPR."  *Id.*

95.    According to Merritt, the purpose of this provision was to "compel [NPR] to move forward with the spin off."  Townsend Decl., Ex. 11 at 98:4–9 (Merritt Tr.).

96.    On April 8, Merritt emailed Harrison draft talking points for an anticipated conversation with NPR's Chief Operating Officer, Ryan Merkley, to discuss funding for radio interconnection.  Merritt's draft talking points included the following:

- ▪ "The interconnection dollars we have now may be the last ones we receive. Our board wants us to fulfill our statutory responsibility to support interconnection and to ensure that interconnection services will be available for the next 3–5 years (especially if CPB might not still exist).

- ▪ At the same time, we're in an environment where NPR is the target of the Administration and Congress. It's challenging for CPB to disperse millions of dollars to an organization that's under fire and heavily scrutinized.

- ▪ Our board has determined an approach that allows CPB to disperse funds to NPR for radio interconnection while also decoupling interconnection from NPR's editorial efforts."

Towsend Decl., Ex. 39 at 2 (Harrison Ex. 6).

97. Merritt's draft talking points also described a requirement that NPR "give CPB a plan to spin off ownership and control of PRSS," such that "funds would follow to the new entity." *Id.*

98. On April 9, 2025 Harrison emailed Merritt and Sanchez that one option for CPB was to "tell npr to give us plan now and they get 2/3'ds. Has to be executable." Townsend Decl., Ex. 40 at 2 (Harrison Ex. 8).

99. CPB's Board met on April 9, 2025 and passed a resolution that "rescind[ed] its resolutions of April 2, 4 and 7 regarding interconnection funding for NPR." Townsend Decl., Ex. 41 at 2 (CPB_0110656).

100. On April 10, 2025 President Trump wrote on social media: "NO MORE FUNDING FOR NPR, A TOTAL SCAM! EDITOR SAID THEY HAVE NO REPUBLICANS, AND IS ONLY USED TO "DAMAGE TRUMP." THEY ARE A LIBERAL DISINFORMATION MACHINE. NOT ONE DOLLAR!!!" Townsend Decl., Ex. 42 at 2 (@readlDonaldTrump, Truth Social (Apr. 10, 2025), https://truthsocial.com/@realDonaldTrump/posts/112248653824267212).

101. On April 10, 2025, Merritt emailed further draft "talking points for NPR" to other members of CPB management. Townsend Decl., Ex. 43 (Harrison Ex. 7). Those talking points began: "Things have changed since last week when our board approved giving interconnection funds to NPR." *Id.* at 2.

102. Merritt's April 10, 2025 talking points stated, inter alia, that CPB's "board wants the funds to go [to] the new entity." *Id.* at 3. Merritt wrote that the reason the board "change[d] its mind so quickly" was that the "circumstances changed, and they had more time to consider the future." *Id.* at 3.

103.    On April 10, 2025, Merritt sent another email with the subject line "NPR – interconnection – take two" that contained "[r]evised talking points" for a call with Merkley. Townsend Decl., Ex. 46 (Merritt Ex. 13).

104.    As reflected in the draft talking points of April 10, 2025, Merritt anticipated that Merkley would ask: "Why did your board change its mind so quickly." *Id.* at 3.

105.    The draft talking points of April 10, 2025, stated that if NPR "refuse[d] to go along with [CPB's] idea" to spin off the PRSS, "[t]hen CPB will have to find another entity to provide radio interconnection." *Id.*

106.    On April 10, 2025, Carl Forti, a conservative political operative and consultant working for CPB, met with Sanchez to discuss a "plan forward" for CPB to survive the current political climate—specifically, what CPB would be "willing to stop/give up." Townsend Decl., Ex. 47 at 2 (CPB_0370522).

107.    CPB paid Forti $150,000 for his services as a "Strategic Communications Consultant" from April 10 to October 9. Townsend Decl., Ex. 48 at 6 (CPB_0275296).

108.    Forti followed up with a memorandum listing the chief "problem[]" for CPB as "BIAS: Belief both in Administration and among general public that the media is biased against conservatives and more specifically against Trump. NPR is high on those lists." Townsend Decl., Ex. 49 at 2 (CPB_0370523).

109.    On April 11, 2025, Calvert sent a letter to OMB, emphasizing her "deeply conservative and Republican" background and values. Townsend Decl., Ex. 50 at 4 (Barsoum Ex. 10).

110.    On April 11, 2025, Merritt, who by then was serving as CPB's Chief Operating Officer, called Merkley to inform him that CPB's Board had changed course and that CPB would

not provide any funding for the operation and management of the PRSS unless the PRSS became a separate entity with no ties to NPR. Dkt. 38-2 at 3 (¶ 8) (Merkley Decl.).

111.    During that April 11, 2025 call with Merkley, Merritt did not identify any complaints about NPR Distribution's management or operation of the PRSS or provide any explanation for the decision apart from vague statements about a perceived need to enhance digital innovation. *Id.* at 2–3 (¶ 10).

112.    Merritt's April 11, 2025 call to Merkley was the first time that CPB had communicated to NPR that CPB wanted NPR to spin off the PRSS into an independent entity. Townsend Decl., Ex. 11 (Merritt Tr. 100:17–21).

113.    On April 12, 2025, Merritt spoke to Munipalla by phone. Townsend Decl., Ex. 51 at 2 (Merritt Ex. 14). During that call, Munipalla informed Merritt how "challenging" it would be to separate the PRSS from NPR and that "any change would have to be approved by the interconnected stations." *Id.*

114.    Also on April 12, 2025, Merritt reported to Harrison and Sanchez that she "spoke with Ruby" Calvert, who was "adamant that she doesn't want funding to go to NPR." *Id.*

115.    On April 13, 2025, Sanchez wrote to Forti: "We are moving ahead with almost $100 million to PBS for their distribution (interconnection) and not to NPR, why? There are obvious political challenges, but we can't 'own that' outright. So we are in a tight spot sort of. What are the strongest messages we can make about the 'why' or the 'because?'" Townsend Decl., Ex. 52 at 2 (CPB_0380911).

116.    That same day, Sanchez also reacted in an email to her CPB colleagues to CPB's demand that NPR spin off the PRSS by stating: "Something has been fundamentally missing for me … and it's the 'because' statement. In particular, the 'local stations would be better served by

18

having PRSS as an independent entity' which begs the question … because?"  Townsend Decl., Ex. 54 at 3 (Merritt Ex. 16).

117.    In response to a request by Merritt to answer Sanchez's questions, Carr wrote, "Tough assignment indeed." *Id.* at 2.

118.    Also on April 13, 2025, in an email discussion among senior members of CPB's management about the decision to demand that NPR spin off the PRSS, CPB's President and CEO Harrison wrote "WE NEED CARL TO MOVE NOW." Townsend Decl., Ex. 7 at 3 (Merritt Ex. 15).

119.    "Carl" was a reference to Carl Forti, the political consultant, who was meeting with legislators on behalf of CPB. Townsend Decl., Ex. 11 (Merritt Tr. 154:24–155:10).

120.    Also on April 13, 2025, Barsoum emailed Harrison a "government affairs plan for interconnection."  Townsend Decl., Ex. 55 at 2 (Harrison Ex. 13).  That plan proposed a "targeted engagement strategy" "for engaging key Congressional members to ensure they are thoroughly briefed on proposed changes to public media interconnection."  Townsend Decl., Ex. 79 at 3 (CPB_0023272).

121.    Barsoum's "government affairs plan for interconnection" identified Senator John Barrasso (R-WY), who "has engaged with CPB's Board Chair," Ruby Calvert, and was described in Barsoum's plan as a "close ally of President Trump" who "can facilitate crucial backchannel discussions within his caucus and the Administration."  *Id.*

122.    The plan proposed messaging to Senator Barrasso—and to Senator Shelley Moore Capito (R-WV)—that the plan to spin off PRSS "will allow CPB to reduce direct investment in NPR."  *Id.* at 3–4.

123.    On April 13, 2025, Levy (CPB's COO who had resigned a few days earlier) emailed Harrison additional talking points regarding CPB's decision-making with respect to interconnection funding to NPR.  Levy's talking points stated that "[f]unding for public media, including its interconnection service, is under assault by a newly elected Administration," and that "concerns about political and cultural bias—most notably at NPR and with its content, have been cited by the President, members of his administration (DOGE, OMB), [and] members of Congress . . . in support of calls to end funding for public media entirely or to separately defund NPR, or NPR and PBS."  Townsend Decl., Ex. 56 at 4 (Harrison Ex. 11).

124.    Levy's April 13 talking points also stated that establishing PRSS as an independent entity was "NO[T]" "a first step towards" "convergence."  *Id.* at 6.

125.    Levy's April 13 talking points also stated: "Concerned about the risk to funding for the public media system and its attending consequences, the CPB Board, in early April, resolved to provide funding for public radio interconnection only on condition that it went to a successor entity to PRSS, separated from NPR, and enabled to operate autonomously with its own assets, employees and a new governance structure."  *Id.* at 5.

126.    Levy's April 13 talking points explained that CPB would cut off direct interconnection funding to NPR but not PBS because PBS "presents a vastly different degree of threat to funding than NPR."  *Id.* at 7.

127.    On April 13, 2025, Merritt emailed Harrison and other members of the CPB leadership team a list of things CPB would need to do in order pursue its plan to separate the PRSS from NPR.  Merritt's email stated that "the stations will have to vote on making a switch for PRSS[.]"  Townsend Decl., Ex. 7 at 3 (CPB_0023266).

128.    Merritt's April 13, 2025 email also stated Merritt's expectation that when the PRSS was spun out of NPR Distribution that "Badri [Munipalla] would become the CEO or a similar position since he will be the one running this." *Id.* at 2.  She added, "I don't think there's anyone else who can help step in." *Id.*

129.    On April 14, the Trump Administration announced that the President planned to request that Congress rescind all funding to CPB.  Townsend Decl., Ex. 57 (Jennifer Scholtes & Megan Messerly, *White House to Send Congress a Formal Request to Nix $9.3B for PBS, NPR, State Department*, Politico (Apr. 14, 2025), https://www.politico.com/news/2025/04/14/white-house-to-send-congress-a-formal-request-to-nix-9-3b-for-pbs-state-department-00289543).

130.    That same day, April 14, 2025, the White House issued a press release entitled "The NPR, PBS Grift Has Ripped Us Off for Too Long," which critiqued the "trash that passes for 'news' at NPR and PBS" by listing more than a dozen examples of reporting that the Administration disliked.  Townsend Decl., Ex. 58 (The NPR, PBS Grift Has Ripped Us Off for Too Long, The White House (Apr. 14, 2025), https://www.whitehouse.gov/articles/2025/04/the-npr-pbs-grift-has-ripped-us-off-for-too-long).

131.    Also on April 14, 2025, Jordan Lawlor, a Senate Appropriations staffer, emailed Barsoum to "[t]hank [him] again for the meeting last week."  Townsend Decl., Ex. 59 at 3 (CPB_0018106).  Lawlor added that she "remember[ed] on the call that [Barsoum] mentioned that CPB has been turning down investments with entities like NPR." *Id.*

132.    By April 14, 2025, Merritt had discussed with Kerri Hoffman, CEO of PRX, the possibility of using Public Radio International (PRI), a shell nonprofit subsidiary of PRX, as a vehicle for CPB to distribute radio interconnection funding while avoiding "financial entanglements with NPR."  Townsend Decl., Ex. 12 at 3 (CPB_0110624).

133.    On April 15, 2025, Forti (CPB's political consultant), provided recommendations to CPB for how to interact with the Trump Administration to preserve its funding.  Townsend Decl., Ex. 60 at 4 (Barsoum Ex. 8).  Among other things, Forti recommended that CPB emphasize that it has "already taken steps to address the administration's concerns"—including "[w]ithholding interconnection funds from NPR." *Id.*

134.    On April 16, 2025, Mike Savage, Chair of the D/I Committee, wrote a letter to Merritt on behalf of the D/I Committee stating that "the D/I Committee strongly urges CPB to fund PRSS Interconnection for three years as was approved by the CPB Board, and presented to NPR leadership just a few weeks ago."  Townsend Decl, Ex. 61 at 3 (CPB_0305846).

135.    In his cover email to Merritt attaching that letter, Savage stated: "CPB has an obligation to fund interconnection for both public radio and public television systems.  For decades, NPR has been an excellent manager of the PRSS.  The D/I Committee is in full agreement on this fact and believes any change to PRSS management at this time would be counterproductive and harmful to the public radio system." *Id.* at 2.

136.    On April 17, 2025 Merritt sent a response letter to Savage.  Townsend Decl., Ex. 62 at 4–5 (CPB_0185383).

137.    In that response letter, Merritt corrected what she perceived to be one misapprehension in Savage's letter to her, but did not correct the letter's assertion that the "CPB Board" had "approved" interconnection funding for the PRSS in early April 2025. *Id.*

138.    On April 18, 2025, CPB sent OMB a response to inquiries OMB had made. Townsend Decl., Ex. 63 (CPB_0230424).

139.    In response to OMB's request that CPB provide "the amount of funding disbursed directly to NPR in the first two quarters of FY 2025, and planned disbursements for the remainder

of the year," CPB responded that "the extensive majority of CPB's direct funding to NPR, is paid to NPR exclusively to support the [PRSS]," and that "CPB is exploring options for the next phase of public radio interconnection funding," including "directing funding to an entity separate from NPR, to manage public radio's interconnection service." *Id.* at 5.

140.    On April 21, Slavitt (CPB's General Counsel) sent Allen (NPR's General Counsel) a letter reiterating that CPB "has requested that NPR, as the grantee of interconnection funds and manager and operator of PRSS, submit to CPB by May 9, a plan to make PRSS an entity that is separate from NPR," and that the new entity managing PRSS "must be legally independent of NPR." Townsend Decl., Ex. 64 (Harrison Ex. 12).

141.    Because the Interconnected Stations have continuously designated NPR to manage and operate the PRSS and have never rescinded that designation, NPR declined to submit a plan to separate PRSS from NPR. Dkt. 38-2 (Merkley Decl.) at 3 ¶ 13.

## CPB Launches a "Working Group" and Issues an RFP While the Government Continues to Apply Pressure to CPB

142.    On April 25, 2025, Levy wrote to Harrison that "CPB needs to decide on next steps re disbursement of public radio interconnection funds" but that "giv[ing it] to NPR" would "[r]aise[] GOP ire and compromise[] efforts in the Se[n]ate." Townsend Decl., Ex. 65 at 3 (Harrison Ex. 15).

143.    On April 28, 2025 the White House's Deputy Director of Presidential Personnel sent an email to three CPB Board members stating that they were immediately terminated. Dkt. 21–2 (SUMF) at 20 ¶ 151.

144.    On April 30, 2025, in email correspondence with Sanchez, Forti explained CPB's "main argument" to the Administration:

What you [CPB] have that people in this fight and similar fights haven't had is a recent track record of sticking up for the Admins viewpoint. . . . And there's two fights Trump has the full support of his voters on—the fight against DEI and the fight against the biased media. Therefore, you have to "give" the Admin something so that they can claim a win and then be more willing to comprise (give you some money back).  Your win is that you're already cutting off NPR and taking steps to stop biased media coverage. The Admin gets their win and maybe you can get some money back in recission b/c of the importance of what you provide in certain districts.

Townsend Decl., Ex. 66 at 3 (CPB_0211477).

145.    Sanchez responded to Forti's analysis by email that same day: "Thanks for this analysis. I don't think we are comfortable with the approach to publicly state we cut funding to NPR."—to which Forti replied: "if you're not willing to talk about what you have done, I think it's you at least need to acknowledge why you're being cut." *Id.* at 2.

146.    Also on April 30, 2025 Sanchez "looped in" Danica Petroshius, a political consultant at Penn Hill Group, to "get her take" on Forti's analysis.  Townsend Decl., Ex. 67 at 2, Barsoum Ex. 11 (CPB_0211493).

147.    On May 1, 2025, Petroshius responded to Sanchez:

I thnk [*sic*] what he says below is good- I'm just not clear on the when. I do NOT want you guys to give up and do it all now - like we've done the NPR thing. Then they will take another pound of flesh PBS?

You can say you align and compliy [*sic*] - but have to leave room for them to negotiate so maybe if we are forced they ONLY trim NPR. If you trim NPR now on your own then they take the next thing. We have to show "pain" if we negotiate even if its [*sic*] not that big of a pain[.] *Id.* at 2–3.

148.    That same day, Sanchez forwarded the email thread with Petroshius's response to Merritt and Barsoum. *Id.* at 2.

149.    On May 1, President Trump issued Executive Order 14290, "Ending Taxpayer Subsidization of Biased Media," which purported to order CPB to cease all direct funding to NPR, based on the President's criticism of NPR's journalism.  Dkt. 21-2 (SUMF) 21–23, ¶¶ 155–72.

150.    On May 7, Levy wrote to Harrison objecting to a proposal to give interconnection funds to the PRSS Trust.  Townsend Decl., Ex. 68 at 2 (Merritt Ex. 19).  Levy explained that "giving money to the trust even for a short period of time is giving money to NPR."  *Id.*

151.    The PRSS Trust is a charitable trust that is independent from NPR and owns the physical satellite equipment that the PRSS operates on.  Townsend Decl., Ex. 6 (Munipalla Tr. 93:13–94:4).

152.    The beneficiaries of the PRSS Trust are the Interconnected Stations.  Townsend Decl., Ex. 6 (Munipalla Tr. 141:14–22.); *see also* Townsend Decl., Ex. 11 (Merritt Tr. 22:5–7 ("Q. Who are the beneficiaries of the Trust? A: The public radio stations, and I think, through them, the American People.")).

153.    On May 9, 2025, CPB announced it was convening a "working group" to "establish shared goals and create a vision for forming a new content distribution entity, funded by CPB" in furtherance of CPB's goal "to transition PRSS into an independent entity."  Dkt. 40-1 (Slavitt Decl.) at 17 ¶ 43.

154.    The working group was intended to culminate in the development of a Request for Proposal (RFP) for a "new entity to deliver content distribution services."  *Id.* at 18 ¶ 45.

155.    Two days prior, on May 7, Kathy Merritt had emailed Pat Harrison that "we could … convene a working group as a way to move the idea of an independent PRSS forward. … We

25

would look like we are collaborating to address the issue and not acting unilaterally. This would also take focus away from any push NPR makes to have stations attack CPB for not giving NPR interconnection funds." Townsend Decl., Ex. 68 at 2 (Merritt Ex 19).

156.    When CPB convened the working group, it knew that PRX—one of the working group members—"would submit to the RFP" and "would be the obvious organization to do so." Townsend Decl., Ex. 11 (Merritt Tr. 189:16–190:10).  Merritt had previously talked with the head of PRX about PRX or American Public Media (APM) "being the place to put interconnection funds." *Id.*

157.    Also on May 9, 2025, Savage (Chair of the D/I Committee) sent a letter to Merritt objecting to "CPB's demand to remove NPR as the operator of the PRSS."  Townsend Decl., Ex. 69 at 2 (CPB_0313534).  He explained that the "interconnected stations of the PRSS, not CPB, designate the manager and operator of the PRSS, which CPB acknowledges in the current interconnection grant agreement with NPR, as it has in previous interconnection funding agreements." *Id.*

158.    Savage also wrote in his May 9 letter to Merritt that the "CPB Board approved NPR's proposal for a three-year grant on April 1" before "withdraw[ing] its approval" on April 11—an "about-face" that was "difficult to understand." *Id.* at 2–3.

159.    Savage's May 9 letter also stated that the "CPB Board's decision to rescind its commitment to fund the PRSS for three years—and then withhold interconnection funding unless CPB's demand to relocate the PRSS is met—is hurtful and damaging to the 380 public radio stations that count on the PRSS for their live and prerecorded broadcast content." *Id.* at 3.

160.    On May 10, 2025 Barsoum sent Harrison a text from Jack Williams a lobbyist with Alabama Public Television that stated with regard to NPR: "I think we ought to let them go.  Cut

all their funding and separate from CPB. . . . I suspect there are a number of stations that would affiliate with a more middle of the road network." Townsend Decl., Ex. 70 at 2 (CPB_001624); Townsend Decl., Ex. 11 (Merritt Tr. 139:15–140:02).

161.    On May 30, 2025 Merritt sent Harrison an email stating that "NPR wants Badri Munipalla, head of PRSS, to be part of the working group on radio content distribution." Townsend Decl., Ex. 20 at 3 (CPB_0001699). Merritt noted that Munipalla would "certainly bring a lot to the table in terms of technical knowledge, but the working group will address building something that NPR has expressly said that don't want to see happen." *Id.* at 3 She added that "he wasn't invited and we get to decide who is in our working group." *Id.* at 2.

162.    Merritt's May 30 email to Harrison also stated that if Mr. Munipalla were included, he would "risk[] … disrupting the conversation with explanations of how PRSS already does what we are planning." *Id.* at 4.

163.    As of May 31, 2025, Merrit recognized that NPR had, in her words, advanced a "narrative of CPB not funding PRSS because of the EO." *Id.*

164.    On June 1, 2025, Merritt emailed Harrison and stated, *inter alia*, that she was "torn about including Badri [Munipalla]" in the working group because "he'll be there representing NPR management." Townsend Decl., Ex. 20 at 2 (CPB_0001698).

165.    Harrison responded to Merritt's June 1 email: "I agree . . . He might be a buzz kill. After first mtg ask him to present npr plan." *Id.*

166.    The working group that was selected by CPB included the following executives from organizations who would later collectively submit a response to the RFP on behalf of "Public Media Infrastructure" or "PMI": Rima Dael (National Federation of Community Broadcasters),

Bill Davis (Station Resources Group), Kerri Hoffman (PRX), Jean Taylor (American Public Media).  Townsend Decl., Ex. 75 at 4 (CPB_0301307).

167.    On July 12, 2025, Barsoum sent Harrison talking points for a meeting with Senator Capito.  Townsend Decl., Ex. 29 (Barsoum Ex. 12).  Five out of his seven talking points explicitly referred to NPR.  *Id.* at 2–3.  Under the bullet point "Avoiding Unintended Harm," Barsoum wrote:

> As the White House said in conversation with CPB, "we don't want to throw the baby out with the bathwater." Reforms or restrictions can address NPR-specific concerns. But full elimination of CPB or public broadcasting funding would irreparably damage a positive legacy that includes Mister Rogers' Neighborhood, Mountain Stage, and local service from West Virginia Public Broadcasting and Allegheny Public Radio. *Id.* at 3.

168.    On July 12, 2025, Harrison sent an email to Merritt attaching a draft memorandum to the Board regarding CPB's working group and anticipated RFP.  Harrison's cover email stated that "IF NPR CANNOT APPLY THEN RESTORE SENTENCE 'INDEPENDENT OF NPR.'"  Townsend Decl., Ex. 72 at 2 (CPB_0027994).  The draft memorandum attached to that email included a comment from Harrison asking: "Did we put any npr res on the working group? Can npr respond to rfp/" [*sic*]. *Id.* at 3.

169.    On July 13, 2025 Merritt wrote in an email that "we had planned to post an RFP tomorrow for the new entity for radio interconnection. I don't know if we should move forward with that - maybe it helps us combat the idea that we are catering to NPR."  Townsend Decl., Ex. 73 at 2 (Harrison Ex. 16).

170.    Harrison responded to that July 13 email from Merritt one minute later: "Helps us." *Id.*

171.    In her deposition, Ms. Harrison denied that her email was sent in response to the email that Ms. Merritt had sent one minute prior.  Instead, she claimed she was responding referring to a press release about a survey regarding trust in public media.  Townsend Decl. Ex. 35 at 214:8–221:16 (Harrison Tr.).

172.    Harrison replied again to that same email thread five minutes later and wrote: "We are not funding npr[;] Making changes to comply with Congress directive economically and efficient[;] How would we communicate to the Hill/key Senators that we are pushing out the RFP?" Townsend Decl., Ex. 73 at 2; Ex. 35 at 193:12–194:22 (Harrison Tr.).

173.    On July 14, 2025, CPB issued a "Request for Proposals for Entity to Manage and Govern Public Radio Content Distribution" (the RFP).  Doc. 34-3 (RFP).

174.    The RFP requires a bidder to have "no single represented organization holding majority control."  Dkt. 34-3 at 5 (RFP).

175.    The RFP also stated that CPB sought a manager of the PRSS who would be "legally and functionally able to receive CPB funding by September 30, 2025."  *Id.*

176.    The RFP did not seek proposals to manage television interconnection services or address the merging of interconnection services for television and radio.  Its sole focus was radio content distribution.  Dkt. 40-18 at 1.

177.    By the time the RFP issued, CPB had already disbursed television interconnection funding to PBS in its role as manager and operator of the television interconnection system.  *See* Townsend Decl., Ex. 74 at 3 (CPB_0074124).

178.    The same day the RFP was issued, Merritt forwarded an email about the RFP to Davis, the head of Station Resource Group (SRG), and one of the participants in the working group.  Townsend Decl., Ex. 75 at 2 (CPB_0301307); *id.* Ex. 11 at 184:16–186:14 (Merritt Tr. 177:13–15).  Merritt wrote to Davis: "I hope you saw this message to the system today with the link to the RFP."  Townsend Decl., Ex. 75 at 2 (CPB_0301307).

179.    Davis responded to Merritt the same day to say he had "been paying closer attention to the RFP—which is simultaneously daunting and exhilarating. Should be a fun project to work on."  *Id.*  He also asked Merritt to "LMK if you've got any questions or concerns for me."  *Id.*

180.    The House of Representatives voted to approve the President's request to rescind CPB's funding for Fiscal Years 2026 and 2027 on June 12, 2025.  *See* 171 Cong. Rec. H2796 (daily ed. June 12, 2025).

181.    The Senate voted to rescind CPB's funding on July 17, 2025.  *See* U.S. Senate, Roll Call Vote 119th Cong. 1st Sess. (July 17, 2025), https://www.senate.gov/legislative/LIS/roll_call_votes/vote1191/vote_119_1_00411.htm.

182.    On July 24, 2025, Harrison sent herself an email stating: "Currently we are not allowed to give FUNDING TO NPR OR PBS. . . . HOW DO WE GET THE BYLAWS CHANGED—PROTECT CPB."  Townsend Decl., Ex. 76 at 2 (CPB_0010098).

183.    NPR submitted a detailed proposal in response to the RFP in advance of the August 15, 2025 deadline.  Doc. 38-2 at 3 ¶ 15 (Merkley Decl.); *see generally* Doc. 40-19 (NPR Submission).

184.    On August 29, Harrison emailed Calvert to state, *inter alia*, that the President "CALLED CPB 'A MONSTROSITY.'"  Townsend Decl., Ex. 77 at 2 (CPB_0026621). Harrison's email to Calvert also said, "THE POINT IS NOT TO LOBBY BUT TO GET THEIR

INPUT REGARDING ANY STEPS WE COULD TAKE TO KEEP CPB ALIVE. SUCH AS….AGGRESSIVE ACTION RE NPR—NO FUNDING ANYTHING." *Id.*

**CPB "Awards" Public Radio Interconnection Funding to "PMI"**

185.    Apart from NPR's response to the RFP, the only other response was submitted by a coalition of five organization—American Public Media Group (APMG), the National Federation of Community Broadcasters (NFCB), New York Public Radio (NYPR), PRX (Public Radio Exchange), and Station Resource Group (SRG)—referring to itself as "Public Media Infrastructure" (PMI). Townsend Decl., Ex. 78 at 2 (CPB_0110026).

186.    At the time of its submission, "PMI" did not exist as a legal entity, rendering it unable meet the RFP's requirement that the recipient be legally eligible to receive funds by the specified date of September 30, 2025. Townsend Decl., Ex. 11 at 205:16–18 (Merritt Tr.); Dkt. 34-3 at 5 (RFP).

187.    PMI's RFP response explained that "PMI will be created by repurposing the nonprofit entity formerly known as Public Radio International (PRI), which has remained in good standing following its acquisition by PRX in 2018. This approach provides immediate legal and financial governance while ensuring compliance with the RFP and all federal requirements." Townsend Decl., Ex. 80 at 4 (CPB_0078397).

188.    In its response to the RFP, the PMI coalition asserted that "By September 30, 2025: The PRX board will act to formalize the transition of PRI to PMI consistent with the requirements set forth [in the RFP]." *Id.* at 7.

189.    On August 22, 2025, Merritt reached out to PMI representatives to schedule a meeting with CPB's internal RFP review team and representatives of Deloitte Consulting

(Deloitte), CPB's consultant, to discuss PMI's response to the RFP.  Townsend Decl., Ex. 81 at 2 (CPB_0097035).

190.    CPB also addressed a number of questions to the PMI coalition members, including Davis, about their response to the RFP.  Townsend Decl., Ex. 82 at 2 (CPB_0097069).

191.    PMI's response to the RFP had not fully addressed these questions; for example, it did not give sufficiently detailed information to satisfy CPB regarding whether the non-existent entity had adequate "financial controls."  Townsend Decl., Ex. 11 at 216:22–217:3 (Merritt Tr.).

192.    On August 27, 2025, CPB and Deloitte met with PMI representatives to discuss the PMI coalition's response to the RFP.  Townsend Decl., Ex. 83 at 2 (CPB_0096562); *id.* Ex. 84 at 2 (CPB_0097123); *id.* Ex. 85 at 2 (CPB_0115230).

193.    CPB asked the PMI coalition more than 20 additional questions in writing following the submission of the PMI coalition's response to the RFP.  Townsend Decl., Ex. 86 at 2–3 (CPB_0066136).

194.    CPB also asked the PMI coalition to change certain aspects of its proposal; for example, the proposal stated that PMI would not hire an executive director until mid-2026, and CPB thought that timeline was too long.  Townsend Decl., Ex. 11 at 210:21–211:6 (Merritt Tr.).

195.    CPB did not reach out to NPR with any questions about its RFP response at any point in time, nor did it attempt to schedule a meeting to discuss that RFP response.  Townsend Decl., Ex. 11 at 204:1–12 (Merritt Tr.); *see also* Dkt. 38-3 at 4 ¶ 17 (Second Munipalla Decl.).

196.    Over the next several weeks, members of CPB management and its consultants with Deloitte who were tasked with evaluating the RFP responses continued to communicate questions, feedback, and suggestions to the PMI coalition to help it supplement its response to the RFP.  *See, e.g.*, Townsend Decl., Ex. 82 at 2 (CPB_0097069); *id.* Ex. 87 (CPB_0096573); *id.* Ex. 86

(CPB_0066136); *id.* Ex. 88 (CPB_0097153); *id.* Ex. 89 at 2 (CPB_0096519); *id.* Ex. 90 at 2 (CPB_0106461).

197.    On September 5, 2025, after extensive discussions with and input from CPB and Deloitte, PMI delivered a 200-day plan and an 18-month timeline.  Townsend Decl., Ex. 91 at 2 (CPB_0066140).

198.    As of September 8, 2025, there remained "many open questions for [CPB's review team] around [PMI's] approach."  Townsend Decl., Ex. 92 at 2 (CPB_0115374).

199.    On September 12, Deloitte Consulting sent CPB its analysis of the responses to CPB's radio interconnection RFP.  Townsend Decl., Ex. 93 at 44 (CPB_0006606).

200.    The first criterion the report considered was "Governance," weighted 25%. Deloitte rated the response prepared by PMI more favorably than NPR's because NPR's was inconsistent with "CPB's requirement for governance without a single organization holding majority control or undue influence."  *Id.* at 45.

201.    Deloitte also rated PMI more favorably than NPR on the factors of audience measurement, data and analytics, and sponsorship technology because NPR's "current service" did not include these factors, while PMI had a "plan" to address them.  *Id.* at 46–47.

202.    Regarding cost, Deloitte rated NPR and PMI's responses equally, despite PMI's budget proposal being roughly $9 million more than NPR's.  *Id.* at 47.

203.    Deloitte concluded that PMI was a "better match to the requirements defined by CPB in the RFP."  *Id.* at 44.

204.    On September 15, 2025, Harrison delivered remarks at an executive session of CPB's Board regarding CPB's "options for survival."    Townsend Decl., Ex. 94 at 2

(CPB_0167260). She said that "NPR funding must be addressed but CPB will be criticized whether we award it to NPR or return it to the Treasury." *Id.*

205.    Harrison also stated at the September 15 Board meeting: "We currently have an EO prohibiting us from funding PBS and NPR. . . . We are all in serious jeopardy because Congress has abdicated its role, the DOJ and the White House are in charge, and they have shown they will weaponize the executive, judicial and appropriation processes to harass and intimidate." *Id.*

206.    In a draft document that formed the basis for those remarks, Harrison included: "[CPB's] legal counsel's insistance [*sic*] that [the Executive Order] does not apply to [CPB], or does not apply to the Board, only to management in terms of content, etc., may be technically correct but politically naïve." Townsend Decl., Ex. 95 at 2 (CPB_0006541). Ms. Harrison testified that she said this "[b]ecause we have a thug administration," and even "if you're playing by the rules . . . who the heck knows what's going to happen?" Townsend Decl., Ex. 35 (Harrison Tr. 251:7–17).

207.    No one at the September 15 meeting of CPB's Board raised concerns about the fact that PMI is not yet a legal entity, nor did the Board "develop backup plans" in case PMI cannot "get setup and … implement the plan" it had proposed to CPB. Townsend Decl., Ex. 11 (Merritt Tr. 225:25–227:7).

208.    On September 15, 2025, CPB's Board unanimously voted to approve the below resolution:

The Board authorizes CPB management to negotiate an agreement with PMI for the procurement and delivery of content distribution services for the public radio system, including content management and distribution for broadcast and digital platforms, data and analytics, emergency

alerting, cybersecurity, and technology for a the term of five years a total grant amount not to exceed $57.9 million, subject to available appropriations. Townsend Decl., Ex. 96 at 51.

209.    The continuity of radio interconnection services is critical for public radio. Townsend Decl., Ex. 11 (Merritt Tr. 31:4–8).

210.    Ms. Merritt testified that if interconnection funds "went back to the Treasury," that would "have a negative impact across stations." *Id.* (Merritt Tr. 71:21–72:2).

211.    Ms. Harrison testified that returning interconnection funds to the Treasury "would be a terrible thing."  Townsend Decl., Ex. 35 (Harrison Tr. 243:15–17 ).  When asked whether CPB would ever do this voluntarily, she answered, "Of course not." *Id.* at 244:11–14.

212.    In a phone call on September 23, Merritt informed Merkley that CPB's Board had approved a decision to "award" the RFP to a "public media infrastructure" coalition made up of other public media organizations, service providers, and associations.  Dkt.. 38-2  at 3–4 (¶ 16) (Merkley Decl.).

213.    Merritt did not provide Merkley a reason for that decision other than that the PMI coalition "had a better response to what we were asking for in the RFP"; she did not identify any deficiencies in NPR's response to the RFP or in its performance as a manager and operator of the PRSS. *Id.* at 4 (¶ 17).

214.    When the CPB Board voted to "authorize[] CPB management to negotiate an agreement" with the coalition known as "Public Media Infrastructure," CPB's President and CEO publicly announced the next day, before any contract was signed, that CPB was "awarding [a] grant to PMI."  Townsend Decl., Ex. 96 at 51 (CPB_0148498).

215.    Even after CPB selected PMI to receive interconnection funding, CPB continued to work with PMI to develop a plan to create a functioning entity that would be eligible to meet the minimum requirements stated in the RFP.  Townsend Decl., Ex. 97 at 2 (CPB_0115430)

216.    Internal CPB communications and comments reflect ongoing uncertainty and confusion regarding the legal status of PMI, when and how it would become an independent legal entity, and who or what would have authority to authorize various agreements in the interim.  *See, e.g., id.* (acknowledging that "[t]here have been some shifting milestones" regarding PMI's timeline and plans on September 25, 2025); Townsend Decl., Ex. 98 at 2–3 (CPB_0115427) (CPB comments on PMI's 200-Day Plan document such as "Who will be authorized to sign agreements/make employment offers in interim period?"; "When is this happening? How is this happening?"; "WHAT DOES THIS MEAN?"; and "WHEN???????" from September 25, 2025); Townsend Decl., Ex. 99 at 3 (CPB_0115465) (August 28, 2025 email proposing "[j]oint PRX/PRI board meetings to confirm independence pathway" in mid-October; Townsend Decl., Ex. 100 at 2 (CPB_0097540) (discussing whether it would if it "be acceptable for CPB to have SRG be the fiscal agent of PRI DBA PMI" on October 8, 2025).

217.    As of October 23, 2025, PMI did not exist as a legal entity, did not have a board of directors, did not have an executive director, and did not have a chief technology officer. Townsend Decl., Ex. 11 (Merritt Tr. 205:2–206:1).

218.    CPB's public announcement of its "award" of interconnection funding to PMI indicates that PMI will be providing "interconnection services to public radio stations"; it does not mention television interconnection.  Townsend Decl., Ex. 45 at 2 (Harrison Ex. 17).

219.    As of April 13, 2025 CPB management believed that a vote would be necessary to change the governance of the PRSS. Townsend Decl., Ex. 11 (Merritt Tr. 153:4–154:12).

220.    As of October 24, CPB has not taken any steps to coordinate a vote to designate an entity other than NPR as the manager and operator of the PRSS. Townsend Decl., Ex. 11 (Merritt Tr. 239:16–240:6).

October 24, 2025                                  Respectfully submitted,

                                                 */s/ Miguel A. Estrada*

                                                 Miguel A. Estrada (D.D.C. Bar No. 456289)
                                                 GIBSON, DUNN & CRUTCHER LLP
                                                 1700 M Street, N.W.
                                                 Washington, D.C. 20036-4504
                                                 (202) 955-8500
                                                 MEstrada@gibsondunn.com

                                                 Theodore J. Boutrous, Jr. (D.D.C. Bar No. 420440)
                                                 Katie Townsend (D.C. Bar No. 1026115)
                                                 GIBSON, DUNN & CRUTCHER LLP
                                                 333 South Grand Avenue
                                                 Los Angeles, CA 90071-3197
                                                 (213) 229-7000
                                                 T Boutrous@gibsondunn.com
                                                 KTownsend@gibsondunn.com

                                                 Elizabeth A. Allen (*Admitted Pro Hac Vice*)
                                                 NATIONAL PUBLIC RADIO, INC.
                                                 1111 North Capitol Street, NE
                                                 Washington, D.C. 20002
                                                 (202) 513-2000
                                                 EAAllen@npr.org

                                                 *Counsel for Plaintiff*
                                                 *National Public Radio, Inc.*