Case 1:25-cv-01674-RDM    Document 60-1    Filed 10/24/25    Page 1 of 41

10/21/2025      National Public Radio, Inc., et al. v. Donald J. Trump, et al.      Ryan Merkley

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

--------------------------------X

NATIONAL PUBLIC RADIO, INC.,     :

ET AL.,                          :

              Plaintiffs,      :

                           Case No.:

   v.                            :

                         1:25-cv-1674-RDM

DONALD J. TRUMP, ET AL.,         :

             Defendants.      :

--------------------------------X


Deposition of RYAN MERKLEY

Washington, D.C.

Tuesday, October 21, 2025

9:18 a.m.


Reported by: Matthew Goldstein, RMR, CRR

2

1          Deposition of RYAN MERKLEY, held at:

2

3

4          Saul Ewing LLP

5          1919 Pennsylvania Avenue, NW

6          Suite 550

7          Washington, D.C. 20006

8          202.333.8800

9

10

11

12

13        Pursuant to Notice, before Matthew Goldstein,

14   RMR, CRR, Notary Public in and for the District of

15   Columbia.

16

17

18

19

20

21

22

3

```
 1      A P P E A R A N C E S

 2   ON BEHALF OF THE PLAINTIFFS, NATIONAL PUBLIC

 3   RADIO, INC., ET AL.:

 4   TATE ROSENBLATT, ESQUIRE

 5   GIBSON DUNN & CRUTCHER, LLP

 6   1700 M Street, NW

 7   Washington, D.C. 20036

 8   202.777.9302

 9

10   and

11

12   MICHAEL H. DORE, ESQUIRE

13   GIBSON DUNN & CRUTCHER, LLP

14   333 South Grand Avenue

15   Los Angeles, California 90071

16   213.229.7000

17

18

19

20

21

22
```

4

1   A P P E A R A N C E S   C O N T I N U E D

2        ON BEHALF OF THE DEFENDANT, THE CORPORATION

3        FOR PUBLIC BROADCASTING:

4        JOSEPH D. LIPCHITZ, ESQUIRE

5        JACOB WEINSTEIN, ESQUIRE

6        SAUL EWING LLP

7        131 Dartmouth Street

8        Suite 501

9        Boston, Massachusetts 02116

10        617.912.0916

11

12        ALSO PRESENT:

13        ELIZABETH A. ALLEN, ESQ. - NPR

14        DESHAWN WHITE - VIDEOGRAPHER

15

16

17

18

19

20

21

22

Case 1:25-cv-01674-RDM    Document 60-1    Filed 10/24/25    Page 5 of 41

10/21/2025        National Public Radio, Inc., et al. v. Donald J. Trump, et al.        Ryan Merkley

5

1                    C O N T E N T S
2    EXAMINATION OF RYAN MERKLEY                          PAGE
3
4    By MR. LIPCHITZ                                       11
5    By MR. DORE                                          242
6    By MR. LIPCHITZ                                       253
7    By MR. DORE                                           254
8                    E X H I B I T S
9                      (Attached)
10   MERKLEY          DEPOSITION EXHIBIT                  PAGE
11
     Exhibit 1     National Public Radio, Inc. and    14
12                 Subsidiaries Consolidated
                   Financial Statements,
13                 Supplemental Schedules, and
                   Independent Auditor's Report as
14                 of and for the years ended
                   September 30, 2024 and 2023
15
     Exhibit 2     NPR0000125 through NPR0000126,    47
16                 August 15, 2025, E-mail
                   Correspondence
17
     Exhibit 3     NPR0001339 through NPR0001341,    51
18                 July 18, 2025, E-mail
                   Correspondence
19
     Exhibit 4     NPR0000007 through NPR0000008,    56
20                 August 22, 2025, E-mail
                   Correspondence
21
22

Case 1:25-cv-01674-RDM    Document 60-1    Filed 10/24/25    Page 6 of 41

10/21/2025      National Public Radio, Inc., et al. v. Donald J. Trump, et al.    Ryan Merkley

6

1   (Continued)
2                       E X H I B I T S
3   Exhibit 5     NPR0021708 through NPR0021710,        61
                  January 31, 2025, E-mail
4                 Correspondence
5   Exhibit 6     CPB_0389587 though CPB_0389588,       64
                  October 1, 2021, Memo
6
    Exhibit 7     CPB_0389652 through                   79
7                 CPB_0389658, Minutes Telephonic
                  Executive Session Board of
8                 Directors Corporation for
                  Public Broadcasting October 6 -
9                 7, 2021
10  Exhibit 8     CPB_0389649 through                   84
                  CPB_0389651, Minutes Telephonic
11                Executive Session Board of
                  Directors Corporation for
12                Public Broadcasting December 1
                  - 2, 2021
13
    Exhibit 9A    CPB_0159301 through                   93
14                CPB_0159307, September 27,
                  2024, Memo
15
    Exhibit 9B    CPB_0159311 through                   93
16                CPB_0159407, Deloitte Future of
                  Public Media Distribution
17                Interconnection Committee and
                  CPB Board Update October 1 and
18                7-8, 2024, Slide Deck
19  Exhibit 10A   CPB_0063000 through                  101
                  CPB_0063016, Amendment #1 to
20                Agreement "Public Radio
                  Satellite System
21                Interconnection Funding
                  FY23-FY24"
22

10/21/2025        National Public Radio, Inc., et al. v. Donald J. Trump, et al.        Ryan Merkley

7

1    (Continued)
2                        E X H I B I T S
3    Exhibit 10B    Grant Agreement "Public Radio        101
                    Satellite System
4                   Interconnection Funding
                    FY23-FY24"
5
     Exhibit 11    NPR0001536 through NPR0001539,        108
6                  March 26, 2025, E-mail
                   Correspondence
7
     Exhibit 12    CPB_0367232, Resolution              112
8                  Executive Session Board of
                   Directors Corporation for
9                  Public Broadcasting April 2,
                   2025
10
     Exhibit 13    CPB_0106552, Resolution              124
11                 Executive Session Board of
                   Directors Corporation for
12                 Public Broadcasting April 4,
                   2025
13
     Exhibit 14    CPB_0106554, Resolution              131
14                 Executive Session Board of
                   Directors Corporation for
15                 Public Broadcasting April 7,
                   2025
16
     Exhibit 15    CPB_0096603 through                  139
17                 CPB_0096606, April 22, 2025,
                   E-mail Correspondence
18
     Exhibit 16    CPB_0110941, April 30, 2025,         156
19                 Letter
20   Exhibit 17    Executive Order 14290 of May 1,      165
                   2025
21
22

8

1    (Continued)

2                    E X H I B I T S

3    Exhibit 18    Corporation for Public              169
                   Broadcasting Statement

4                  Regarding Executive Order on
                   Public Media May 2, 2025,

5                  Statement

6    Exhibit 19    Spreadsheet                         171

7    Exhibit 20    Truth Post of Donald J. Trump       181

8    Exhibit 21    Q&A on NPR's September 26,          188
                   2025, Filing

9

     Exhibit 22    CPB_0015776 through                 225

10                 CPB_0015777, May 6, 2025,
                   Letter

11

     Exhibit 23    NPR0000401, PRSS Competition        230

12                 Slide

13   Exhibit 24    NPR0000059 through NPR0000062,      232
                   August 4, 2025, E-mail

14                 Correspondence

15   Exhibit 25    CPB_0078348 through                 236
                   CPB_0078396, NPR's Submission

16                 to CPB's RFP, August 15, 2025

17

18   --------TRANSCRIPT INFORMATION/REQUESTS----------

19   DOCUMENT/DATA REQUESTS:                    (Page/Line)

20                                              252      8

21

22

9

1           THE VIDEOGRAPHER:  This is video No. 1

2    of the video-recorded deposition of Ryan Merkley,

3    in the matter of National Public Radio, Inc.,

4    et al., versus Donald J. Trump, et al., in the

5    United States District Court for the District of

6    Columbia, Case No. 1:25-cv-1674.

7           This deposition is being held at

8    Saul Ewing LLP, 1919 Pennsylvania Avenue

9    Northwest, Washington, D.C., on October 21st,

10   2025.

11          The time on the video screen is

12   9:18 a.m.

13          My name is DeShawn White.  I am the

14   legal videographer from Digital Evidence Group.

15          The court reporter is Matthew Goldstein,

16   in association with Digital Evidence Group.

17          Will counsel please introduce themselves

18   for the record, followed by the court reporter

19   administering the oath.

20          MR. LIPCHITZ:  Joseph Lipchitz from

21   Saul Ewing on behalf of the Corporation for Public

22   Broadcasting.

10

1            MR. DORE:  Michael Dore of Gibson Dunn &

2    Crutcher on behalf of the plaintiff, National

3    Public Radio.  And with me are Tate Rosenblatt of

4    Gibson Dunn & Crutcher and Elizabeth Allen of

5    National Public Radio.

6            MR. WEINSTEIN:  And Jacob Weinstein.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

11

1                 P R O C E E D I N G S

2    Whereupon,

3                      RYAN MERKLEY,

4    being first duly sworn or affirmed to testify to the

5    truth, the whole truth, and nothing but the truth,

6    was examined and testified as follows:

7      EXAMINATION BY COUNSEL FOR THE DEFENDANT THE

8             CORPORATION OF PUBLIC BROADCASTING

9    BY MR. LIPCHITZ:

10       Q.   All right.  You're the chief operating

11   officer of NPR, sir?

12       A.   Yes, sir.

13       Q.   Okay.  How long have you been in that

14   role?

15       A.   Since January 13th of this year.

16       Q.   And what are your duties and

17   responsibilities as COO?

18       A.   COO is responsible at NPR for the

19   technology team which includes distribution, the

20   product team, our AI lab, member partnership which

21   includes our relationship with stations, network

22   growth.  I also convene organization-wide planning

15

1    to look through it, please.

2              MR. LIPCHITZ:  Sure.

3              THE WITNESS:  Sorry, would you repeat

4    your question?

5    BY MR. LIPCHITZ:

6         Q.   Sure.

7              You've been handed NPR's consolidated

8    financial statements as of September 30th, 2024,

9    and 2023; correct?

10        A.   It seems so, yes.

11        Q.   Okay.  And as COO, you've seen these

12   before; correct?

13        A.   Yes.

14        Q.   And you received them as part of your

15   duties and responsibilities; correct?

16        A.   Yes.

17        Q.   All right.

18        A.   I have access to them as part of my

19   duties and responsibilities.

20        Q.   Okay.  If you could turn to page 6 for

21   me, sir.

22             All right.  So in 2024, it was the case

Case 1:25-cv-01674-RDM    Document 60-1    Filed 10/24/25    Page 13 of 41

10/21/2025        National Public Radio, Inc., et al. v. Donald J. Trump, et al.        Ryan Merkley

16

1   that NPR had over $818 million in assets?

2        A.    That's what it says here in the

3   document, yes.

4        Q.    Okay.  Any reason to believe that's not

5   true.

6        A.    I have no reason to believe that's not

7   true.

8        Q.    Okay.  And then if you drop down to the

9   bottom of page 6, you'll see that the total net

10  assets being reported is $554,984,920?

11       A.    I see that, yes.

12       Q.    Okay.  And if you turn to the next page,

13  page 7, under Total revenue, do you see that, that

14  line?

15       A.    Yeah.

16       Q.    Okay.  And as of 2024, NPR had over

17  $336 million in revenue?

18            MR. DORE:  Objection to form.

19            THE WITNESS:  I see that.

20            MR. DORE:  Go ahead, you can answer.

21            THE WITNESS:  I'm sorry, I didn't hear

22  what you said.

17

1                MR. DORE:  I said, objection to the form

2     of the question.

3                But you're allowed to answer after I

4     make the objection.

5                THE WITNESS:  Thank you.

6                I'm sorry, would you repeat the

7     question?

8     BY MR. LIPCHITZ:

9         Q.   Sure.

10               Do you see under the line item, Total

11    revenues, gains, and other support?

12        A.   I see that line, yes.

13        Q.   Okay.  And it's listed as being reported

14    that NPR had $336,604,820 in total revenues,

15    gains, and other support; right?

16        A.   I see that, yes.

17        Q.   Okay.  That was accurate; right?

18               MR. DORE:  Objection to the form.

19               You can answer.

20               THE WITNESS:  I can answer.

21               I believe it is accurate.

22

18

1    BY MR. LIPCHITZ:

2        Q.    Okay.  Now, if you could -- it's the

3    case that NPR also has an endowment; correct?

4        A.    That's correct.

5        Q.    All right.  And what is -- could you

6    tell me briefly what the endowment is?

7        A.    The endowment is a body that is designed

8    to help support the long-term viability of NPR.

9        Q.    Okay.  And if you could turn to page 45

10   of the consolidated financial statements.

11       A.    Okay.

12       Q.    Do you see halfway down the page,

13   there's a line item, Total endowment net assets.

14   And for 2024, it's reported as that being

15   $368,793,977; correct?

16       A.    Oh, I see where you are.  Excuse me,

17   yes, I see that on 2024.  Yes, I see that number.

18       Q.    Okay.  And that was accurate?

19            MR. DORE:  Objection to the form.

20            THE WITNESS:  I believe it to be

21   accurate.

22

22

1    internationally; correct?

2         A.    We do.

3         Q.    And reporters internationally?

4         A.    Correct.

5         Q.    All right.  Now, NPR is not a radio

6    station itself; correct?

7         A.    No, sir.

8         Q.    All right.  Rather, NPR produces,

9    acquires and distributes program and content to

10   radio stations; right?

11        A.    That is one of the things NPR does, yes.

12        Q.    All right.  And radio stations can

13   purchase NPR-created content; correct?

14        A.    That is one of the ways they can access

15   our content, yes.

16        Q.    And NPR charges a fee for allowing radio

17   stations to purchase that content; right?

18        A.    NPR charges membership fees for stations

19   who are members of the NPR network, and NPR

20   charges fees for content that it sells.

21        Q.    Okay.  So you don't necessarily have to

22   be an NPR member to receive NPR content; correct?

26

1          Q.    All right.   And only about 1 percent of

2     NPR's annual budget comes from grants from the

3     Corporation for Public Broadcasting; right?

4          A.    That is a statistic we have used, yes.

5          Q.    Okay.

6               (The reporter seeks clarification.)

7               THE WITNESS:   That is a number we have

8     used, yes.   That's correct.

9     BY MR. LIPCHITZ:

10         Q.    And the funds provided to NPR by the

11    Corporation for Public Broadcasting are taxpayer

12    dollars; correct?

13         A.    Correct.

14         Q.    All right.   And NPR receives these

15    taxpayer dollars through grants from the

16    Corporation for Public Broadcasting; right?

17         A.    Yes.

18         Q.    All right.   And I may refer to the

19    Corporation for Public Broadcasting as CPB.

20         A.    That's fine.

21         Q.    All right.   You would agree with me that

22    CPB is a private nonprofit corporation established

27

1   by Congress?

2        A.   Yes.

3        Q.   All right.  And CPB is the steward of

4   federal government investment in public media;

5   correct?

6        A.   Yes.

7        Q.   All right.

8            MR. DORE:  Counsel, I'm sorry, are you

9   saying CBB or CPB?

10           MR. LIPCHITZ:  CPB.

11           MR. DORE:  Okay, I'm sorry, I misheard

12   you.

13           MR. LIPCHITZ:  It's okay.

14   BY MR. LIPCHITZ:

15       Q.   And can you agree with me, sir, that

16   Congress has not identified NPR by name in the

17   Public Broadcasting Act as an entity being

18   automatically entitled to federal funding?

19           MR. DORE:  Objection to the form of the

20   question.

21           THE WITNESS:  Sorry, can you rephrase

22   the question?

28

1    BY MR. LIPCHITZ:

2        Q.    Sure.

3              Can you agree with me that Congress has

4    not identified NPR by name in the Public

5    Broadcasting Act as an entity automatically

6    entitled to federal funding?

7              MR. DORE:  Same objection.

8              THE WITNESS:  "Automatically entitled,"

9    can you explain what you mean by that?

10   BY MR. LIPCHITZ:

11       Q.    Yeah.

12             Do you think that you have an

13   entitlement under the Public Broadcasting Act to

14   federal funds?

15             MR. DORE:  Objection to form.

16             THE WITNESS:  The way that you phrased

17   that, I wouldn't say there is an entitlement.

18   BY MR. LIPCHITZ:

19       Q.    Okay.  NPR does not receive any funds

20   directly appropriated to Congress -- let me

21   rephrase that, I'm sorry.

22             NPR does not receive any funds directly

29

1    appropriated by Congress to NPR; right?

2          A.    Do you mean through the Corporation for

3    Public Broadcasting, or do you mean the CP --

4          Q.    No, I mean directly from Congress.

5    Congress makes no appropriations directly to NPR?

6          A.    No.

7          Q.    No, that's a true statement; or, no, you

8    disagree with it?

9          A.    That is a true statement.

10          Q.    All right.  And the taxpayer funds that

11    NPR receives comes through the Corporation for

12    Public Broadcasting through grants; right?

13          A.    Correct.

14          Q.    All right.  For how many years has NPR

15    been receiving grants from the Corporation for

16    Public Broadcasting?

17                MR. DORE:  Objection to the form.

18                THE WITNESS:  I don't know the exact

19    number of years.  Decades.

20    BY MR. LIPCHITZ:

21          Q.    Okay.  And -- since its inception, sir?

22          A.    Yes, I would assume so.  I wasn't there.

10/21/2025        National Public Radio, Inc., et al. v. Donald J. Trump, et al.        Ryan Merkley

30

1        Q.    Okay.  You are the chief operating

2    officer, though?

3        A.    Understood.

4        Q.    All right.  And when NPR has received

5    federal funds from the Corporation for Public

6    Broadcast [sic], it's been through written grants;

7    right?

8            MR. DORE:  Objection to the form.

9            THE WITNESS:  I am aware that CPB has

10    given funds through written grants, yes.

11    BY MR. LIPCHITZ:

12        Q.    Okay.  And so NPR is a grantee of CPB

13    over the years; correct?

14        A.    Yes, currently is and, as I'm aware, has

15    been.

16        Q.    All right.  And you would agree with me

17    that as a steward of congressional funds, the

18    Corporation for Public Broadcasting has a

19    legitimate right to ensure that its grantees are

20    transparent?

21        A.    Yes.

22        Q.    Okay.  You'd agree with me that as a

32

1              THE WITNESS:  I don't know.

2    BY MR. LIPCHITZ:

3        Q.   Okay.

4        A.   I would assume so, but I have no idea.

5        Q.   Well, are you -- you're the chief

6    operating officer?

7        A.   Yes.

8        Q.   Are you aware of a single instance where

9    the Corporation has transferred funds to NPR

10   without a signed written grant agreement --

11       A.   No.

12       Q.   -- being in place.

13       A.   I'm not.

14       Q.   All right.  Now, the way the grant

15   process works, sir, is that NPR submits a proposal

16   to the Corporation for Public Broadcasting;

17   correct?

18       A.   Yes.

19       Q.   All right.  And a proposal is a request

20   for funds; correct?

21       A.   Correct.

22       Q.   All right.  And NPR has to lay out in

33

1    its proposal how much funds it's requesting and

2    what it's going to use the funds for?

3         A.   Correct.

4         Q.   Okay.  And then NPR has to negotiate

5    with the Corporation for Public Broadcasting as to

6    the terms of the grant; correct?

7         A.   Yes.

8         Q.   All right.  And then assuming there was

9    agreement on the terms, the Corporation and NPR

10   would enter into a signed written grant agreement;

11   right?

12        A.   Yes.

13        Q.   All right.  Now, in these written grant

14   agreements, the Corporation for Public

15   Broadcasting lays out the obligations and

16   responsibilities of the grantee before taxpayer

17   funds are issued; right?

18        A.   Yes.

19        Q.   All right.  Now, let's talk about

20   content creation here for a minute.

21             You'd agree with me that the Corporation

22   for Public Broadcasting plays no role in reviewing

34

1    or approving the programming NPR creates; right?

2          MR. DORE:  Objection to the form.

3          THE WITNESS:  I would agree CPB does not

4    have a role in the creation of content.

5    BY MR. LIPCHITZ:

6          Q.   Okay.  And NPR -- I mean, sorry, the

7    Corporation for Public Broadcasting plays no role

8    in reviewing or approving the programming content

9    that NPR provides to radio stations; correct?

10         A.   That's correct.

11         Q.   And the Corporation for Public

12   Broadcasting plays no role in telling local radio

13   stations, and I mean public radio stations,

14   whether they should purchase or not purchase

15   NPR-related content?

16         MR. DORE:  Objection to the form.

17         THE WITNESS:  Will you ask the question

18   again, please?

19   BY MR. LIPCHITZ:

20         Q.   Sure, absolutely.

21         The Corporation plays no role in telling

22   local public radio stations whether they should

35

1    purchase or not purchase NPR-related content?

2              MR. DORE:  Objection to the form.

3              THE WITNESS:  I believe that's correct.

4    BY MR. LIPCHITZ:

5         Q.   Okay.  And NPR has been clear that it

6    will never be a party to limitations on the

7    reporting of its journalists; right?

8         A.   Correct.

9         Q.   Now, fair to say that NPR has been quite

10   clear publicly that it will not be silenced as to

11   what it can say?

12        A.   I don't know if I would phrase it that

13   way.

14        Q.   Okay.  Well, NPR has been quite clear

15   that it has the right to publish whatever content

16   it sees fit; right?

17        A.   I think NPR has asserted it has a

18   First Amendment right, and that NPR has expressed

19   its commitment to a set of journalistic values and

20   processes, ethics and procedures in the reporting

21   of news.

22        Q.   Okay.  And fair to say that throughout

39

1    journalistic standards and practices after

2    Congress called the CEO before it; correct?

3        A.    I would agree with that statement.

4        Q.    Okay.  And will you agree with me that

5    since Trump became president, NPR has not deviated

6    from its standard journalistic practices and

7    policies?

8        A.    I'm not aware of any deviation from its

9    practices and policies, but I'm not involved in

10   the production of editorial.

11       Q.    Okay.  Are you aware of any deviations

12   of NPR's journalistic practices and policies at

13   any time in 2025?

14       A.    I am not.

15       Q.    Would you agree with me that one of the

16   core values of the Public Broadcasting Act is the

17   ability for public media to publish whatever

18   content it wishes, free of government

19   interference?

20       A.    Yes, I would agree with that.

21       Q.    Okay.  And you'd agree with me that the

22   Corporation for Public Broadcasting helped protect

40

1    those core values?

2        A.    Sorry, can you ask the question again?

3        Q.    Sure.

4              You would agree with me that the

5    Corporation for Public Broadcasting helped protect

6    those core values?

7        A.    I would agree with that.

8        Q.    Okay.  All right.

9              The Public Radio Satellite System, PRSS?

10       A.    Yeah.

11       Q.    All right.  It's a system of

12   transmitters, relay stations, and satellite

13   networks that radio stations use to receive and

14   distribute content?

15       A.    That is correct.  And that distributors

16   use to distribute content.

17       Q.    Okay.  And it's -- essentially it

18   provides a conduit for program providers and radio

19   stations to receive content; right?

20       A.    Yes.

21       Q.    All right.  NPR doesn't own the

22   satellites; correct?

44

1    that use this system are not NPR members?

2        A.   As I said, it's about 243 stations that

3    are member stations.  So yeah, you can subtract

4    that from the balance.

5        Q.   Okay.  You'd agree with me that NPR

6    cannot use -- well, you'd agree with me that

7    interconnection funds are not used to create

8    content?

9        A.   Correct.

10       Q.   Nor can they be used for any other

11   purpose than to support PRSS?

12       A.   That's correct.  They are used to

13   support interconnection.

14       Q.   Okay.  And just to be clear, it has

15   nothing to do with content creation; right?

16            MR. DORE:  I'm sorry, objection to the

17   form.

18            MR. LIPCHITZ:  Sure.

19   BY MR. LIPCHITZ:

20       Q.   PRSS -- well, let's go backwards.

21            Interconnection funds cannot be used to

22   create content; correct?

45

1        A.    That's correct.

2        Q.    All right.  Now, PRSS is supported

3    financially through fees charged radio stations

4    seeking to use the satellite interconnection

5    system; right?

6        A.    That is one source of revenue, yes.

7        Q.    Okay.  What are the other sources of

8    revenue?

9        A.    The PRSS receives funding from stations

10   who pay fees, as you noted.  They also receive

11   funds from distributors who pay to distribute

12   their programs over the network, and then there

13   are also grants.

14       Q.    Okay.  And the grants that you reference

15   are grants from the Corporation?

16       A.    Correct.

17       Q.    All right.  And it's NPR that determines

18   the fees that it charges radio stations to be --

19   to use the satellite interconnection system;

20   right?

21       A.    A subcommittee of the NPR board called

22   the interconnection committee, which is

46

1    represented by members of NPR and also nonmember

2    stations determines the rate and recommends it.

3        Q.   All right.  And you said it's a

4    subcommittee of the NPR board; right?

5        A.   That's correct.

6        Q.   All right.

7        A.   Because NPR is the designated operator,

8    so it's the accountable entity.

9             MR. LIPCHITZ:  Can I have 54.

10   BY MR. LIPCHITZ:

11       Q.   All right.  Is PRSS self-sufficient in

12   covering its annual operating costs through

13   revenues it collects from all users in the system?

14       A.   In the current year?

15       Q.   Let's start with in the current year.

16       A.   Are you asking about fiscal '26, which

17   we are now in?

18       Q.   Why don't we talk about fiscal '24.

19       A.   NPR, in its operation of PRSS, it would

20   be sustainable if you include draw from the PRSS

21   trust reserve, which helps support the renewal of

22   infrastructure and technology, and also draw from

47

1    the reserve that NPR manages.  So revenues would

2    include the fees that we've just described, plus

3    reserve draw and grants.

4         Q.   Okay.  So it's entirely self-sufficient?

5         A.   Yes.

6         Q.   All right.  In fact, in August of 2025,

7    NPR had healthy reserves for PRSS; correct?

8              MR. DORE:  Objection to the form.

9              THE WITNESS:  NPR does maintain a

10   reserve for PRSS, yes.  I would say it's fair to

11   call it healthy.

12             MR. LIPCHITZ:  Can I have 55, please.

13             Can we mark that as the next exhibit.

14             (Merkley Deposition Exhibit 2 was marked

15   for identification and attached to the

16   transcript.)

17   BY MR. LIPCHITZ:

18        Q.   Take a look at that e-mail for me.

19             (Witness peruses the exhibit.)

20   BY MR. LIPCHITZ:

21        Q.   All set, sir?

22        A.   Yeah.

107

1              Do you see that?

2        A.    Yeah, I see Nick's e-signature, and Pat

3    signed it.

4        Q.    Okay.  Now, in April of 2025, NPR knew

5    that this grant was expiring; correct?

6        A.    I'm sorry, would you ask the question

7    again?

8        Q.    Sure.  In April of 2025 -- well, let's

9    back up.

10             In early 2025, NPR knew that this grant

11   was expiring and would expire on September 30th,

12   2025; right?

13       A.    Yes.

14       Q.    All right.  And in 2025, NPR wanted the

15   Corporation to provide it with more taxpayer

16   funds; correct?

17       A.    Yes.

18       Q.    And in order to receive those funds, it

19   had to get a signed written grant agreement;

20   right?

21       A.    Correct.

22       Q.    All right.  But before a grant could be

110

1  understanding.  This is an e-mail from one of your

2  employees; correct?

3       A.   Sure.  But if you want to ask me about

4  an e-mail thread from one of my employees, you

5  could also ask my employee who testified for you

6  yesterday.

7       Q.   Okay.  And I'm just ask- --

8       A.   So why don't you ask him what he

9  understood --

10       Q.   I'm just asking you --

11       A.   -- rather than asking me to tell you

12  what they understood.

13       Q.   I'm just asking you.  You're the chief

14  operating officer of a 325-million-dollar

15  enterprise.  So you're well aware that you needed

16  the Corporation's board to authorize negotiations

17  with NPR for any interconnection funding; correct?

18       A.   Yes.

19       Q.   And that's what the Corporation's board

20  did; right, sir?

21            MR. DORE:  Objection -- wait, hold on.

22            Objection to the form of the question.

115

1           THE WITNESS:  Yes, I understand that.

2    BY MR. LIPCHITZ:

3        Q.    All right.  As of April 2nd, 2025,

4    you'll agree with me there was no written

5    agreement between the Corporation and NPR for any

6    grant agreement relating to Public Radio Satellite

7    System, other than the one that was expiring on

8    September 30th?

9        A.    Right.  On April 2nd, we were operating

10   under an existing agreement that expired on

11   September 30th.

12       Q.    So there wasn't a new written grant

13   agreement between the Corporation and NPR?

14       A.    No, the staff above the organizations

15   had worked to come to terms in order to allow them

16   to bring a recommendation to their board, which

17   you see here they approved.

18       Q.    They approved management to negotiate an

19   amendment; correct?

20       A.    They took the next step in their process

21   towards giving the grant, yes.

22       Q.    Okay.  And the Corporation never sent

116

1    NPR a draft agreement; did it?

2          A.    I did not see one.

3          Q.    You've searched your files as part of

4    discovery in this case; have you not?

5          A.    Our legal team would have done that,

6    yes.

7          Q.    Okay.  And you haven't seen any draft

8    agreement that the Corporation provided to NPR;

9    correct?

10         A.    I have not.

11         Q.    And you haven't seen any statement of

12   work sent to NPR by the Corporation?

13         A.    For this extension or ever?

14         Q.    Yes, for this extension.

15         A.    No, we had discussed terms in advance.

16   Those have been shared back and forth between

17   staff and have not been converted into a document

18   in the structure of a statement of work, no.

19         Q.    I'm sorry, my question was very simple.

20               Has the Corporation, in connection with

21   this proposed amendment, they never sent you a

22   statement of work, a written statement of work;

117

1    correct?

2         A.   No, the statement of work goes with the

3    agreement, the agreement which we've already

4    talked about I have not seen.

5         Q.   Okay.  And there was no schedule of

6    deliverables or disbursements that was provided to

7    you in connection with this proposed amendment;

8    right?

9         A.   Also an element of the same agreement

10   that I've already said we did not get.

11        Q.   Okay.  You have said under oath that in

12   April that you and NPR staff was busy, quote,

13   finalizing the contract.

14             Are you familiar with that?

15        A.   Yes.

16        Q.   Okay.  But you hadn't even been sent a

17   draft contract by the Corporation; correct?

18        A.   Correct.

19        Q.   You hadn't been sent a schedule of

20   deliverables; correct?

21        A.   Correct.

22        Q.   So there was nothing to finalize; was

124

1    question.

2              You may answer.

3              THE WITNESS:  As I said in my statement,

4    we had been in negotiation with CPB, and we had

5    been informed that the board had approved moving

6    ahead.

7    BY MR. LIPCHITZ:

8         Q.   Okay.  My question --

9         A.   And then we were in negotiation with CPB

10   staff in order to come to final terms.

11        Q.   Okay.  And those final terms hadn't been

12   agreed to; had they?

13        A.   We've already established this.

14        Q.   I'm sorry?

15        A.   I said, we've already discussed this,

16   yes.

17        Q.   Okay.  So final terms had not been

18   agreed to; had they?

19        A.   No.

20             MR. LIPCHITZ:  Could we have Tab 30,

21   please.

22             (Merkley Deposition Exhibit 13 was

204

1        A.    Okay.

2        Q.    So fair to say as of June, you thought

3    the Corporation was going to issue an RFP?

4        A.    I'd say that's fair, yes.

5        Q.    Okay.  And at no time in June did NPR

6    move for a TRO or a preliminary injunction;

7    correct?

8        A.    We did not.

9        Q.    Okay.  Now, if you could look to the

10   next line, Won't voting on PRS right now just fix

11   all this?

12            Do you see all that?

13       A.    I don't see that.  I'm sorry, what page

14   are you on?

15            Oh, I see the header.  It's the -- yes,

16   I see it.

17       Q.    Okay.  And you knew in April of 2025

18   that the Corporation wanted an independent entity

19   spun out of PRSS; correct?

20       A.    Correct.

21       Q.    All right.  And in April, you didn't

22   request a vote or viewpoints from the

205

1    interconnected radio stations for what they

2    thought?

3         A.   Correct.

4         Q.   And you didn't ask for a vote or

5    feedback from the interconnected stations in May?

6         A.   Correct.

7         Q.   You didn't ask for a vote or feedback

8    from the interconnected stations in June, when you

9    suspected that the Corporation would be issuing an

10   RFP; correct?

11        A.   Correct.

12        Q.   And even when the RFP decision was made,

13   you didn't ask the radio stations that

14   participated in interconnection to vote or provide

15   their viewpoints on this independent entity; did

16   you?

17        A.   Correct.

18        Q.   And even now to this day, according to

19   this, you think there shouldn't be a vote on who

20   runs PSS [sic] while the EO litigation is pending.

21   That's your position?

22             MR. DORE:  Objection to the form.

10/21/2025        National Public Radio, Inc., et al. v. Donald J. Trump, et al.        Ryan Merkley

206

1              THE WITNESS:  That's what's in the

2    document, yes.

3    BY MR. LIPCHITZ:

4        Q.   All right.  Now, let's drop down to, I

5    don't understand what the EO has to do with PRSS.

6              Do you see that?

7        A.   I do.

8        Q.   All right.  And you write in the second

9    bullet, or NPR says, CPB reversed its decision to

10   provide PRSS funding to NPR and instead to do what

11   the EO demands, stop funding NPR.

12             MR. DORE:  Objection; misstates the

13   document.

14             MR. LIPCHITZ:  Let me try it again.

15   BY MR. LIPCHITZ:

16       Q.   CPB reversed its decision to stop

17   provide PRSS funding to NPR and instead did what

18   the EO demands - stop funding NPR [sic].

19             Have I read that right?

20       A.   No.

21             MR. DORE:  No, you didn't.  So I'm not

22   trying to be difficult, but you didn't.

256

1    DISTRICT OF COLUMBIA )

2

3            I, Matthew Goldstein, RMR, CRR, Notary

4    Public within and for the District of Columbia, do

5    hereby certify:

6

7            That I reported the proceedings in the

8    within entitled matter, and that the within

9    transcript is a true record of said proceedings.

10

11            I further certify that I am not related to

12    any of the parties to the action by blood or

13    marriage, and that I am in no way interested in the

14    outcome of this matter.

15

16            IN WITNESS WHEREOF, I have hereunto set my

17    hand this 21st day of October, 2025.

18

19    _____

20            Matthew Goldstein, RMR, CRR

21

22