#1629

\*\*\*

18-00003

CORPORATION FOR PUBLIC BROADCASTING
AND
NATIONAL PUBLIC RADIO
AGREEMENT ON THE MANAGEMENT
OF THE
PUBLIC RADIO SATELLITE INTERCONNECTION SYSTEM

CPB Account No._____

THIS AGREEMENT is made this 17ᵀᴴ day of June, 1986, between the CORPORATION FOR PUBLIC BROADCASTING ("CPB") and NATIONAL PUBLIC RADIO, INC. ("NPR").

WHEREAS, the Public Broadcasting Act of 1967, as amended, authorizes CPB to assist in the establishment and development of one or more interconnection systems to be used for the distribution of public telecommunications services so that all public telecommunications entities that wish to may disseminate such services at times chosen by the entities;

WHEREAS, NPR is a nonprofit corporation organized under the laws of the District of Columbia to perform various functions, including those in connection with nation-wide distribution of noncommercial educational and cultural radio programs; and NPR has demonstrated capacity and capability to perform the operations necessary for the interconnection of public telecommunications entities and the distribution of educational and cultural programs to those entities; and

WHEREAS, CPB has determined that it can substantially exercise its authority and responsibility under the Public Broadcasting Act, as referenced above, through an agreement with NPR whereby NPR agrees to manage and operate a national public radio satellite interconnection system on behalf of those public telecommunications entities in the manner described below.

NOW, THEREFORE, for the mutual considerations recited below, CPB and NPR agree as follows:

## Section I.  NPR Performance

I-1.  In consideration of the CPB performance listed below, and in consideration of the other mutual covenants contained herein, NPR agrees to make available and to provide to all participating licensees (as hereinafter defined) all of services and benefits of the public radio satellite interconnection system over which NPR has secured operational and managerial responsibility, which services and benefits shall be made available in the manner described in this Agreement and will be subject to the terms hereof.  NPR agrees, further, that all uses of the public radio satellite interconnection system managed by NPR, including but not limited to leasing channel capacity to commercial interests, shall be governed by the terms of this Agreement.

EXHIBIT
Ross
9
10/22/25

-2-

I-2. NPR acknowledges that certain criteria have been established by public radio licensees, by CPB, and by NPR to define those public radio licensees licensed by the Federal Communications Commission as noncommercial educational public radio stations who are capable and equipped to be interconnected by the public radio satellite interconnection system and who have agreed with NPR to be so interconnected (hereinafter referred to as participating licensees). A list of those stations, their call letters, location and licensees, as of the date of this Agreement, is expressly made part of this Agreement as Attachment A. That list may be periodically updated to add or delete participating licensees. A copy of the agreement between the participating licensees and NPR currently being used is expressly made part of this Agreement as Attachment B. No change in the terms of this Agreement shall be made or accepted by NPR without prior written notification to CPB made in sufficient time to permit CPB to notify all current or potential participating licensees of CPB's disagreement, if any, with any changes to the Agreement before they go into effect. NPR further acknowledges that these participating licensees have accepted and agreed to certain policies and procedures for the effective operation of the public radio satellite interconnection system. Those policies and procedures entitled "The Philosophy and Policy for the Utilization of the Public Radio Satellite System - May 1981," as may be amended from time to time are hereby incorporated herein by reference. NPR agrees to comply with and fully abide by those policies and procedures in the operation and management of the public radio satellite interconnection system. Further, NPR agrees not to modify or accept modification to those policies and procedures without prior written notification to CPB and, if CPB disapproves, without giving CPB an opportunity to notify all participating licensees of CPB's disapproval, if any, in a manner satisfactory to CPB prior to any NPR Board action or any station vote.

I-3. NPR agrees that this Agreement is specifically conditioned upon NPR's submitting to CPB the list of all participating licensees referred to in I-2, above, not later than 90 days after the execution of this Agreement, and certifying that NPR has executed a new and revised agreement with each participating licensee to which NPR will supply public radio satellite interconnection services, which agreement specifically reflects the new interconnection arrangement involving that certain Transponder Trust and which specifically provides:

    a. the type and level of public radio satellite interconnection service to be provided by NPR to the participating license;

    b. an agreement between each participating licensee and NPR that the participating licensees will pay NPR certain established rates for the interconnection service; that NPR has established a prudent and effective system for collecting those payments to which the licensee will be subject; and that NPR may suspend or terminate service to any participating licensee who fails to pay its appropriate fee; and

-3-

c.  an agreement between the participating licensee and NPR that, in accordance with the referendum on operation of the public radio interconnection system of December 1980 (incorporated herein by reference), each participating licensee agrees to be fully responsible for payment for all public radio interconnection services it receives and that all public radio participating licensees agree to assume full financial responsibility for the operation of the public radio satellite interconnection system. This agreement must also specifically state that the participating licensee acknowledges and agrees that CPB's full exercise of its responsibilities for cost of public radio satellite interconnection, as defined by the Public Broadcasting Amendments Act of 1981, will be achieved through payment to the licensee of its pro rata share of the amounts reserved for public radio licensees under 47 U.S.C. 396(k)(3)(A)(iii)(I).

*if CPB-qualified,*

I-4.  NPR agrees that this Agreement and the agreements between NPR and the participating licensees for public radio satellite interconnection services shall constitute a voluntary arrangement between CPB, NPR, and the participating licensees for the payment of the full costs of public radio satellite interconnection as described in the Public Broadcasting Amendments Act of 1981 and all legislative reports accompanying that Act, and that all funds required to operate and maintain the public radio satellite interconnection system shall be the responsibility of those participating public radio licensees who use the services.

I-5.  NPR agrees to establish and publish clear and equitable criteria for access to the public radio satellite interconnection system for all noncommercial educational public broadcast stations and other public broadcasting entities, other than participating licensees, in compliance with the requirements of 47 U.S.C. 396(h)(2). Further, NPR agrees that access and service charges to these entities will be fair and reasonable and reflected on a published rate card that has been approved by the NPR Board of Directors and provided to CPB when it is put into effect by NPR.

I-6.  The parties acknowledge that part of the management and operation of the public radio satellite interconnection system may require NPR to manage and coordinate the leasing of excess channel time on the public radio transponder to commercial interests.  NPR agrees that, consistent with this Agreement, public broadcasting use will receive first priority in the allocation of channel space.  NPR further agrees that it will regularly consult with the participating licensees and other public telecommunications users of the system (or their representatives) to assess the needs of public telecommunications for channel capacity, and that it will adjust channel allocations to accommodate increased public telecommunications user demand

-4-                    ***

at least annually, if required.  All revenues realized by NPR from
the leasing of channel space to commercial interests shall be
applied to the actual costs of providing public radio distribution
and interconnection service for the purpose of reducing the charges
to individual participating licensees or adjusting the published
rate card as described in Section II-3, below.

I-7.  NPR agrees to establish a process for developing and
recommending policy necessary for the governance of the public
radio satellite interconnection system.  That process shall include
a consideration of representative views of (a) independent producers
and public telecommunications entities not members or otherwise
affiliated with NPR, which may use satellite interconnection
services; and (b) minority groups and women, and shall be conducted
in the fashion agreed to by CPB and NPR and currently in place at
the time of the execution of this Agreement.  In addition, NPR
will consult with CPB, in advance, as part of the process of
developing and recommending policy necessary for the governance
of the interconnection system.

I-8.  The parties agree that they shall develop and use a mutually-
acceptable mechanism for calculating the savings to the public
radio satellite interconnection system each year that result from
the satellite transponder purchase transaction and ownership of the
transponder on behalf of public radio.  This mechanism shall take
into account the variable factors in the costs of the interconnec-
tion system, and may be subject to modification or adjustment by
the mutual agreement of the parties.  NPR will report to CPB on an
annual basis how much cost savings was realized by NPR during the
preceding year in the management of the public radio satellite
interconnection system as the result of this transaction and how
the cost savings were applied or distributed.

I-9.  For FY 1987, NPR agrees to apply the entire cost savings realized
from the satellite transponder purchase transaction and ownership
of the transponder on behalf of public radio to reduce the
Distribution/Interconnection fee for the participating licensees.
Thereafter, all cost savings resulting from this transaction shall
be applied as determined by the full NPR governance process, and
reported to CPB in the report described in I-8, above.

I-10.  NPR agrees that it will obtain and maintain a lease with the
Transponder Trust which will permit NPR to have access to the
public radio transponder or any backup service or replacement
transponder to provide service under this Agreement to public
broadcasting.  Continuous maintenance of such a lease shall be a
material provision of this Agreement, and default under such
lease by NPR shall be considered a reason for termination of this
Agreement as described in Section IV-2, below.

-5-                    ***

## Section II.  CPB Performance

II-1.  CPB has agreed to provide sufficient funds to allow the purchase of that certain satellite transponder currently being used for public radio satellite interconnection by a Transponder Trust established by CPB for the purpose of holding title to the public radio transponder.  CPB has also directed the Transponder Trustees to execute a lease, acceptable to CPB, with NPR to manage and operate the public radio transponder.  The execution and maintenance of this lease with NPR, made possible by the direction of CPB to the Transponder Trust, shall serve as consideration for NPR's performance under this Agreement.

II-2.  CPB agrees to continue, for the term of this Agreement, to make payments to all CPB-qualified public radio licensees (as that term is publicly defined by CPB from time to time) in such amounts as are determined by CPB under the directions of 47 U.S.C. 396(k)(3)(A)(iii)(1), which amounts may be used at the discretion of the recipient licensees for the purposes agreed to in the Community Service Grant offer and acceptance with CPB.

II-3.  CPB agrees that as long as the participating licensees continue full financial responsibility for the total annual costs of the public radio satellite interconnection system, payments received by NPR from the commercial use of the satellite interconnection system will be distributed according to NPR's "fully distributed costs" financial system (as described in NPR's FY 1982 Cost Sharing Manual as it may be revised from year to year after consultation with CPB), except that CPB's share of this commercial revenue shall not be less than five percent of the amount distributed in any year.  This financial system and the distribution of the payments received will be reviewed annually by CPB based on the information provided by NPR under Section IV-4.c. of this Agreement. If, as a result of CPB's annual review, CPB determines that the distribution of cost and/or the definition of what constitutes costs are not equitable to all parties, then CPB will so notify NPR and NPR must modify the distribution and/or the definition to the satisfaction of CPB and the participating licensees.  CPB and NPR will discuss in good faith, the manner in which any required modification will be implemented.

II-4.  NPR agrees to analyze revenues received from commercial leasing of excess transponder channel space, to calculate cost sharing allocations and to issue cost sharing payments to CPB based on the share described in Section II-3, above, on a monthly basis for every month during the term of this Agreement. All payments to CPB will be accompanied by a full accounting of the commercial revenues received and the distribution or application of those revenues as described in Section IV-4.e., below. CPB's renewal of this Agreement will be contingent upon receipt of all payments to CPB for any given fiscal year by January 31 of the following year.

-6-                    ***

## Section III.  Fixed Cost Provision of the Public
## Broadcasting Amendments Act of 1981

III-1.  The parties agree that so long as the participating licensees
continue full financial responsibility for the total annual costs
of the public radio satellite interconnection system, then if cir-
cumstances cause CPB to reduce amounts distributed to public radio
licensees under 47 U.S.C. 396(k)(3)(A)(iii)(I) as a result of the
"trigger mechanism" described in 47 U.S.C. 396(k)(A)(v), CPB agrees
that none of the reduction will be used to pay for the costs to
CPB of interconnection facilities and operations (as described in
subsection (v)(III) of the last cited section).

III-2.  The total annual costs referred to above in III-1, shall
not include the interconnection cost paid by CPB, directly or
indirectly, for distribution of program material funded by CPB
or the costs of any temporary services to participating licensees.

## Section IV.  Term, Annual Review, and Termination

IV-1.  The term of this Agreement shall be from date of execution
hereof through September 30, 1988, unless sooner terminated by CPB
pursuant to the provisions hereof or extended by CPB according to
Section IV-5, infra.  This Agreement hereby supersedes and replaces
any prior or current agreement that may exist between the parties
with respect to the management of the public radio satellite
interconnection system.

IV-2.  This Agreement shall terminate automatically in the event
that: for any reason NPR ceases to be the entity providing
primary interconnection and distribution service to public radio
stations in the United States; NPR commits an act of bankruptcy
or assigns assets to its creditors; if NPR is found to be in
default of that certain lease with the Transponder Trust causing
the lease to be terminated at any time; or if federal appropri-
ations to CPB are suspended, terminated, or reduced to a level
that makes impossible CPB's ability to make payments to stations
and satisfy all of its statutory obligations which would be necessary
to perform under this Agreement and those conditions exist for a
period of more than 30 days.  In addition, if the current financing
arrangement between CPB, NPR and the participating licensees,
which is anticipated by this Agreement, shall have changed substan-
tially during the term hereof, then the parties agree that this
Agreement shall be immediately terminated and the parties agree to
enter into good-faith negotiations of a new agreement, if appropriate.

IV-3.  CPB shall conduct an annual review and analysis of NPR's operation and management of the public radio satellite interconnection system during each fiscal year, which review shall be completed by March 31 next following the end of the fiscal year under review.  The purpose of this review and analysis is to determine if NPR, in the sole judgment of CPB, is managing the public radio satellite interconnection system consistent with the authorities and responsibilities described in the Public Broadcasting Act, as amended; consistent with the public interest; consistent with the provisions of this Agreement, and in an efficient manner appropriate to the current needs of public radio in the United States.

IV-4.  To assist CPB in the conduct of the review and analysis described above, NPR will provide CPB, by January 31 of each year, a written report to include the following for the immediately previous fiscal year:

a.  a description of the process used by NPR pursuant to subsection I-7, for developing and recommending policy necessary for the governance of the public radio satellite interconnection system and any documents, material or information resulting from that process.  This description is to include a listing giving the name, affiliation, sex and ethnicity of each person on the NPR Board, in NPR Senior Management, or on any committee empaneled by NPR who may have participated in this process;

b.  a copy of all documents or other material issued by NPR relating to the criteria described in Subsection I-5, for access by participating licensees, other public telecommunication entities and other persons to the public radio satellite interconnection system;

c.  a copy of the NPR documents, publications or other material that establish rates to be paid by those who use the public radio satellite interconnection system together with the rationale used to establish such rates, such rationale to include individual costs incurred by NPR, by participating licensees who have satellite downlink ground terminals, and by participating licensees who have satellite uplink ground terminals, resulting from the provision of each of the six service elements of commercial use of the public radio satellite interconnection system.

d.  data describing the use of the public radio satellite interconnection system, on an hours-per-month basis, by:

(1)  the NPR National Program Service;

-8-                    ***

      (2)  the NPR Extended Service with separate data for
public radio stations and all other public
telecommunications entities and other persons and
entities transmitting noncommercial, educational
and cultural programs; and

      (3)  Commercial users.

    e.  a report on the gross revenues realized from any commercial
use of the public radio satellite interconnection system and the
disbursement of such revenues, including specific sources, with
separate data on the revenues realized from the use of:

      (1)  NPR Main Origination Terminal;

      (2)  Public radio station uplinks;

      (3)  Public radio station downlinks; and

      (4)  Relinquishment or resale of transponder
channels to any source.

    f.  a report indicating the cost basis for the Distribution/
Interconnection fee charged to each participating licensee, which
includes, but is not limited to specific itemization of the amount
by which the fee was reduced as the result of the purchase of the
public radio transponder.

    g.  a financial report that demonstrates that the revenues
raised from providing noncommercial distribution and interconnection
services have not been used to subsidize or otherwise limit the costs
or rates of providing commercial distribution and interconnection
services.

    h.  a report on the supply of available transponder channel
and time capacity and the demand for that channel and time
capacity over the past year and how the demand was fulfilled.  The
report must also include a listing of requests for channel space
and time made by public telecommunications entities that were not
fulfilled because of insufficient channel space or time availability.
The report must also contain an assessment of the current year
supply and demand for channel space and time.

    i.  any additional information that CPB may reasonably request,
either within a reasonable amount of time before the report is
filed, or after it is filed, for the purpose of CPB's analysis
and assessment of NPR's distribution and interconnection activities.

-9-                ***

IV-5. If, as a result of the annual review conducted according to Section IV-3, above, CPB determines that NPR is operating and managing the current public radio satellite interconnection system in the manner described in Section IV-3 to CPB's satisfaction, then CPB shall, upon written notification to NPR, extend the term of this Agreement for a period of one additional year beyond the end of the current term.

IV-6. If CPB determines, in its sole judgment, that NPR has not or is not operating and managing the public radio satellite interconnection system in a manner described in Section IV-3, then this Agreement shall not be renewed by CPB and shall be terminated at the end of its current term. CPB shall then have the right to take all action necessary to remove the operational and managerial authority of the public radio satellite interconnection system from NPR.

## Section V. Warranty

V-1. NPR warrants that it is competent and free to enter into and fully perform this Agreement; that it has secured or will have secured Agreements with each participating licensee (unless otherwise agreed by CPB) that provides that each licensee, and collectively with all other participating licensees, will assume the financial responsibility for the interconnection system; and that it has secured any necessary rights, clearances or licenses with respect to all materials, equipment and any other elements necessary for or used in connection with the performance of this Agreement.

V-2. NPR further warrants that it has obtained approval from the NPR Board of Directors for the current Distribution/Interconnection fee and will obtain such approval for any subsequent year's fee.

V-3. NPR agrees to indemnify and hold CPB harmless from and against any and all claims, damages, liabilities, costs and expenses (including legal fees) arising out of any breach of the above warranties.

## Section VI. Nondiscrimination

VI-1. During the performance of this Agreement, NPR agrees that it will not discriminate against any employee or applicant for employment because of race, color, religion, age, sex, national origin, or physical or mental handicap. NPR will take affirmative action to ensure that applicants are considered for employment, and that employees are treated during employment without regard to their race, color, religion, age, sex, national origin, or physical or mental handicap.

VI-2.  NPR further agrees that it will comply with all laws and regulations prohibiting discrimination on the basis of race, color, religion, age, sex, national origin, or physical or mental handicap that may be applicable to NPR.  These laws may include, but are not limited to: Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e); the Equal Pay Act of 1963 (29 U.S.C. 206); the Age Discrimination in Employment Act of 1967 (42 U.S.C. 621-34); Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d); Title IX of the Education Amendments of 1972 (20 U.S.C. 1681); and Title V of the Rehabilitation Act of 1973 (29 U.S.C. 790-794).

VI-3.  NPR will include the provisions of this Section in all sub-contracts entered into in connection with carrying out this Agreement.

## Section VII.  Equal Opportunity and CPB Assistance

The CPB Policy on "Equal Opportunity and CPB Assistance" is attached to this Agreement and is specifically made a part of this Agreement.  In accepting this Agreement, NPR agrees to implementation of this policy as a term or condition of this Agreement.

## Section VIII.  Examination of Records by CPB and/or the Comptroller General

NPR agrees that in accordance with 47 U.S.C. 396(1)(3) of the Public Broadcasting Act of 1967, as amended, it shall keep for three years beyond the end of the term of this Agreement, such records as may be reasonably necessary to fully disclose the amount and the disposition of the proceeds involved in the performance by NPR under this Agreement, regardless of the source, the total cost of the activities undertaken by NPR or any undertakings connected with this Agreement, and the amount and nature of that portion of the cost of this Agreement or related undertakings supplied by other sources, and such other records as will facilitate an effective audit.  NPR agrees further that CPB and/or the Comptroller General or their respective duly authorized representatives shall have access for the purpose of audit and examination to these records and to any other books, documents, papers, and records that are pertinent to funds received as the result of this Agreement, or to any funds received for public telecommunications purposes.

-11-          ***

## Section IX.  Changes

CPB and NPR shall each designate an administrative contract
representative.  By mutual agreement, these representatives may
from time to time make changes within the general scope of this
Agreement.  All such changes shall be in the form of a written
amendment to this Agreement unless the parties mutually agree that
written correspondence will be sufficient in a certain instance
to modify nonmaterial terms of this Agreement.  No person, other
than those designated contract representatives, shall be authorized
to make changes to this Agreement.

## Section X.  No Other Agreement

This Agreement supersedes and replaces any previous documents,
correspondence, conversations, or other written or oral under-
standings related to this Agreement which are not consistent
with or contained in it.

## Section XI.  Construction

This Agreement shall be construed under the laws of the District
of Columbia, regardless of the place of execution or performance.
All instruments between the parties executed pursuant to this
Agreement shall also be governed by the laws of the District of
Columbia.

     IN AGREEMENT to the foregoing, the authorized representatives
of CPB and NPR affix their signatures.

For   CORPORATION FOR PUBLIC BROADCASTING

By _____        Date  6|16|86
   Martin Rubenstein, President and
                      Chief Executive Officer

For   NATIONAL PUBLIC RADIO

By _____        Date  June 17, 1986
   ~~Douglas J. Bennet, President~~
   SIDNEY L. BROWN, VICE PRESIDENT,
   FINANCE AND ADMINISTRATION