# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL PUBLIC RADIO, INC.,<br>*Plaintiff*,<br><br>v.<br>DONALD J. TRUMP,<br>*in his official capacity as President of the United States of America*, et al.,<br><br>*Defendants*. | Civil Action No. 25-cv-1674-RDM |

### SUPPLEMENTAL DECLARATION OF KATHY MERRITT

I, Kathy Merritt, do hereby state under oath as follows:

1. I am Executive Vice President and Chief Operating Officer of the Corporation for Public Broadcasting ("CPB"). In my role, I am a member of the executive management team and oversee CPB's general operations, including strategies and grantmaking for radio, journalism, television, system strategies, and Community Service Grants. I attend board meetings and execute on the strategy and direction of the Board of CPB.

2. NPR has raised in its motion for a preliminary injunction that CPB did not require PBS to spin out its management of the television interconnection into a separate independent entity after April 2, 2025. The reason for that is simple. Public television interconnection in its current form as a standalone system is fundamentally different from public radio interconnection in numerous respects. First, as of January 2025, close to 95% of all public television stations were members of PBS and, therefore, PBS is representing their interest. In contrast, approximately one-third of public radio stations that use the radio interconnection system are non-NPR members.

1

3. Second, PBS addresses the needs of the public television stations by providing both broadcast and digital distribution services. PRSS provides only broadcast interconnection.

4. Third, CPB had no evidence of PBS placing its interests ahead of the public television stations they served. In contrast, CPB has observed numerous ways in which NPR is has not been serving the interests of public radio stations, particularly non-NPR member stations, including:

- Lack of implementation of the Grove content management system to non-NPR members. In February 2021, CPB executed a three-year $6.965 million grant to NPR to build a new content management system to help stations deliver content on their websites and mobile devices. The grant ended on May 31, 2024, after several extensions due to significant delays from NPR. NPR agreed to implement a second phase of Grove that would provide the system to non-NPR member stations. As of today, **no non-Member radio stations are on Grove, as the new leadership of NPR would not move forward with serving non-member stations.**

- Decision-making on PRSS – thus for all of radio interconnection – runs through the NPR Board, which represents the interests of NPR. All station representatives on the NPR Board are leaders of NPR member stations. As NPR says in its proposal to CPB's RFP issued on July 14, 2025:

    "NPR is governed by a 23-member Board of Directors ("NPR Board"), which consists of 12 individual member station managers who are elected **by their fellow NPR members,** and 11 other directors. The 11 other directors include NPR's President and Chief Executive Officer, the Chairperson of the NPR Foundation Board of Trustees, and nine prominent members of the public elected by the NPR Board and confirmed by NPR members."

- The Distribution/Interconnection committee of the NPR Board is charged with overseeing the operation of PRSS. The nine (9) member committee has five (5) NPR Board members and four (4) non-Board members. According to the website for NPR distribution (https://www.nprdistribution.org/about#oversight-di), "The non-Board members of the D/I Committee are elected by the NPR Board and confirmed by the interconnected stations." Therefore, the NPR board controls the election of non-NPR station members. Votes by the interconnected stations are often extended to gain a quorum because of a lack of participation.

- CPB has heard complaints for years from small stations, many of which are not NPR members, who say the interconnections fees they have to pay to PRSS are too high.

- Numerous surveys of public radio stations and stakeholders by CPB's consultants as well as CPB's March 2024 meeting on interconnection with station general managers have found dissatisfaction with PRSS. The direct comments provided by those radio station managers reflect their concerns and frustrations:

    - "Stations are wondering why PRSS has not expanded capabilities and offering further customization opportunities (e.g., digital platforms, audience analytics)."

    - "Smaller stations aren't capable of doing everything. It would be beneficial to give them a central service for things like cyber security."

    - "Should have a national distribution system <u>where governance is managed by local institutions where local institutions control decisions around tech stack</u>."

    - "We need a supporting infrastructure that allows for creation and distribution of content through digital products and platforms."

    - "The biggest business challenge is digital membership, converting digital consumers to members at a similar rate to terrestrial listeners amid subscription fatigue. Could interconnection help us with the data – helping us understand our users better and bringing them on the right journey? How do we do more with less? How do we continue to innovate?"

    - (regarding artificial intelligence and innovation) "How do we do this? We've got two really smart people, Dana (Golub of PBS) and Badri (Munipalla of NPR), who manage and lead interconnection for PBS and NPR, and we're throwing out a lot of ideas that are not part of interconnection as it exists. By default, we have to throw it at PBS and NPR regardless of whether they can do it, <u>or their own imperatives will be the ones prioritized, are the thumb that gets on the scale</u>. No one is stepping up to say, "Yes! We can do this!" Dana is ducking under the table, and Badri is saying "No, I don't want this, either." The structures we have now are not up for the future."

5.  Because the CPB Board felt that the needs of the television interconnection system were being addressed and would be faithfully be addressed by PBS, the Board approved CPB management to negotiate with PBS for additional funding for television interconnection and a written grant agreement was then negotiated and executed between CPB and PBS.

3

6. NPR has raised in its motion for a preliminary injunction that CPB engaged a crisis management consultant by the name of Carl Forti in mid-April, 2025. At that time, CPB was hearing through various Congressional leaders that President Trump was planning on issuing a recission bill under the Impoundment Control Act of 1974 (ICA) targeting Congressional appropriations already received by CPB. By mid-April, the media was openly reporting about Trump's planned recission of public media funds. https://www.npr.org/2025/04/15/nx-s1-5352827/npr-pbs-public-media-trump-rescission-funding.

7. On or about April 7, 2025, following the Board's April 4, 2025 approval of negotiations with NPR about amending the interconnection grant to include a request for a plan to spin off PRSS into an independent entity with broad based governance, Mr. Forti was engaged by CPB to seek his proposed strategy on how to politically approach and message Congress as to President Trump's anticipated rescission request. The engagement was limited to strategic-communications and appropriations planning—not related to any policy or grant-making decisions.

8. Mr. Forti's proposed strategy was to "spin" various events in order to create the narrative to members of Congress that CPB was "aligned" with President Trump's attacks on public media and stopping "biased media." He prepared a memorandum dated April 15, 2025, summarizing his own recommendations.

9. Mr. Forti's proposed strategy was concerning in a number of respects. First, he fundamentally did not understand CPB or the public media system. As a matter of statute, policy and practice, CPB does not review, advise, or approve any public media content. CPB does not dictate what content public media should be broadcast. So, neither I nor CPB shared President Trump's views on public media whatsoever.

10. Second, Mr. Forti's efforts to spin events were not accurate. By way of limited example, Mr. Forti contended what "sets us apart was we had already taken steps to address the administration's concerns by withholding interconnection funds from NPR, stopping grant for international news reporting, and stopping grant for NPR newsroom support." CPB had done none of those things. As of April 15, 2025, CPB had paid $1,656,812 of interconnection funds disbursed by CPB to NPR on February 10, 2025 and would make another $995,012 of interconnection funds disbursed by CPB to NPR on April 24, 2025, followed by another $959,100 of interconnection funds disbursed by CPB to NPR on July 24, 2025, as confirmed by NPR's own attachment to its sworn interrogatory answers. *See* Merkley Dep. Ex. 19.

11. Moreover, as made clear in my deposition testimony and prior declaration, the CPB Board had passed resolutions on April 4 and 7, 2025 authorizing CPB management, to negotiate an amendment to NPR's expiring interconnection agreement which would include seeking a "plan" from NPR on spinning out PRSS as an entity independent of NPR with broad based governance.

12. Similarly, CPB had not "stopped" any existing grant for international news reporting or for NPR newsroom support.

13. Mr. Forti's proposed communications strategy with Congress was not adopted and he was sidelined.

Signed under the pain and penalties of perjury this 27th day of October, 2025.

*/s/ Kathy Merritt*
Kathy Merritt