# EXHIBIT 3

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

NATIONAL PUBLIC RADIO, INC.,
          *Plaintiff*,

v.

DONALD J. TRUMP,
*in his official capacity as President of the United States of America*, et al.,

          *Defendants*.

Civil Action No. 25-cv-1674-RDM

## SECOND SUPPLEMENTAL DECLARATION OF EVAN SLAVITT

I, Evan Slavitt, do hereby state under oath as follows:

1.    I am Executive Vice-President and General Counsel of the Corporation for Public Broadcasting ("CPB"). As the Public Broadcasting Act of 1967, 47 U.S.C. § 396 (the "Act"), provides and authorizes, CPB is a private nonprofit corporation. As General Counsel, I am responsible for all legal affairs concerning CPB.

**The Non-Content Grant Approval Process At CPB For Grants Exceeding $1 Million**

2.    In NPR's Statement of Facts, paragraph 55, NPR asserts:

> When the CPB Board authorizes management to negotiate a contract, <u>that is generally the final formal action that the CPB Board takes with respect to that contract</u>. For example, on April 2, 2025, the same day the Board voted to pass a resolution directing CPB management to negotiate an extension of its grant agreement with NPR for the PRSS, the Board also authorized CPB management to negotiate an extension of its grant agreement with PBS for television interconnection. CBP management later executed that agreement with PBS, and there were no further Board approvals or resolutions concerning that agreement.

1

(internal citations omitted) (emphasis added).  This is not a correct statement as to CPB's Grant Approval Process for non-content grants that exceed $1 million, which requires final approval by the Board.

      3.    Attached as Exhibit A is CPB's Board of Directors' Reference Book.  As set forth Under the "Roles and Responsibilities of the Board of Directors, Chair of the Board, and President in Directing the Affairs of the Corporation for Public Broadcasting," it is the policy of CPB that:

> The Board is responsible for approving all "Matters Requiring Board Approval" as set forth in the Guidelines Regarding Board Approvals and Notification attached hereto as Exhibit A (the "Approvals/Notifications Guidelines").

Under the Approvals/Notifications Guidelines,

> Matters Requiring Board Approval:
>
> 1. Contracts and grants of and over $1 million in total contemplated payments for non-"program funding or program related" activities unless:
>
> a. The contracts and grants are specifically included in corporate budget approved by the Board; or
>
> b. The grant is to a public radio or television station and is calculated in accordance with eligibility criteria or awarded according to priorities that were established after consultation with representatives of the public broadcasting system and approved by the Board.

*Id.* and Exhibit A-1 (Approvals/Notifications Guidelines).

      4.    Under the Approvals/Notifications Guidelines, any putative interconnection grants, which are non-content grants, in 2025 require Board review and approval of the written grant contract <u>before</u> it is signed by CPB's President. CPB's process is as follows as to the interconnection grants over a $1 million is as follows.  The Board authorizes management to begin the negotiation process with a putative grantee.  Such approval may be formal or informal. After negotiation, the proposed written agreement goes through the following steps:

2

- Procurement review – ensures that the agreement is consistent with CPB's procurement policies;

- Office of Operations – ensures that the agreement has the appropriate budget, workplan, deliverables, and reporting obligations;

- Office of General Counsel – ensures that the agreement is legally acceptable;

- Finance – ensures that there is money for the proposal and verifies payment terms;

- Chief Operations Officer – final compliance check; and

- President – final management review.

Then and only then does the written agreement go to the Board for approval. Only after Board approval of the final agreement can it be executed by the President.

5. As for the CPB's approximately $90 million grant to PBS for television interconnection, that grant followed the above process and received final Board and was executed by CPB's President on April 14, 2025.

6. The Board has never approved any interconnection grant to NPR in 2025 because it never went through the above-described process.

7. CPB's contemplated grant award to PMI will need to follow the same process before it can be executed. Under the terms of the PMI grant, NPR will receive about $7.5 million.

**NPR's Claims Are Undermined By The Millions of Dollars That It Received Fron CPB**

8. In its motion for summary judgment and preliminary injunction, NPR has boldly asserted that "CPB has sought to acquiesce to the Administration's demands and punish NPR for the content of its journalism <u>by redirecting federal interconnection funds away from NPR by any means necessary</u>. . . ." and "CPB's intention all along was to stop direct federal funding to NPR for the PRSS <u>under any circumstances</u>" NPR Mem. at p. 1 and 17 (emphasis added). By "any means necessary" and "under any circumstances" apparently does not include:

3

- $1,656,812 of interconnection funds disbursed by CPB to NPR on February 10, 2025;

- $995,012 of interconnection funds disbursed by CPB to NPR on April 24, 2025; or

- $959,100 of interconnection funds disbursed by CPB to NPR on July 24, 2025, as confirmed by NPR's attachment to its sworn interrogatory answers.

*See* Merkley Dep. Ex. 19.

9.  Indeed, CPB paid over $3,610,924 in interconnection funds to NPR during Trump's presidency in 2025.

**The Appropriated Interconnection Funds At Issue Are Not Satellite Interconnection Fund Funds**

10. The appropriations bill for 2024 states:

> The following sums in this Act are appropriated, out of any money in the Treasury not otherwise appropriated, for the fiscal year ending September 30, 2024. . . . For payment to the Corporation for Public Broadcasting ("CPB"), as authorized by the Communications Act of 1934, an amount which shall be available within limitations specified by that Act, for the fiscal year 2026, $535,000,000….
>
> In addition, for the costs associated with replacing and upgrading the public broadcasting interconnection system and other technologies and services that create infrastructure and efficiencies within the public media system, $60,000,000.

Pub. L. 118-47. On their face these appropriated are not targeted to the Satellite Interconnection Fund as used in the Public Broadcasting Act. Moreover, the appropriation is broader than just interconnection, whether it be satellite interconnection, digital interconnection, or broadband interconnection, and extends to "other technologies and services that create infrastructure and efficiencies within the public media system."

11. NPR is aware that not all appropriated interconnection funds must be used for satellite interconnection because it has received grants from CPB using interconnection funds for non-satellite interconnection purposes. By way of limited example, in approximately 2018, CPB

issued a grant to NPR using appropriated interconnection funds NPR to assist public radio stations in acquiring technology to share content on their websites and on mobile devices (the "Grove Grant"). NPR was fully aware that the Grove Grant came from funds appropriated for interconnection systems and never raised any objection.

12. As a result of Congress' recission of CPB's funds, CPB publicly announced on August 1, 2025 that it would immediately begin an orderly wind-down of its operations following the passage of a federal rescissions package. (https://cpb.org/pressroom/corporation-public-broadcasting-addresses-operations-following-loss-federal-funding#:~:text=WASHINGTON%2C%20D.C.%20%28August%201%2C%202025%29%20%E2%80%93%20The%20Corporation,the%20first%20time%20in%20more%20than%20five%20decades ). In that press release, CPB stated "we now face the difficult reality of closing our operations," and that "the majority of staff positions will conclude with the close of the fiscal year on September 30, 2025." Since that public statement, CPB continues to be in the process of winding down as a non-profit corporation. CPB is targeting ceasing operations and being wound down by December 31, 2025, but as a practical matter, due to the lack of staff and support and the December holidays, CPB is targeting December 19, 2025 as the conclusion of all business.

Signed under the pain and penalties of perjury this 27th day of October, 2025.

*/s/ Evan Slavitt*
Evan Slavitt, General Counsel

5