## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL PUBLIC RADIO, INC., *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 25-cv-1674 |
| | ) | |
| DONALD J. TRUMP, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT CORPORATION FOR PUBLIC BROADCASTING'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL STATEMENT OF ADDITIONAL MATERIAL FACTS ABOUT WHICH THERE IS NO GENUINE DISPUTE

Pursuant to Fed. R. Civ. P. 56 and Local Rule 7(h), Defendant Corporation for Public Broadcasting ("CPB") hereby responds to Plaintiff's Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Summary Judgment (the "Statement") (Dkt. No. 57-2).

As a preliminary matter, Defendant objects to any assertion of fact set forth by the Plaintiff that is immaterial and irrelevant to the parties' motions for summary judgment. If an assertion of fact is not material to the parties' motions, the Court should disregard it *See* Fed. R. Civ. P. 56; LCvR 7(h).

Without waiving and while maintaining the foregoing objections, Defendant, in response to Plaintiff's Statement, responds as follows:

**NPR's Management and Operation of the Public Radio Satellite System (PRSS)**

1.     The Public Radio Satellite System (PRSS) is the satellite and terrestrial content distribution system that serves as the backbone of the nationwide infrastructure for the public radio system. Dkt. 21-4 at 2 (¶ 5) (Munipalla Decl.); *see also* Townsend Decl., Ex. 11 at 21:25–17:3

(Merritt Tr.) (testifying that the PRSS is currently the system that provides public radio interconnection).

**Defendant's Response: Undisputed for purposes of summary judgment.**

2.      NPR Distribution is the mission critical division of NPR that manages and operates the PRSS. Dkt. 21-4 at 2 (¶ 5) (Munipalla Decl.).

**Defendant's Response: CPB objects inasmuch as the averred fact uses vague, overbroad, and confusing language as to the meaning of the phrase "mission critical." CPB admits, for purposes of summary judgment, that NPR Distribution is a division of NPR that currently manages and operates the PRSS, which is the conduit to distribute content to public radio stations, and manages interconnection services for public radio stations. Townsend Decl., Ex. 6, Munipalla Tr. at 14:4-11, 20:22-21:18, 24:10-19.**

3.      The PRSS was built in the 1970s from funds provided by Congress through the Corporation for Public Broadcasting (CPB). Townsend Decl., Ex. 1 at 18 (Verified Response to Interrogatories).

**Defendant's Response: Undisputed for purposes of summary judgment. However, Defendant objects to Plaintiff's averred fact because it is immaterial and/or irrelevant to summary judgment that the PRSS was built in the 1970's from funds provided by Congress through CPB.**

4.      There are currently 375 broadcasting entities participating in the PRSS (collectively, the "Interconnected Stations"). *Id.* at 22 (Verified Response to Interrogatory 2).

**Defendant's Response: Disputed. There are currently 379 broadcasting entities participating in the PRSS. Townsend Decl., Ex. 6, Munipalla Tr. at 86:2-10, 88:20-89:13**

5.      The original mandate to form a national system to interconnect public radio stations flowed from the 1967 Public Broadcasting Act to CPB. With federally appropriated funds, CPB designed and built the first satellite systems for public TV (in or around 1976–77) and public radio (in or around 1979–80). *Id.* at 19.

**Defendant's Response**: **Undisputed for purposes of summary judgment, but CPB objects to any inference that "interconnection" equates only to satellite interconnection.** *See* **47 U.S.C. § 397(3).**

6.     CPB purchased the ground hardware and granted the asset rights to each interconnected station. CPB also negotiated the lease for public radio's first satellite transponder on Westar I. At that point in time, CPB delegated management of the PRSS to NPR by contract. Title to the central system operating hardware was originally held by NPR. *Id.*

**Defendant's Response**: **Undisputed for purposes of summary judgment. However, the averred fact is both immaterial and irrelevant to the claims in this case.**

7.     In 1981, NPR's Board of Directors adopted a document called "The Philosophy and Policy for the Utilization of the Public Radio Satellite System." Townsend Decl., Ex. 2 (NPR0022681). It created operational policies for NPR as the system manager, defined the role of the Technology/Distribution or T/D (today the Distribution/Interconnection or D/I) Committee, and spelled out procedures for station participation in the system governance process. Townsend Decl., Ex. 1 at 19–20 (Verified Response to Interrogatories).

**Defendant's Response**: **Undisputed for purposes of summary judgment. However, the averred fact is both immaterial and irrelevant to the claims in this case.**

8.     That same year, the Interconnected Stations voted to assume "full financial responsibility" for the distribution system. *Id.* at 20.

**Defendant's Response**: **CPB objects inasmuch as the averred fact uses vague, overbroad, and confusing language as to the meaning of the phrase "full financial responsibility." CPB admits, for purposes of summary judgment, that to become interconnected, stations must sign a contract and pay NPR Distribution a fee for the right to access the system. Townsend Decl., Ex. 6, Munipalla Tr. at 29:22-30:9. CPB further admits that a vote did occur in the 1980's, but disputes that the results of any such vote is still valid, and avers that no such vote has occurred since. *See, e.g.,* Townsend Decl., Ex. 6, Munipalla Tr. at 94:19-95:8.**

9.     In 1983, NPR faced a financial crisis and ownership of the central system equipment was renegotiated as part of a loan agreement between CPB and NPR. Because CPB

was prohibited by statute from owning or operating a distribution system, it created a charitable trust to hold title to the system equipment. NPR continued to manage the PRSS through a lease arrangement with the trust. *Id.* at 20.

    **Defendant's Response**: **Undisputed for purposes of summary judgment.**

10.    When the loan was repaid in 1985, the trust expired. The Interconnected Stations, however, decided to create a successor trust with new trustees to retain title to the system equipment. *Id.*

    **Defendant's Response**: **Undisputed for purposes of summary judgment.**

11.    Concurrently with voting in favor of creating a new successor trust in 1985, the Interconnected Stations voted for the management and governance responsibility for the PRSS to remain under the NPR Board of Directors. *Id.*

    **Defendant's Response**: **Disputed. NPR's Chief of Staff cannot identify any vote that was ever taken by any radio stations to designate NPR as the entity to receive interconnection funding from CPB, has never seen any evidence of such a vote being taken, has never asked anyone to provide her with such evidence, has never heard of any evidence of such a vote, does not know of the existence of such a document and does not know what any such document said. Defendant's SOF (Dkt. 61) Ex. G, McClellan Ross Tr. at 188:6-189:21.**

12.    When CPB purchased the satellite transponder for public radio in 1987, it created another charitable trust to hold title to this asset and any funds the system might accumulate for the purpose of satellite replacement. The two trusts were merged into the contemporary Public Radio Satellite Interconnection System Charitable Trust (the "Trust" or "PRST") in 1991. *Id.*

    **Defendant's Response**: **Undisputed for purposes of summary judgment.**

13.    Since 1985, NPR has been the national entity responsible for managing and operating the PRSS. Dkt. 38-3 at 2 (¶ 4) (2d Munipalla Decl.); Townsend Decl., Ex. 3 at 2–3 (NPR0021992).

**Defendant's Response**: Disputed. Public broadcast stations have not voted to designate NPR for any interconnection purpose since at least 2008. Townsend Decl., Ex. 6, Munipalla Tr. at 94:19-95:8. NPR's Chief of Staff cannot identify any vote that was ever taken by any radio stations to designate NPR as the entity to receive interconnection funding from CPB, has never seen any evidence of such a vote being taken, has never asked anyone to provide her with such evidence, has never heard of any evidence of such a vote, does not know of the existence of such a document and does not know what any such document said. Defendant's SOF (Dkt. 61), Ex. G, McClellan Ross Tr. at 188:6-189:21. NPR Distribution's Vice President denies that its PRSS contracts designate NPR (Distribution) as the entity to receive interconnection funds. Townsend Decl., Ex. 6, Munipalla Tr. at 212:13-213:20.

14.    NPR, as designated manager and operator of the system, has entered into an interconnection agreement with each Interconnected Station. Townsend Decl., Ex. 1 at 19 (Verified Response to Interrogatories); *see also, e.g*, Dkt. 38-3 (2d Munipalla Decl.), Exs. A–D.

**Defendant's Response**: CPB admits only that NPR enters into agreements with the interconnected stations. Townsend Decl., Ex. 6, Munipalla Tr. at 29:22-30:9. CPB otherwise disputes the averred fact. *See* Defendant's Response to ¶ 13. NPR Distribution's Vice President denies that its PRSS contracts designate NPR (Distribution) as the entity to receive interconnection funds. Townsend Decl., Ex. 6, Munipalla Tr. at 212:13-213:20.

15.    With few exceptions, those agreements automatically renew annually; for agreements that do not automatically renew annually, NPR and the Interconnected Station sign a renewal agreement each year. Dkt. 38-3 at 2 ¶¶ 4–5 (2d Munipalla Decl.).

**Defendant's Response**: CPB objects inasmuch as the averred fact uses vague, overbroad, and confusing language as to the meaning of the phrase "with few exceptions." CPB admits only that NPR enters into agreements with the interconnected stations. Townsend Decl., Ex. 6, Munipalla Tr. at 29:22-30:9.

16.    Because NPR has served as the manager and operator of the PRSS for decades, many of its agreements with Interconnected Stations have been in place for many years. Townsend Decl., Ex. 1 at 21 (Verified Response to Interrogatories).

**Defendant's Response**: CPB admits that NPR enters into agreements with the interconnected stations and currently manages the PRSS. Townsend Decl., Ex. 6, Munipalla Tr. at 29:22-30:9. CPB objects inasmuch as the averred fact uses vague, overbroad, and confusing language as to the meaning of the phrase "many years."

17.     When a new Interconnected Station joins the system, that station will sign a new interconnection agreement with NPR. *Id.*

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

18.     As an example of such an agreement, on or about February 12, 2025, NPR entered into a Public Radio Satellite Interconnection Agreement with the public telecommunications entity currently using the call letters KBCK-FM in Columbia Falls, Montana. *Id.*

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

19.     That agreement, which provides that it "will be automatically renewed for one-year periods," sets forth the "rights and privileges" and the "financial responsibility" of stations participating in the PRSS, and expressly recognizes NPR as "the entity designated by public telecommunications entities participating in the national public radio interconnection system to manage and operate the system." *Id.*

**Defendant's Response**: **Disputed. NPR Distribution's Vice President denies that its PRSS contracts designate NPR (Distribution) as the entity to receive interconnection funds. Townsend Decl., Ex. 6, Munipalla Tr. at 212:13-213:20.**

20.     NPR has an active interconnection agreement with each of the Interconnected Stations currently participating in the system. *Id.*

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

21.     CPB has recognized in grant agreements it has entered into with NPR for the purpose of distributing funds appropriated by Congress for interconnection purposes that the Interconnected Stations have designated NPR as their national entity for interconnection purposes. Dkt. 38-3 at 2 (¶ 6) (2d Munipalla Decl.).

**Defendant's Response**: **CPB admits that certain prior grant agreements have included language recognizing that NPR was the designated entity at that point in time.**

22.     The Interconnected Stations share full financial responsibility for the system. Each Interconnected Station is subject to the obligations and responsibilities of participating in the system, which include annual payment of a Distribution/Interconnection fee. Townsend Decl., Ex. 1 at 21 (Verified Response to Interrogatories).

**Defendant's Response: CPB objects inasmuch as the averred fact uses vague, overbroad, and confusing language as to what is encompassed by the phrase "full financial responsibility for the system." CPB admits that Interconnected Stations are required to pay fees to NPR Distribution. Townsend Decl., Ex. 6, Munipalla Tr. at 29:22-30:9**

23.     Under the operation and management of NPR Distribution, the PRSS has been consistently praised by the Interconnected Stations. Doc. 38-3 at 4 (¶ 14) (2d Munipalla Decl.); Townsend Decl., Ex. 5 at 2 (Munipalla Ex. 29).

**Defendant's Response: Disputed. NPR does not rely on any meaningful evaluative mechanism – its annual survey merely asks respondents to affirm NPR's excellence. Moreover, numerous stations have reported concerns over the past few years, including those that disconnect from PRSS because the fees are too high. Townsend Decl., Ex. 6, Munipalla Tr. at 193:2-7, 216:9-219:3, Exs. 19, 20, 21, 22, 23. In addition, in October 2024, CPB's independent consultant from Deloitte spoke with various public media industry leaders and noted that there is "widespread agreement on the need for change." Merritt Declaration, Ex. B at 2.**

24.     The PRSS has an approximately 90 percent satisfaction rating from the Interconnected Stations. Townsend Decl., Ex. 6 (Munipalla Tr. 187:21–188:8).

**Defendant's Response: Disputed. NPR does not rely on any meaningful evaluative mechanism – its annual survey merely asks respondents to affirm NPR's excellence. Moreover, numerous stations have reported concerns over the past few years. Townsend Decl., Ex. 6, Munipalla Tr. at 193:2-7, 216:9-219:3, Exs. 19, 20, 21, 22, 23. In addition, in October 2024, CPB's independent consultant from Deloitte spoke with various public media industry leaders and noted that there is "widespread agreement on the need for change." K. Merritt Decl., Ex. B at 2.**

25.     In 2023, CPB and NPR entered into a grant agreement entitled "Public Radio Satellite System Interconnection Funding FY23-24" (the 2023–2024 Grant Agreement) through

which NPR was awarded $11,866,755 to "plan, design, procure, construct, replace, upgrade and manage the PRSS Interconnection System on behalf of, for the benefit of, and made available to all of those public telecommunications entities participating in the public radio interconnection system." Townsend Decl., Ex. 10 at 3 (Merkley Ex. 10B).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

26.    The 2023–2024 Grant Agreement expressly acknowledges that "the Interconnected [public telecommunications entities] have designated [NPR] as their national entity for interconnection purposes." Townsend Decl., Ex. 10 at 9 (Merkley Ex. 10B).

> **Defendant's Response**: **Undisputed for purposes of summary judgment that the 2023-2024 Grant Agreement includes the language set forth in the averred fact. Disputed to the extent NPR asserts that this language (1) is sufficient to designate NPR as the "designated entity" for interconnection purposes, (2) is sufficient to designate NPR as the "designated entity" for any future interconnection grants, or (3) obligates CPB to award NPR interconnection grants.**

27.    In March 2024, CPB submitted to Congress its Fiscal Year 2025/2027 congressional appropriation request.[1] Townsend Decl., Ex. 8 at 2. CPB requested $60 million for "all interconnection costs," noting that it would "work[] with PBS, NPR, and system leaders" and "extend the current interconnection contracts with PRSS and PBS beyond September 30, 2024." *Id.* at 59–60.e

> **Defendant's Response**: **Undisputed, for purposes of summary judgment, that in March 2024, CPB submitted to Congress its Fiscal Year 2025/2027 congressional appropriation request for $60 million for interconnection costs. CPB disputes this averred fact to the extent NPR is asserting that CPB is required to "work" with NPR based on any representations made or language included in CPB's congressional appropriations request.**

28.    The public television interconnection system is managed and operated by PBS. Townsend Decl., Ex. 11, at 20:24–21:12 (Merritt Tr.).

---

[1] Plaintiff's footnote: The proposal requests Interconnection Funding for Fiscal Year 2025 and otherwise (as is usual with CPB appropriations) requests the remainder of the funding on a two-year forward basis.

**Defendant's Response**: **Undisputed for purposes of summary judgment that PBS currently manages and operates the public television interconnection system.**

29.    In September 2024, NPR and CPB extended the 2023–2024 Grant Agreement, which was set to expire on September 30, 2024, to September 30, 2025, by adding $4,450,000 to the budget for the grant and bringing the total to $16,317,755. Dkt. 38-3 at 3 (¶ 8) (2d Munipalla Decl.).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

30.    CPB recognized that for the entity which manages and operates the PRSS to change, the Interconnected Stations would need to vote to designate a new entity. Townsend Decl., Ex. 7 at 3 (CPB_0023266).

**Defendant's Response**: **Disputed. CPB only speculated that the stations may have to vote on making a switch for PRSS. Townsend Decl., Ex. 7 at 3 (CPB_0023266). Moreover, CPB disputes that NPR is either the "designated entity," or that being the "designated entity" entitles NPR to receive anything. *See, e.g.,* CPB'S Motion for Summary Judgment at 10-16 (Dkt. No. 62).**

**CPB Initially Agrees to Extend NPR's PRSS Grant Agreement For Three More Years**

31.    Because NPR's most recent interconnection funding contract with CPB was set to expire on September 30, 2025, in early 2025, NPR and CPB began the process of negotiating an extension. Townsend Decl., Ex. 6, 123:21-125:8.

**Defendant's Response**: **Undisputed, for purposes of summary judgment, that on April 2, 2025, CPB was authorized to begin negotiating with NPR for an amendment to extend the current interconnection agreement. Merritt Decl. at ¶¶ 29-30 and Ex. K.**

32.    Historically, the process for obtaining funding from CPB has been so inefficient that one consultant found it costs NPR "2 million [dollars] to negotiate a contract with CPB in terms of time and people." Townsend Decl., Ex. 6, 118:19-119:12.

**Defendant's Response**: **Disputed. The consultant to which NPR refers never inquired with CPB as to why it takes so long to get an agreement in place. If NPR's consultant is correct, it is only because NPR would not provide the information CPB needed. Merritt Decl., Ex. D at 3-5, Ex. E at 1-2, Ex. F at 31, 48, Ex. J.**

33.     To "speed up the process and keep it as efficient as possible," during the 2025 negotiating cycle, NPR submitted a "concept paper" before sending the full grant proposal so that both sides could be sure they had "a fundamental understanding" of what NPR was going to request. *Id.* 160:8-161:6.

**<u>Defendant's Response</u>: Undisputed, for the purposes of summary judgment, that NPR submitted a "concept paper" before sending the full grant proposal. Townsend Decl., Ex. 6, 160:8-161:6.**

34.     This concept paper was intended to help facilitate "getting an approval from [CPB's] board" at their April 2025 meeting. *Id.*

**<u>Defendant's Response</u>: Disputed. The CPB Board's April 2, 2025, meeting was never intended to "approve" any proposal. The meeting was specifically held to approve "negotiations." Merritt Decl. at ¶¶ 29-30 and Ex. K**

35.     By February 2025, "it was becoming clear that there was a threat to public media funding" and accordingly "the [CPB] board wanted to act with urgency." Townsend Decl., Ex. 11 (Merritt Tr. 30:3-19).

**<u>Defendant's Response</u>: Disputed. Ms. Merritt testified that "[t]he board had been expressing the need to have a pathway for interconnection for, certainly, months and -- and years. And at that time, we were beginning to be in an environment where public media funding was certainly – it -- it was becoming clear that there was a threat to public media funding from -- from Congress. And I think the board wanted to act with urgency on how CPB was looking at all of its funding that remained under our control, you know, FY25 funding that we thought could be under threat for being clawed back by the government." Townsend Decl., Ex. 11 (Merritt Tr. 30:3-19).**

36.     On March 5, 2025, Maryfran Tyler, NPR's Executive Director for Strategy, sent Kathy Merritt, who was then serving as CPB's Chief for Station and System Strategies, a "concept document" that provided a "high-level view of everything we're planning to do for the next three years and the associated budget." Townsend Decl., Ex. 13 at 2 (CPB_0307145).

**<u>Defendant's Response</u>: Undisputed for the purposes of summary judgment.**

37. The concept document provided for interconnection funding to go directly to NPR Distribution; it did not propose or reference spinning off the PRSS into an entity independent from NPR. Townsend Decl., Ex. 14 (CPB_0307147).

**Defendant's Response: CPB admits, for purposes of summary judgment, that the concept document identified in this paragraph does not specifically reference an independent entity. However, CPB was discussing the concept of an independent entity as a critical feature of the future of Interconnection since, at the latest, October 2024. Merritt Decl at ¶ 7, Ex. A.**

38. When CPB received the concept document, it "took [NPR] at their word, that this is what they were planning to do." Townsend Decl., Ex. 11 at 36:18-37:07 (Merritt Tr.).

**Defendant's Response: Undisputed for purposes of summary judgment.**

39. Ms. Merritt testified that if CPB had any questions about the concept document, CPB would have emailed them to NPR. *Id.* at 38:10-38:21.

**Defendant's Response: Undisputed for purposes of summary judgment.**

40. Ms. Merritt does not recall any specific questions, emails sent to NPR, or conversations with NPR about the concept document. *Id.*

**Defendant's Response: Undisputed for purposes of summary judgment.**

41. After reviewing the concept document, Ms. Merritt asked NPR to "proceed with giving us a full proposal . . . as soon as possible based on th[e] concept note." *Id.* at 40:08-13.

**Defendant's Response: CPB admits, for purposes of summary judgment, that Ms. Merritt asked NPR for a full proposal based on the concept note. CPB disputes this fact to the extent that NPR asserts that the urgency of this request reflects any form of approval of or support for NPR's proposal. Merritt Decl. at ¶ 27.**

42. On March 20, 2025, Ms. Merritt attended a meeting of NPR's D/I Committee, which oversees the PRSS. Townsend Decl., Ex. 15 at 2 (NPR0031093) (meeting minutes).

**Defendant's Response: Undisputed for purposes of summary judgment.**

43.     During that March 20, 2025 D/I Committee meeting Ms. Merritt "reported that CPB was expecting a formal proposal from NPR on March 21, 2025, for a three-year extension of the current Public Radio Satellite System (PRSS) funding agreement … based on [NPR's] concept document." *Id.* at 3; see Townsend Decl., Ex. 11 at 46:17-47:2 (Merritt Tr.) (stating that she has no reason to doubt that the minutes are accurate).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

44.     During that March 20, 2025 D/I Committee meeting, Ms. Merritt also "reported that the CPB Board will consider approving a funding amount sufficient to move the Proposal forward" and "expressed that CPB management desires to secure the CPB Board's approval of the proposed PRSS funding extension in April 2025." Townsend Decl., Ex. 15 at 3 (NPR0031093).

> **Defendant's Response: CPB admits that the quoted language is accurately copied from the referenced document but disputes the averred fact as an inaccurate characterization of Ms. Merritt's statements at the D/I Committee meeting. Indeed, the April 2, 2025, CPB Board meeting to which Ms. Merritt referred included a resolution to approve only negotiations with NPR. Merritt Decl. at ¶¶ 29-30 and Ex. K**

45.     On March 21, 2025, NPR submitted its formal proposal for a three-year extension of its PRSS grant agreement, which included a proposed budget of $26,236,211. Townsend Decl., Ex. 16 at 6.

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

46.     The proposal included a proposal narrative, a spreadsheet breaking down the financials, and a budget narrative providing additional details about the financial estimates. *Id.* at 2; see Dkt. 38-3 at 3 ( 9) (2d Munipalla Decl.).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

47.     NPR's submission proposed that funding be awarded to "National Public Radio, Inc." and stated that "NPR Distribution is requesting a three-year cost extension." Townsend Decl., Ex. 16 at 6 (CPB_0304825).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

48.     CPB's management, including Merritt, reviewed NPR's formal proposal. Townsend Decl., Ex. 11 at 51:8-16 (Merritt Tr.).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

49.     After reviewing NPR's formal proposal that was submitted on March 21, 2025, Merritt and other members of CPB's management submitted a memorandum recommending to CPB's Board of Directors that the Board authorize CPB management to negotiate an extension of CPB's grant agreement with NPR for the PRSS. Townsend Decl., Ex. 17 at 2 (CPB_0136269)

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

50.     In its memorandum to the CPB Board, CPB management concluded that NPR's proposal "aligned with our expectations" and would "ensure continuity of service as well as future facing strategies." *Id.* at 8. The memorandum concluded that "due to consideration for the importance of continuity of interconnection service to all [Community Service Grant] qualified radio stations," the Board should extend NPR's PRSS grant agreement "for five years, to September 30, 2030, and increase[e] the funding for the public radio interconnection system." *Id.*

**Defendant's Response**: **CPB admits only that the quoted language from a memorandum to the CPB Board is accurate. However, CPB disputes the averred fact to the extent NPR is asserting that the phrase "aligned with our expectations" means that NPR's proposal met an objectively sufficient standard. Rather, NPR's proposal aligned with Ms. Merritt's expectations of the low bar that NPR met in previous proposals. Merritt Decl. at ¶¶ 12-16.**

51.    In that same memorandum, CPB management recommended that the CPB Board approve a proposal by PBS for public television interconnection funding that CPB management had been considering in parallel. *Id.* at 2.

**Defendant's Response**: **Undisputed for the purposes of summary judgment.**

52.    In its memorandum to the Board, CPB management did not express any concerns with NPR's proposal; however, it identified two aspects of PBS's proposal that "require[d] further evaluation." *Id.* at 9.

**Defendant's Response**: **Disputed. The memorandum clearly states that "these are the amounts requested by PBS and NPR" but "CPB may decline to support some proposed activities. This will require PBS and NPR to submit revised budgets that will, in turn, require additional due diligence." The process of evaluating the proposals was not finished. Townsend Decl., Ex. 17 at 9 (CPB_0136277).**

53.    CPB's Board of Directors met on April 1 and 2. Townsend Decl., Ex. 18 at 2 (Harrison Ex. 1). It met in a closed executive session to discuss interconnection. *Id.*

**Defendant's Response**: **Disputed. The CPB Board did not meet solely to discuss interconnection. Indeed, the Board met to discuss various topics that were important to CPB's operations in the midst of financial uncertainty, one of which was interconnection. Merritt Decl. at Ex. K.**

54.    During its Board meeting on April 2, 2025, the CPB Board of Directors passed a resolution authorizing "CPB Management to negotiate an amendment to the existing agreement with NPR for the design and implementation of the updated public radio interconnection system to extend the term by five years and increase funding by up to $36 million, as appropriated in FY 2024 and prior." Townsend Decl., Ex. 53 at 9-10 (CPB_0148527).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

55.    When the CPB Board authorizes management to negotiate a contract, that is generally the final formal action that the CPB Board takes with respect to that contract. For example, on April 2, 2025, the same day the Board voted to pass a resolution directing CPB

14

management to negotiate an extension of its grant agreement with NPR for the PRSS, the Board also authorized CPB management to negotiate an extension of its grant agreement with PBS for television interconnection. Townsend Decl., Ex. 53 at 7-8 (CPB_0148527). CBP management later executed that agreement with PBS, and there were no further Board approvals or resolutions concerning that agreement. Townsend Decl., Ex. 11, at 71:3-73:9 (Merritt Tr.).

> **Defendant's Response**: **Disputed. CPB Board's authorization of management to negotiate a contract is far from the final action that the CPB Board takes with respect to that contract. Indeed, by way of limited example, CPB's own policies and procedures require that the Board pass an additional resolution to approve of the actual agreement. Slavitt Second Supp. Decl. at ¶¶ 3-7.**

56.    Badri Munipalla is NPR's Vice President of NPR Distribution, the entity that oversees the PRSS. Townsend Decl., Ex. 6, at 13:22-14:3 (Munipalla Tr.).

> **Defendant's Response**: **Undisputed for purposes of summary judgment.**

57.    On April 2, 2025, after the CPB Board meeting, Merritt called Badri Munipalla. Deborah Carr of CPB, who is currently CPB's Senior Vice President of Operations, was present in Merritt's office during the phone call. Townsend Decl., Ex. 11, at 73:23-74:2 (Merritt Tr.).

> **Defendant's Response**: **Undisputed for purposes of summary judgment.**

58.    According to Merritt, she called Munipalla to inform him that CPB's Board of Directors had authorized CPB management to negotiate a grant agreement with NPR for interconnection. *Id.* at 74:15-21; Dkt. 38-3 at 3 ( 10) (2d Munipalla Decl.).

> **Defendant's Response**: **Undisputed for purposes of summary judgment.**

59.    During that April 2 phone call, Merritt further informed Munipalla that CPB planned to transfer the entire budget amount of $26,236,211 proposed by NPR Distribution, as well as the remaining balance from the existing grant agreement to NPR over the next few days, which Merritt indicated would result in a transfer of more than $30 million to NPR. Dkt. 38-3 at 3 ( 10) (2d Munipalla Decl.).

**Defendant's Response: Disputed. Ms. Merritt made no mention of transferring the funds, alone the entirety of the budget amount "over the next few days." Townsend Decl., Ex. 11, at 73:23-74:2 (Merritt Tr.).**

60.     Merritt also told Munipalla during that April 2, 2025 telephone call that CPB anticipated that President Trump would issue an executive order related to CPB, but she did not know what the order would say. *Id.* ( 11).

**Defendant's Response: Undisputed for purposes of summary judgment.**

61.     Merritt told Munipalla that the Board wanted management to act "with some urgency." Townsend Decl., Ex. 11, at 74:6-14, 75:12-17 (Merritt Tr.) (testifying that she "may have expressed [to Mr. Munipalla] th[e] sense of urgency that the [CPB] board conveyed").

**Defendant's Response: Undisputed for purposes of summary judgment.**

62.     In a later email exchange with Carr, Merritt recounted that "we call[ed] [NPR] and offer[ed] all the funding." Townsend Decl., Ex. 21, at 2 (CPB_0111058).

**Defendant's Response: Disputed. Ms. Merritt did not state affirmatively that CPB would offer all the funding. The phrase was posed as a question to Ms. Carr. Townsend Decl., Ex. 21, at 2 (CPB_0111058).**

**CPB Reverses Course in Response to Government Pressure and in Retaliation for NPR's Perceived Viewpoints**

63.     On March 25, 2025, President Trump announced in a press conference that he would "love to" defund NPR and PBS because of his belief that they are "biased." Townsend Decl., Ex. 22 at 3 (Ali Bianco & John Hendel, DOGE's next target: NPR and PBS, Politico (Mar. 26, 2025), https://www.politico.com/news/2025/03/26/doge-npr-pbs-hearing-00004556).

**Defendant's Response: Undisputed, for purposes of summary judgment, that this was reported in Politico.**

64.     On March 27, 2025 President Trump wrote on social media: "NPR and PBS, two horrible and completely biased platforms (Networks!), should be DEFUNDED by Congress, IMMEDIATELY. Republicans, don't miss this opportunity to rid our Country of this giant SCAM,

both being arms of the Radical Left Democrat Party. JUST SAY NO AND, MAKE AMERICA GREAT AGAIN!!!" Townsend Decl., Ex. 23 at 2 (@readlDonaldTrump, Truth Social (Mar. 27, 2025), https://truthsocial.com/@realDonaldTrump/posts/114232752130631453).

**Defendant's Response**: **Undisputed, for purposes of summary judgment, that this text appeared on President Trump's social media.**

65.     On March 31, CPB was contacted by the White House's Office of Management and Budget (OMB) with a request to meet with CPB leadership. Townsend Decl., Ex. 24 at 2 (Barsoum Ex. 2).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

66.     On April 1, 2025 CPB "began to hear rumors that an executive order would be issued shuttering CPB imminently." Townsend Decl., Ex. 25 at 3 (CPB_0143805).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

67.     On April 1, 2025 President Trump wrote again on social media that "REPUBLICANS MUST DEFUND AND TOTALLY DISASSOCIATE THEMSELVES FROM NPR & PBS, THE RADICAL LEFT "MONSTERS" THAT SO BADLY HURT OUR COUNTRY!" Townsend Decl., Ex. 27 at 2 (@readlDonaldTrump, Truth Social (Apr. 1, 2025), https://truthsocial.com/@realDonaldTrump/posts/114264549657133828).

**Defendant's Response**: **Undisputed, for purposes of summary judgment that this text appeared on President Trump's social media.**

68.     Patricia Harrison is CPB's President and CEO. Townsend Decl., Ex. 35 (Harrison Tr. 19:2-7).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

69.     Debra Sanchez is CPB's Chief of Staff and Corporate Secretary. Townsend Decl., Ex. 44 (Barsoum Tr. 43:20-24).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

70.    Evan Slavitt is CPB's General Counsel. Townsend Decl., Ex. 44 (Barsoum Tr. 43:15-16).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

71.    Clayton Barsoum is CPB's Vice President, Government and External Affairs. Townsend Decl., Ex. 44 (Barsoum Tr. 10:5-7).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

72.    Michael Levy was formerly CPB's Chief Operating Officer. Townsend Decl., Ex., 44 (Barsoum Tr. 42:7-8).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

73.    On April 2, Sanchez informed her CPB colleagues Slavitt, Barsoum, Harrison, and Levy that "[she] heard from a colleague last night that an EO may only target PBS and NPR funding." Townsend Decl., Ex. 26 at 2 (Barsoum Ex. 3).

**Defendant's Response**: **CPB admits, for purposes of summary judgment, only that Sanchez told her colleagues that she heard from "Dave" that his lobbyist heard that an EO might target NPR and PBS through CPB. Townsend Decl., Ex. 26 at 2 (Barsoum Ex. 3).**

74.    On the morning of April 3, 2025 Ruby Calvert, Chair of CPB's Board of Directors, Barsoum, and Slavitt met with Katharine Sullivan, Associate Director of OMB. Townsend Decl., 28 at 3 (CPB_0022179).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

75.    During that meeting on April 3, Sullivan expressed "her intense dislike for NPR" but that "it would be a shame to throw the baby out with the bath water." Townsend Decl., Ex. 25 at 4 (CPB_0143805); Ex. 29 at 3 (Barsoum Ex. 12).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

76.     The CPB Board met the afternoon of April 3, 2025 to "debrief the meeting with OMB." Townsend Decl., Ex. 30 at 2 (Harrison Ex. 2).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

77.     At 4:47pm on April 3, 2025, Donna Joe (CPB Vice President and Assistant General Counsel) emailed Harry Kelly (NPR Deputy General Counsel) that "the CPB Board has been meeting all day today, and they are in a bit of crisis mode." Townsend Decl., Ex. 31 at 2 (NPR0012787).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

78.     In her April 3 email to Kelly, Joe stated that she had "been instructed to wait to send [him] the draft of the amendment [to extend NPR's grant agreement for interconnection] until after the Board's next meeting," which would occur at 11am on April 4. *Id.*

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

79.     On April 4, 2025 at 9:19am, Elizabeth Allen (NPR's General Counsel) emailed Slavitt, stating that NPR still had not "received the contract you envisioned us getting earlier this week." Townsend Decl., Ex. 32 at 3 (NPR0010361).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

80.     Ms. Allen asked that Mr. Slavitt let her know "how early today we'll be able to see the contract" "[i]f we are still aiming to close today." *Id.*

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

81.     At 3:52pm on April 4, 2025, Mr. Slavitt responded by "apologiz[ing] for the delays" and stated that he had been "swamped with Board meetings." *Id.* at 2.

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

82.     Ms. Allen asked about a revised timeline for "the closing wire," to which Mr. Slavitt responded, "realistically it will have to be Monday/Tuesday at best." *Id.*

**Defendant's Response: Undisputed for purposes of summary judgment.**

83.     The CPB Board met on April 4, 2025 and adopted a resolution amending the Board's April 2 resolution to require "the contract with NPR for interconnection to include a contingency that NPR provide a plan within 60 days of amendment execution to establish PRSS as an entity independent of NPR." Townsend Decl., Ex. 33, at 2 (CPB_0106552).

**Defendant's Response: Undisputed for purposes of summary judgment.**

84.     The April 4 meeting was not publicly noticed. *See* Board Meetings, Corporation for Public Broadcasting, https://cpb.org/about/board/meetings.

**Defendant's Response: Undisputed for purposes of summary judgment.**

85.     Merritt found it "very surprising" that the April 4, 2025 CPB Board meeting was not publicly noticed. Townsend Decl., Ex. 11 at 78:5-9 (Merritt Tr.)

**Defendant's Response: Undisputed for purposes of summary judgment.**

86.     The evening of April 4, 2025, Harrison emailed Laura Ross, a member of CPB's Board of Directors, stating that "DOGE is coming tonight" to PBS. Townsend Decl., Ex. 34 at 2 (Harrison Ex. 3). Ross responded to that email to ask Harrison whether she should "call Ruby [Calvert] now and convene a meeting tomorrow to get the money out and reverse today's decision." *Id.* Harrison, referring to Tom Rothman, a member of CPB's Board of Directors, responded, "This what Tom wants." *Id.*; see Townsend Decl., Ex. 35 at 106:1:17 (Harrison Tr.).

**Defendant's Response: Undisputed for purposes of summary judgment**

87.     On April 5, 2025 Harrison emailed Katherine Maher (NPR's President and CEO) and Paula Kerger (PBS's President and CEO), stating that "[t]hese rumors have potential to turn into boy who cried wolf. Except the wolf is really coming." Townsend Decl., Ex. 36 (Harrison Ex. 5).

**Defendant's Response: Undisputed for purposes of summary judgment.**

88.    Harrison's email to Maher and Kerger further stated that "OMB has requested list of all grants in past two quarters and future." *Id.*

**Defendant's Response: Undisputed for purposes of summary judgment.**

89.    Harrison's email to Maher and Kerger further stated that Sullivan of OMB had "expressed her thoughts re pub media-never watch it" and that Sullivan thought CPB's "board was more 'balanced' than most" and did "not want to throw out the baby with the bath water." *Id.*

**Defendant's Response: CPB admits that the quoted language accurately depicts the language in the referenced document. However, CPB objects to NPR's misleading attempt to utilize this language. Mr. Barsoum testified that he "did not hear those words" and has never "heard anyone at CPB use those words in reference to a meeting with OMB" or "in the context of discussions with any member of Congress." Townsend Decl., Ex. 44, Barsoum Tr. at 119-20.**

90.    Harrison's email to Maher and Kerger described possible scenarios, with the first being that "[t]hey keep board, fire ceo, and replace. Shrink power of CPB to follow money tree re distribution, no fund directly to npr and perhaps pbs. Reward certain states/stations." *Id.*

**Defendant's Response: Undisputed for purposes of summary judgment.**

91.    CPB's Board of Directors met again in executive session on Monday, April 7, 2025. During that meeting, Calvert "noted that she had spoken to board members about her meeting with OMB Associate Director Katherine Sullivan" and stated that "Ms. Sullivan was negative toward public media." Townsend Decl., Ex. 38 at 2 (CPB_0390059).

**Defendant's Response: Undisputed for purposes of summary judgment.**

92.    At the April 7, 2025 Board meeting Harrison told the Board that CPB "needed to be more prepared for" the "eventuality" that DOGE would visit. *Id.* at 3.

**Defendant's Response: CPB objects to NPR's incomplete use of Ms. Harrison's remarks, which stated in full:**

**Chair Calvert noted that she had spoken to board members about her meeting with OMB Associate Director Katherine Sullivan, which was also attended by Mr. Barsoum and Mr. Slavitt, and briefly recapped their discussion which focused on local**

**stations' services to their communities, the importance of the federal appropriation to this work, and the scope of CPB's work as defined by statute. Ms. Sullivan was negative toward public media. CPB will be providing follow-up materials about how public media works.**

**Ms. Harrison reported that on April 4 she received calls from PBS, NPR and others that CPB should expect a visit from DOGE at 8:30 p.m. that evening. The rumor proved incorrect - DOGE was in fact at the Peace Corps offices - but it helped CPB to understand it needed to be more prepared for that eventuality.**

*See* **Townsend Decl., Ex. 38 at 2 (CPB_0390059).**

93.    At the April 7, 2025 Board meeting, CPB's Board passed a resolution "amend[ing] its resolution of April 2 and 4 regarding interconnection funding." Townsend Decl., Ex. 38 at 2 (Merkley Ex. 14).

**Defendant's Response: Undisputed for purposes of summary judgment.**

94.    The April 7 resolution directed CPB management to include in the NPR interconnection agreement a contingency that "one third of the [PRSS] funds will be withheld should NPR not comply with the spin off obligations [sic]" to "establish PRSS as an entity independent of NPR." *Id.*

**Defendant's Response: Undisputed for purposes of summary judgment.**

95.    According to Merritt, the purpose of this provision was to "compel [NPR] to move forward with the spin off." Townsend Decl., Ex. 11 at 98:4-9 (Merritt Tr.).

**Defendant's Response: Disputed to the extent that NPR asserts that the sole purpose of this provision was to "compel" NPR to spin off. This provision reduced the timeframe for NPR to create a spin off from 60 to 30 days in the midst of CPB's growing concerns that they would not exist long enough to give money to any grantee, NPR or not. The Board saw this second contingency as a means of encouraging NPR to provide merely a *plan* to spin off. Merritt Decl. at ¶ 35.**

96.    On April 8, Merritt emailed Harrison draft talking points for an anticipated conversation with NPR's Chief Operating Officer, Ryan Merkley, to discuss funding for radio interconnection. Merritt's draft talking points included the following:

- "The interconnection dollars we have now may be the last ones we receive. Our board wants us to fulfill our statutory responsibility to support interconnection and to ensure that interconnection services will be available for the next 3-5 years (especially if CPB might not still exist).

- At the same time, we're in an environment where NPR is the target of the Administration and Congress. It's challenging for CPB to disperse millions of dollars to an organization that's under fire and heavily scrutinized.

- Our board has determined an approach that allows CPB to disperse funds to NPR for radio interconnection while also decoupling interconnection from NPR's editorial efforts."

Townsend Decl., Ex. 39 at 2 (Harrison Ex. 6).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

97.    Merritt's draft talking points also described a requirement that NPR "give CPB a plan to spin off ownership and control of PRSS," such that "funds would follow to the new entity." *Id.*

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

98.    On April 9, 2025 Harrison emailed Merritt and Sanchez that one option for CPB was to "tell npr to give us plan now and they get 2/3'ds. Has to be executable." Townsend Decl., Ex. 40 at 2 (Harrison Ex. 8).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

99.    CPB's Board met on April 9, 2025 and passed a resolution that "rescind[ed] its resolutions of April 2, 4 and 7 regarding interconnection funding for NPR." Townsend Decl., Ex. 41 at 2 (CPB_0110656).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

100.    On April 10, 2025 President Trump wrote on social media: "NO MORE FUNDING FOR NPR, A TOTAL SCAM! EDITOR SAID THEY HAVE NO REPUBLICANS, AND IS ONLY USED TO "DAMAGE TRUMP." THEY ARE A LIBERAL DISINFORMATION MACHINE. NOT ONE DOLLAR!!!" Townsend Decl., Ex. 42 at 2 (@readlDonaldTrump, Truth Social (Apr. 10, 2025), https://truthsocial.com/@realDonaldTrump/posts/112248653824267212).

**Defendant's Response**: **Undisputed that this text appeared on President Trump's social media.**

101.    On April 10, 2025, Merritt emailed further draft "talking points for NPR" to other members of CPB management. Townsend Decl., Ex. 43 (Harrison Ex. 7). Those talking points began: "Things have changed since last week when our board approved giving interconnection funds to NPR." *Id.* at 2.

**Defendant's Response**: **Undisputed for purposes of summary judgment that the emails are accurately quoted. CPB disputes any inference drawn from them.**

102.    Merritt's April 10, 2025 talking points stated, inter alia, that CPB's "board wants the funds to go [to] the new entity." *Id.* at 3. Merritt wrote that the reason the board "change[d] its mind so quickly" was that the "circumstances changed, and they had more time to consider the future." *Id.* at 3.

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

103.    On April 10, 2025, Merritt sent another email with the subject line "NPR - interconnection - take two" that contained "[r]evised talking points" for a call with Merkley. Townsend Decl., Ex. 46 (Merritt Ex. 13).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

104.    As reflected in the draft talking points of April 10, 2025, Merritt anticipated that Merkley would ask: "Why did your board change its mind so quickly." *Id.* at 3.

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

105.    The draft talking points of April 10, 2025, stated that if NPR "refuse[d] to go along with [CPB's] idea" to spin off the PRSS, "[t]hen CPB will have to find another entity to provide radio interconnection." *Id.*

**Defendant's Response**: Undisputed for purposes of summary judgment.

106.    On April 10, 2025, Carl Forti, a conservative political operative and consultant working for CPB, met with Sanchez to discuss a "plan forward" for CPB to survive the current political climate-specifically, what CPB would be "willing to stop/give up." Townsend Decl., Ex. 47 at 2 (CPB_0370522).

**Defendant's Response: Disputed. Based on the referenced document, there is no evidence that Carl Forti actually met with Deb Sanchez to discuss "a plan forward" or what CPB would be "willing to stop/give up." The document cited by NPR is an email communication. Townsend Decl., Ex. 47 at 2 (CPB_0370522).**

107.    CPB paid Forti $150,000 for his services as a "Strategic Communications Consultant" from April 10 to October 9. Townsend Decl., Ex. 48 at 6 (CPB_0275296).

**Defendant's Response**: Undisputed for purposes of summary judgment.

108.    Forti followed up with a memorandum listing the chief "problem[]" for CPB as "BIAS: Belief both in Administration and among general public that the media is biased against conservatives and more specifically against Trump. NPR is high on those lists." Townsend Decl., Ex. 49 at 2 (CPB_0370523).

**Defendant's Response: CPB admits that the quoted language is accurate. However, CPB objects to the misleading placement of this fact to imply that CPB's decision on April 4, 2025, to require NPR to spin off an independent entity was somehow the result of a memorandum that Deb Sanchez did not receive until April 10, 2025. Townsend Decl., Ex. 49 at 2 (CPB_0370523).**

109.    On April 11, 2025, Calvert sent a letter to OMB, emphasizing her "deeply conservative and Republican" background and values. Townsend Decl., Ex. 50 at 4 (Barsoum Ex. 10).

**Defendant's Response**: Disputed. Ms. Calvert was not "emphasizing" this fact. In fact, Ms. Calvert reiterated to Ms. Sullivan that "in creating CPB, Congress made clear that it was a 'private corporation" to be free from extraneous interference and government control. Ms. Calvert ended the communications by offering additional <u>operational</u> material if necessary. Townsend Decl., Ex. 49 at 2 (CPB_0370523).

110.    On April 11, 2025, Merritt, who by then was serving as CPB's Chief Operating Officer, called Merkley to inform him that CPB's Board had changed course and that CPB would not provide any funding for the operation and management of the PRSS unless the PRSS became a separate entity with no ties to NPR. Dkt. 38-2 at 3 ( 8) (Merkley Decl.).

**Defendant's Response**: CPB admits that On April 11, 2025, Ms. Merritt spoke on the phone with Mr. Merkley about the CPB's Board decision to require NPR to provide a plan for spinning off PRSS into an independent entity with governance that would better reflect the breadth of the public radio system. K. Merritt Decl. at ¶ 38.

111.    During that April 11, 2025 call with Merkley, Merritt did not identify any complaints about NPR Distribution's management or operation of the PRSS or provide any explanation for the decision apart from vague statements about a perceived need to enhance digital innovation. *Id.* at 2-3 ( 10).

**Defendant's Response**: Disputed. Ms. Merritt made clear to Mr. Merkley NPR was not representative of all public radio stations and that an independent entity was needed to ensure broad-based representation. Townsend Decl., Ex. 11 (Merritt Tr. 126-29).

112.    Merritt's April 11, 2025 call to Merkley was the first time that CPB had communicated to NPR that CPB wanted NPR to spin off the PRSS into an independent entity. Townsend Decl., Ex. 11 (Merritt Tr. 100:17-21).

**Defendant's Response**: Disputed. CPB had stated to NPR on multiple occasions that it wanted a change in governance to be more representative of the public broadcasting community, and had proposed a "newco" in 2024. *See, e.g.,* Munipalla Depo. at 254:20-256:21.

113.    On April 12, 2025, Merritt spoke to Munipalla by phone. Townsend Decl., Ex. 51 at 2 (Merritt Ex. 14). During that call, Munipalla informed Merritt how "challenging" it would be

to separate the PRSS from NPR and that "any change would have to be approved by the interconnected stations." *Id.*

**Defendant's Response: Undisputed for purposes of summary judgment.**

114.    Also on April 12, 2025, Merritt reported to Harrison and Sanchez that she "spoke with Ruby" Calvert, who was "adamant that she doesn't want funding to go to NPR." *Id.*

**Defendant's Response: Undisputed for purposes of summary judgment.**

115.    On April 13, 2025, Sanchez wrote to Forti: "We are moving ahead with almost $100 million to PBS for their distribution (interconnection) and not to NPR, why? There are obvious political challenges, but we can't 'own that' outright. So we are in a tight spot sort of. What are the strongest messages we can make about the 'why' or the 'because?'" Townsend Decl., Ex. 52 at 2 (CPB_0380911).

**Defendant's Response: Disputed to the extent that the excerpted language is taken out of context. Ms. Sanchez also stated in the same email, "Pat asked me to send this to you. She is looking for topline statements. We are managing multiple audiences. Stations. NPR, Congress (R's and D's). Administration." Townsend Decl., Ex. 52 at 2 (CPB_0380911).**

116.    That same day, Sanchez also reacted in an email to her CPB colleagues to CPB's demand that NPR spin off the PRSS by stating: "Something has been fundamentally missing for me … and it's the 'because' statement. In particular, the 'local stations would be better served by having PRSS as an independent entity' which begs the question … because?" Townsend Decl., Ex. 54 at 3 (Merritt Ex. 16).

**Defendant's Response: Disputed to the extent that the excerpted language is taken out of context. Ms. Sanchez also stated in the same email that "[t]hese are some of the basics I keep wondering as a relative newbie on PRSS." Townsend Decl., Ex. 54 at 3 (Merritt Ex. 16).**

117.    In response to a request by Merritt to answer Sanchez's questions, Carr wrote, "Tough assignment indeed." *Id.* at 2.

**Defendant's Response: Undisputed for the purposes of summary judgment.**

118.    Also on April 13, 2025, in an email discussion among senior members of CPB's management about the decision to demand that NPR spin off the PRSS, CPB's President and CEO Harrison wrote "WE NEED CARL TO MOVE NOW." Townsend Decl., Ex. 7 at 3 (Merritt Ex. 15).

**Defendant's Response: Disputed based on the characterization of the excerpted language.**

119.    "Carl" was a reference to Carl Forti, the political consultant, who was meeting with legislators on behalf of CPB. Townsend Decl., Ex. 11 (Merritt Tr. 154:24-155:10).

**Defendant's Response: Disputed. The transcript portions cited by NPR do not support this averred fact. Ms. Merritt actually testified that Mr. Forti "worked on the Hill, you know, worked in communications on – on Capitol Hill for Congress." Townsend Decl., Ex. 11 (Merritt Tr. 154:24-155:10).**

120.    Also on April 13, 2025, Barsoum emailed Harrison a "government affairs plan for interconnection." Townsend Decl., Ex. 55 at 2 (Harrison Ex. 13). That plan proposed a "targeted engagement strategy" "for engaging key Congressional members to ensure they are thoroughly briefed on proposed changes to public media interconnection." Townsend Decl., Ex. 79 at 3 (CPB_0023272).

**Defendant's Response: Disputed. The excerpts are taken out of context to create new sentences.**

121.    Barsoum's "government affairs plan for interconnection" identified Senator John Barrasso (R-WY), who "has engaged with CPB's Board Chair," Ruby Calvert, and was described in Barsoum's plan as a "close ally of President Trump" who "can facilitate crucial backchannel discussions within his caucus and the Administration." *Id.*

**Defendant's Response: Disputed. The excerpts are taken out of context to create new sentences.**

122.    The plan proposed messaging to Senator Barrasso-and to Senator Shelley Moore Capito (R-WV)-that the plan to spin off PRSS "will allow CPB to reduce direct investment in NPR." *Id.* at 3-4.

**Defendant's Response**: **Disputed. The excerpts are taken out of context to create new sentences.**

123.    On April 13, 2025, Levy (CPB's COO who had resigned a few days earlier) emailed Harrison additional talking points regarding CPB's decision-making with respect to interconnection funding to NPR. Levy's talking points stated that "[f]unding for public media, including its interconnection service, is under assault by a newly elected Administration," and that "concerns about political and cultural bias-most notably at NPR and with its content, have been cited by the President, members of his administration (DOGE, OMB), [and] members of Congress . . . in support of calls to end funding for public media entirely or to separately defund NPR, or NPR and PBS." Townsend Decl., Ex. 56 at 4 (Harrison Ex. 11).

**Defendant's Response**: **Disputed that Ms. Harrison was emailed "additional talking points regarding CPB's decision-making with respect to interconnection funding to NPR." Ms. Harrison testified that she "[doesn't] even think they're talking points" and that the document "appears to be someone's opinion. It's more like an op-ed." Townsend Decl., Ex. 35 at 182.**

124.    Levy's April 13 talking points also stated that establishing PRSS as an independent entity was "NO[T]" "a first step towards" "convergence." *Id.* at 6.

**Defendant's Response**: **Disputed for lack of context and incorrect characterization. The word "NOT" does not even appear in the document.**

125.    Levy's April 13 talking points also stated: "Concerned about the risk to funding for the public media system and its attending consequences, the CPB Board, in early April, resolved to provide funding for public radio interconnection only on condition that it went to a successor entity to PRSS, separated from NPR, and enabled to operate autonomously with its own assets, employees and a new governance structure." *Id.* at 5.

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

126.    Levy's April 13 talking points explained that CPB would cut off direct interconnection funding to NPR but not PBS because PBS "presents a vastly different degree of threat to funding than NPR." *Id.* at 7.

> **Defendant's Response**: **Disputed. NPR's selected portions of this document are misleading characterizations. The "talking points" explained that CPB would also cut off direct funding because of other issues, including that "PBS IS ALSO COMMITTED TO PROVIDING INTERCONNECTION SERVICE TO MEMBERS AND NON-MEMBERS ALIKE. AS DEBORAH CARR NOTED: "PBS EFFICIENTLY USES THE IX BROADCAST-CENTERED INFRASTRUCTURE TO EFFICIENTLY SERVE STATIONS' MULTIPLATFORM REALITY. LESS THAN 30% NON-MEMBERS BEING SERVED BY NPR/PRSS. PBS HAS GREATER INCENTIVE TO TAKE A WHOLE SYSTEM APPROACH IN A SKETCHY FUNDING FUTURE THAN NPR. PBS HAS NOT EXPRESSED DIRECTLY OR THROUGH INTERMEDIARIES QUESTIONING WHETHER THEY SHOULD RETREAT TO A CORE MISSION OF ONLY SERVING THEIR MEMBERS." Townsend Decl., Ex. 56 at 7 (Harrison Ex. 11).**

127.    On April 13, 2025, Merritt emailed Harrison and other members of the CPB leadership team a list of things CPB would need to do in order pursue its plan to separate the PRSS from NPR. Merritt's email stated that "the stations will have to vote on making a switch for PRSS[.]" Townsend Decl., Ex. 7 at 3 (CPB_0023266).

> **Defendant's Response**: **CPB disputes the first sentence, which inaccurately characterizes the excerpted language in the second sentence.**

128.    Merritt's April 13, 2025 email also stated Merritt's expectation that when the PRSS was spun out of NPR Distribution that "Badri [Munipalla] would become the CEO or a similar position since he will be the one running this." *Id.* at 2. She added, "I don't think there's anyone else who can help step in." *Id.*

> **Defendant's Response**: **Undisputed for purposes of summary judgment.**

129.    On April 14, the Trump Administration announced that the President planned to request that Congress rescind all funding to CPB. Townsend Decl., Ex. 57 (Jennifer Scholtes &

Megan Messerly, White House to Send Congress a Formal Request to Nix $9.3B for PBS, NPR, State Department, Politico (Apr. 14, 2025), https://www.politico.com/news/2025/04/14/white-house-to-send-congress-a-formal-request-to-nix-9-3b-for-pbs-state-department-00289543).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

130.    That same day, April 14, 2025, the White House issued a press release entitled "The NPR, PBS Grift Has Ripped Us Off for Too Long," which critiqued the "trash that passes for 'news' at NPR and PBS" by listing more than a dozen examples of reporting that the Administration disliked. Townsend Decl., Ex. 58 (The NPR, PBS Grift Has Ripped Us Off for Too Long, The White House (Apr. 14, 2025), https://www.whitehouse.gov/articles/2025/04/the- npr-pbs-grift-has-ripped-us-off-for-too-long).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

131.    Also on April 14, 2025, Jordan Lawlor, a Senate Appropriations staffer, emailed Barsoum to "[t]hank [him] again for the meeting last week." Townsend Decl., Ex. 59 at 3 (CPB_0018106). Lawlor added that she "remember[ed] on the call that [Barsoum] mentioned that CPB has been turning down investments with entities like NPR." *Id.*

> **Defendant's Response**: **Disputed. Mr. Barsoum testified that "she had this understanding that was not correct that, you know, PBS received a blank check and NPR received a blank check .... And not every proposal from NPR, from independent producers, from intermediary organizations or distributors gets accepted." Townsend Decl., Ex. 44 at 136.**

132.    By April 14, 2025, Merritt had discussed with Kerri Hoffman, CEO of PRX, the possibility of using Public Radio International (PRI), a shell nonprofit subsidiary of PRX, as a vehicle for CPB to distribute radio interconnection funding while avoiding "financial entanglements with NPR." Townsend Decl., Ex. 12 at 3 (CPB_0110624).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

133.    On April 15, 2025, Forti (CPB's political consultant), provided recommendations to CPB for how to interact with the Trump Administration to preserve its funding. Townsend Decl., Ex. 60 at 4 (Barsoum Ex. 8). Among other things, Forti recommended that CPB emphasize that it has "already taken steps to address the administration's concerns"-including "[w]ithholding interconnection funds from NPR." *Id.*

**Defendant's Response**: **CPB disputes the first sentence's characterization of the excerpted document.**

134.    On April 16, 2025, Mike Savage, Chair of the D/I Committee, wrote a letter to Merritt on behalf of the D/I Committee stating that "the D/I Committee strongly urges CPB to fund PRSS Interconnection for three years as was approved by the CPB Board, and presented to NPR leadership just a few weeks ago." Townsend Decl, Ex. 61 at 3 (CPB_0305846).

**Defendant's Response**: **Undisputed for purposes of summary judgment that Mr. Savage wrote the email. CPB disputes the characterization of Mr. Savage's statements, as no funding had been approved by the CPB Board at this time.**

135.    In his cover email to Merritt attaching that letter, Savage stated: "CPB has an obligation to fund interconnection for both public radio and public television systems. For decades, NPR has been an excellent manager of the PRSS. The D/I Committee is in full agreement on this fact and believes any change to PRSS management at this time would be counterproductive and harmful to the public radio system." *Id.* at 2.

**Defendant's Response**: **Undisputed for purposes of summary judgment that Mr. Savage wrote this email. CPB disputes the characterizations of Mr. Savage's statements, as CPB had, and has, no obligation to fund NPR or PRSS specifically.**

136.    On April 17, 2025 Merritt sent a response letter to Savage. Townsend Decl., Ex. 62 at 4-5 (CPB_0185383).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

137.    In that response letter, Merritt corrected what she perceived to be one misapprehension in Savage's letter to her, but did not correct the letter's assertion that the "CPB Board" had "approved" interconnection funding for the PRSS in early April 2025. *Id.*

**Defendant's Response**: **Disputed. In explaining the conditions upon which any potential grant agreement would be executed, Ms. Merritt clearly communicated that no agreement had ever been approved. Townsend Decl., Ex. 62 at 4-5 (CPB_0185383).**

138.    On April 18, 2025, CPB sent OMB a response to inquiries OMB had made. Townsend Decl., Ex. 63 (CPB_0230424).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

139.    In response to OMB's request that CPB provide "the amount of funding disbursed directly to NPR in the first two quarters of FY 2025, and planned disbursements for the remainder of the year," CPB responded that "the extensive majority of CPB's direct funding to NPR, is paid to NPR exclusively to support the [PRSS]," and that "CPB is exploring options for the next phase of public radio interconnection funding," including "directing funding to an entity separate from NPR, to manage public radio's interconnection service." *Id.* at 5.

**Defendant's Response**: **CPB disputes the averred fact because various excerpts of a document were aligned out of context in such a manner that inaccurately characterizes the communication.**

140.    On April 21, Slavitt (CPB's General Counsel) sent Allen (NPR's General Counsel) a letter reiterating that CPB "has requested that NPR, as the grantee of interconnection funds and manager and operator of PRSS, submit to CPB by May 9, a plan to make PRSS an entity that is separate from NPR," and that the new entity managing PRSS "must be legally independent of NPR." Townsend Decl., Ex. 64 (Harrison Ex. 12).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

141.    Because the Interconnected Stations have continuously designated NPR to manage and operate the PRSS and have never rescinded that designation, NPR declined to submit a plan to separate PRSS from NPR. Dkt. 38-2 (Merkley Decl.) at 3 3.

**Defendant's Response**: Disputed. NPR's Chief of Staff cannot identify any vote that was ever taken by any radio stations to designate NPR as the entity to receive interconnection funding from CPB, has never seen any evidence of such a vote being taken, has never asked anyone to provide her with such evidence, has never heard of any evidence of such a vote, does not know of the existence of such a document and does not know what any such document said. McClellan Ross Tr. at 188:6-189:21. NPR Distribution's Vice President denies that its PRSS contracts designate NPR (Distribution) as the entity to receive interconnection funds. Townsend Decl., Ex. 6, Munipalla Tr. at 212:13-213:20.

**CPB Launches a "Working Group" and Issues an RFP While the Government Continues to Apply Pressure to CPB**

142.    On April 25, 2025, Levy wrote to Harrison that "CPB needs to decide on next steps re disbursement of public radio interconnection funds" but that "giv[ing it] to NPR" would "[r]aise[] GOP ire and compromise[] efforts in the Se[n]ate." Townsend Decl., Ex. 65 at 3 (Harrison Ex. 15).

**Defendant's Response**: CPB disputes the averred fact because various excerpts of a document were aligned out of context in such a manner that inaccurately characterizes the communication.

143.    On April 28, 2025 the White House's Deputy Director of Presidential Personnel sent an email to three CPB Board members stating that they were immediately terminated. Dkt. 21-2 (SUMF) at 20 § 151.

**Defendant's Response**: Undisputed for purposes of summary judgment.

144.    On April 30, 2025, in email correspondence with Sanchez, Forti explained CPB's "main argument" to the Administration:

What you [CPB] have that people in this fight and similar fights haven't had is a recent track record of sticking up for the Admins viewpoint. …And there's two fights Trump has the full support of

his voters on-the fight against DEI and the fight against the biased media. Therefore, you have to "give" the Admin something so that they can claim a win and then be more willing to comprise (give you some money back). Your win is that you're already cutting off NPR and taking steps to stop biased media coverage. The Admin gets their win and maybe you can get some money back in recission b/c of the importance of what you provide in certain districts.

Townsend Decl., Ex. 66 at 3 (CPB_0211477).

> **Defendant's Response**: CPB disputes the averred fact because various excerpts of a document were aligned out of context in such a manner that inaccurately characterizes the communication. CPB also disputes that the letter represents anything other than Mr. Forti's opinion.

145.    Sanchez responded to Forti's analysis by email that same day: "Thanks for this analysis. I don't think we are comfortable with the approach to publicly state we cut funding to NPR."-to which Forti replied: "if you're not willing to talk about what you have done, I think it's you at least need to acknowledge why you're being cut." *Id.* at 2.

> **Defendant's Response**: CPB disputes the averred fact because various excerpts of a document were aligned out of context in such a manner that inaccurately characterizes the communication. CPB also disputes that the letter represents anything other than Mr. Forti's opinion.

146.    Also on April 30, 2025 Sanchez "looped in" Danica Petroshius, a political consultant at Penn Hill Group, to "get her take" on Forti's analysis. Townsend Decl., Ex. 67 at 2, Barsoum Ex. 11 (CPB_0211493).

> **Defendant's Response**: CPB disputes the averred fact because various excerpts of a document were aligned out of context in such a manner that inaccurately characterizes the communication.

147.    On May 1, 2025, Petroshius responded to Sanchez:

I thnk [sic] what he says below is good- I'm just not clear on the when. I do NOT want you guys to give up and do it all now - like we've done the NPR thing. Then they will take another pound of flesh PBS?

You can say you align and compliy [sic] - but have to leave room for them to negotiate so maybe if we are forced they ONLY trim NPR. If you trim NPR now on your own then they take the next thing. We have to show "pain" if we negotiate even if its [sic] not that big of a pain[.] *Id.* at 2-3.

> **Defendant's Response**: **Undisputed, for purposes of summary judgment, that the language accurately quotes the language of the referenced document. CPB disputes that the letter represents anything other than Ms. Petroshius's opinion.**

148.    That same day, Sanchez forwarded the email thread with Petroshius's response to Merritt and Barsoum. *Id.* at 2.

> **Defendant's Response**: **Undisputed for purposes of summary judgment.**

149.    On May 1, President Trump issued Executive Order 14290, "Ending Taxpayer Subsidization of Biased Media," which purported to order CPB to cease all direct funding to NPR, based on the President's criticism of NPR's journalism. Dkt. 21-2 (SUMF) 21-23, 155-72.

> **Defendant's Response**: **Undisputed for purposes of summary judgment.**

150.    On May 7, Levy wrote to Harrison objecting to a proposal to give interconnection funds to the PRSS Trust. Townsend Decl., Ex. 68 at 2 (Merritt Ex. 19). Levy explained that "giving money to the trust even for a short period of time is giving money to NPR." *Id.*

> **Defendant's Response**: **Undisputed that the language accurately depicts the language of the referenced document.**

151.    The PRSS Trust is a charitable trust that is independent from NPR and owns the physical satellite equipment that the PRSS operates on. Townsend Decl., Ex. 6 (Munipalla Tr. 93:13-94:4).

> **Defendant's Response**: **Undisputed for purposes of summary judgment.**

152.    The beneficiaries of the PRSS Trust are the Interconnected Stations. Townsend Decl., Ex. 6 (Munipalla Tr. 141:14-22.); see also Townsend Decl., Ex. 11 (Merritt Tr. 22:5-7 ("Q.

Who are the beneficiaries of the Trust? A: The public radio stations, and I think, through them, the American People.")).

**Defendant's Response: Undisputed for purposes of summary judgment.**

153.     On May 9, 2025, CPB announced it was convening a "working group" to "establish shared goals and create a vision for forming a new content distribution entity, funded by CPB" in furtherance of CPB's goal "to transition PRSS into an independent entity." Dkt. 40-1 (Slavitt Decl.) at 17 43.

**Defendant's Response: CPB disputes the averred fact because various excerpts of a document were aligned out of context in such a manner that inaccurately characterizes the communication..**

154.     The working group was intended to culminate in the development of a Request for Proposal (RFP) for a "new entity to deliver content distribution services." *Id.* at 18 45.

**Defendant's Response: Undisputed for purposes of summary judgment.**

155.     Two days prior, on May 7, Kathy Merritt had emailed Pat Harrison that "we could … convene a working group as a way to move the idea of an independent PRSS forward. … We would look like we are collaborating to address the issue and not acting unilaterally. This would also take focus away from any push NPR makes to have stations attack CPB for not giving NPR interconnection funds." Townsend Decl., Ex. 68 at 2 (Merritt Ex 19).

**Defendant's Response: CPB disputes the averred fact because various excerpts of a document were aligned out of context in such a manner that inaccurately characterizes the communication. Moreover, Ms. Merritt's email also states: "You probably saw that Katherine Maher told Rima to send her letter to the D/I committee which is just a ridiculous response. She is foisting off responsibility for PRSS to the committee…. I think we could use Rima's offer to convene a working group as a way to move the idea of an independent PRSS forward. It would take the conversation about interconnection away from NPR and give it to the system." Townsend Decl., Ex. 68 at 2 (Merritt Ex 19).**

156.     When CPB convened the working group, it knew that PRX-one of the working group members-"would submit to the RFP" and "would be the obvious organization to do so."

Townsend Decl., Ex. 11 (Merritt Tr. 189:16-190:10). Merritt had previously talked with the head of PRX about PRX or American Public Media (APM) "being the place to put interconnection funds." *Id.*

> **Defendant's Response**: **CPB disputes the averred fact because various excerpts of a document were aligned out of context in such a manner that inaccurately characterizes the communication.**

157.    Also on May 9, 2025, Savage (Chair of the D/I Committee) sent a letter to Merritt objecting to "CPB's demand to remove NPR as the operator of the PRSS." Townsend Decl., Ex. 69 at 2 (CPB_0313534). He explained that the "interconnected stations of the PRSS, not CPB, designate the manager and operator of the PRSS, which CPB acknowledges in the current interconnection grant agreement with NPR, as it has in previous interconnection funding agreements." *Id.*

> **Defendant's Response**: **Undisputed for purposes of summary judgment that Mr. Savage wrote the email. CPB disputes the characterizations within Mr. Savage's email, however, including his legal conclusions as to how interconnection funding operates.**

158.    Savage also wrote in his May 9 letter to Merritt that the "CPB Board approved NPR's proposal for a three-year grant on April 1" before "withdraw[ing] its approval" on April 11- an "about-face" that was "difficult to understand." *Id.* at 2-3.

> **Defendant's Response**: **CPB disputes the averred fact because various excerpts of a document were aligned out of context in such a manner that inaccurately characterizes the communication. CPB disputes Mr. Savage's characterization the CPB's Board had approved NPR's proposal.**

159.    Savage's May 9 letter also stated that the "CPB Board's decision to rescind its commitment to fund the PRSS for three years-and then withhold interconnection funding unless CPB's demand to relocate the PRSS is met-is hurtful and damaging to the 380 public radio stations that count on the PRSS for their live and prerecorded broadcast content." *Id.* at 3.

**Defendant's Response**: **Undisputed for purposes of summary judgment that Mr. Savage's email contains this language. CPB disputes Mr. Savage's characterizations of events, including but not limited to disputing the inference that CPB had approved anything other than negotiations with NPR.**

160.    On May 10, 2025 Barsoum sent Harrison a text from Jack Williams a lobbyist with Alabama Public Television that stated with regard to NPR: "I think we ought to let them go. Cut all their funding and separate from CPB    I suspect there are a number of stations that would affiliate with a more middle of the road network." Townsend Decl., Ex. 70 at 2 (CPB_001624); Townsend Decl., Ex. 11 (Merritt Tr. 139:15-140:02).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

161.    On May 30, 2025 Merritt sent Harrison an email stating that "NPR wants Badri Munipalla, head of PRSS, to be part of the working group on radio content distribution." Townsend Decl., Ex. 20 at 3 (CPB_0001699). Merritt noted that Munipalla would "certainly bring a lot to the table in terms of technical knowledge, but the working group will address building something that NPR has expressly said that don't want to see happen." *Id.* at 3 She added that "he wasn't invited and we get to decide who is in our working group." *Id.* at 2.

**Defendant's Response**: **CPB disputes the averred fact because various excerpts of a document were aligned out of context in such a manner that inaccurately characterizes the communication.**

162.    Merritt's May 30 email to Harrison also stated that if Mr. Munipalla were included, he would "risk[] … disrupting the conversation with explanations of how PRSS already does what we are planning." *Id.* at 4.

**Defendant's Response**: **CPB disputes the averred fact because various excerpts of a document were aligned out of context in such a manner that inaccurately characterizes the communication.**

163.    As of May 31, 2025, Merrit recognized that NPR had, in her words, advanced a "narrative of CPB not funding PRSS because of the EO." *Id.*

**Defendant's Response**: **Undisputed that the words appear in the document referenced. CPB disputes NPR's characterization that Ms. Merritt had "recognized" anything..**

164.    On June 1, 2025, Merritt emailed Harrison and stated, inter alia, that she was "torn about including Badri [Munipalla]" in the working group because "he'll be there representing NPR management." Townsend Decl., Ex. 20 at 2 (CPB_0001698).

**Defendant's Response**: **CPB disputes the averred fact because various excerpts of a document were aligned out of context in such a manner that inaccurately characterizes the communication..**

165.    Harrison responded to Merritt's June 1 email: "I agree   He might be a buzz kill. After first mtg ask him to present npr plan." *Id.*

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

166.    The working group that was selected by CPB included the following executives from organizations who would later collectively submit a response to the RFP on behalf of "Public Media Infrastructure" or "PMI": Rima Dael (National Federation of Community Broadcasters), Bill Davis (Station Resources Group), Kerri Hoffman (PRX), Jean Taylor (American Public Media). Townsend Decl., Ex. 75 at 4 (CPB_0301307).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

167.    On July 12, 2025, Barsoum sent Harrison talking points for a meeting with Senator Capito. Townsend Decl., Ex. 29 (Barsoum Ex. 12). Five out of his seven talking points explicitly referred to NPR. *Id.* at 2-3. Under the bullet point "Avoiding Unintended Harm," Barsoum wrote:

> As the White House said in conversation with CPB, "we don't want to throw the baby out with the bathwater." Reforms or restrictions can address NPR-specific concerns. But full elimination of CPB or public broadcasting funding would irreparably damage a positive legacy that includes Mister Rogers' Neighborhood,

Mountain Stage, and local service from West Virginia Public Broadcasting and Allegheny Public Radio. *Id.* at 3.

**Defendant's Response: Undisputed for purposes of summary judgment.**

168.    On July 12, 2025, Harrison sent an email to Merritt attaching a draft memorandum to the Board regarding CPB's working group and anticipated RFP. Harrison's cover email stated that "IF NPR CANNOT APPLY THEN RESTORE SENTENCE 'INDEPENDENT OF NPR.'" Townsend Decl., Ex. 72 at 2 (CPB_0027994). The draft memorandum attached to that email included a comment from Harrison asking: "Did we put any npr res on the working group? Can npr respond to rfp/" [sic]. *Id.* at 3.

**Defendant's Response: Undisputed for purposes of summary judgment.**

169.    On July 13, 2025 Merritt wrote in an email that "we had planned to post an RFP tomorrow for the new entity for radio interconnection. I don't know if we should move forward with that - maybe it helps us combat the idea that we are catering to NPR." Townsend Decl., Ex. 73 at 2 (Harrison Ex. 16).

**Defendant's Response: CPB disputes the averred fact because it is taken out of context in such a manner that inaccurately characterizes the communication.**

170.    Harrison responded to that July 13 email from Merritt one minute later: "Helps us." *Id.*

**Defendant's Response: Undisputed for purposes of summary judgment.**

171.    In her deposition, Ms. Harrison denied that her email was sent in response to the email that Ms. Merritt had sent one minute prior. Instead, she claimed she was responding referring to a press release about a survey regarding trust in public media. Townsend Decl. Ex. 35 at 214:8-221:16 (Harrison Tr.).

**Defendant's Response: Undisputed for purposes of summary judgment.**

172.    Harrison replied again to that same email thread five minutes later and wrote: "We are not funding npr[;] Making changes to comply with Congress directive economically and efficient[;] How would we communicate to the Hill/key Senators that we are pushing out the RFP?" Townsend Decl., Ex. 73 at 2; Ex. 35 at 193:12-194:22 (Harrison Tr.).

**Defendant's Response: Undisputed for purposes of summary judgment.**

173.    On July 14, 2025, CPB issued a "Request for Proposals for Entity to Manage and Govern Public Radio Content Distribution" (the RFP). Doc. 34-3 (RFP).

**Defendant's Response: Undisputed for purposes of summary judgment.**

174.    The RFP requires a bidder to have "no single represented organization holding majority control." Dkt. 34-3 at 5 (RFP).

**Defendant's Response: Undisputed for purposes of summary judgment**

175.    The RFP also stated that CPB sought a manager of the PRSS who would be "legally and functionally able to receive CPB funding by September 30, 2025." *Id.*

**Defendant's Response: Undisputed for purposes of summary judgment.**

176.    The RFP did not seek proposals to manage television interconnection services or address the merging of interconnection services for television and radio. Its sole focus was radio content distribution. Dkt. 40-18 at 1.

**Defendant's Response: Undisputed for purposes of summary judgment.**

177.    By the time the RFP issued, CPB had already disbursed television interconnection funding to PBS in its role as manager and operator of the television interconnection system. See Townsend Decl., Ex. 74 at 3 (CPB_0074124).

**Defendant's Response: Undisputed for purposes of summary judgment.**

178.    The same day the RFP was issued, Merritt forwarded an email about the RFP to Davis, the head of Station Resource Group (SRG), and one of the participants in the working

group. Townsend Decl., Ex. 75 at 2 (CPB_0301307); *Id.* Ex. 11 at 184:16-186:14 (Merritt Tr. 177:13-15). Merritt wrote to Davis: "I hope you saw this message to the system today with the link to the RFP." Townsend Decl., Ex. 75 at 2 (CPB_0301307).

**Defendant's Response: Undisputed for purposes of summary judgment.**

179.    Davis responded to Merritt the same day to say he had "been paying closer attention to the RFP-which is simultaneously daunting and exhilarating. Should be a fun project to work on." *Id.* He also asked Merritt to "LMK if you've got any questions or concerns for me." *Id.*

**Defendant's Response: Undisputed for purposes of summary judgment.**

180.    The House of Representatives voted to approve the President's request to rescind CPB's funding for Fiscal Years 2026 and 2027 on June 12, 2025. See 171 Cong. Rec. H2796 (daily ed. June 12, 2025).

**Defendant's Response: Undisputed for purposes of summary judgment.**

181.    The Senate voted to rescind CPB's funding on July 17, 2025. See U.S. Senate, Roll Call Vote 119th Cong. 1st Sess. (July 17, 2025), https://www.senate.gov/legislative/LIS/roll_call_votes/vote1191/vote_119_1_00411.htm.

**Defendant's Response: Undisputed for purposes of summary judgment.**

182.    On July 24, 2025, Harrison sent herself an email stating: "Currently we are not allowed to give FUNDING TO NPR OR PBS. . . . HOW DO WE GET THE BYLAWS CHANGED-PROTECT CPB." Townsend Decl., Ex. 76 at 2 (CPB_0010098).

**Defendant's Response: Undisputed for purposes of summary judgment.**

183.    NPR submitted a detailed proposal in response to the RFP in advance of the August 15, 2025 deadline. Doc. 38-2 at 3 15 (Merkley Decl.); see generally Doc. 40-19 (NPR Submission).

**Defendant's Response: Undisputed for purposes of summary judgment that NPR submitted a proposal in advance of the August 15, 2025 deadline. However, CPB disputes NPR's inaccurate characterization of NPR's proposal as "detailed."**

184.    On August 29, Harrison emailed Calvert to state, inter alia, that the President "CALLED CPB 'A MONSTROSITY.'" Townsend Decl., Ex. 77 at 2 (CPB_0026621). Harrison's email to Calvert also said, "THE POINT IS NOT TO LOBBY BUT TO GET THEIR INPUT REGARDING ANY STEPS WE COULD TAKE TO KEEP CPB ALIVE. SUCH AS….AGGRESSIVE ACTION RE NPR-NO FUNDING ANYTHING." *Id.*

**Defendant's Response**: CPB disputes the averred fact because it is taken out of context in such a manner that inaccurately characterizes the communication.

**CPB "Awards" Public Radio Interconnection Funding to "PMI"**

185.    Apart from NPR's response to the RFP, the only other response was submitted by a coalition of five organization-American Public Media Group (APMG), the National Federation of Community Broadcasters (NFCB), New York Public Radio (NYPR), PRX (Public Radio Exchange), and Station Resource Group (SRG)-referring to itself as "Public Media Infrastructure" (PMI). Townsend Decl., Ex. 78 at 2 (CPB_0110026).

**Defendant's Response**: Undisputed for purposes of summary judgment.

186.    At the time of its submission, "PMI" did not exist as a legal entity, rendering it unable meet the RFP's requirement that the recipient be legally eligible to receive funds by the specified date of September 30, 2025. Townsend Decl., Ex. 11 at 205:16-18 (Merritt Tr.); Dkt. 34-3 at 5 (RFP).

**Defendant's Response**: CPB admits, for purposes of summary judgment that "PMI" did not exist as a legal entity at the time of its submission. However, the PMI Coalition most certainly existed as valid group of five (5) well-established public radio entities: American Public Media Group (APMG), the National Federation of Community Broadcasters (NFCB), New York Public Radio (NYPR), the Public Radio Exchange (PRX), and the Station Resource Group (SRG). Merrit Decl. at ¶ 57

187.    PMI's RFP response explained that "PMI will be created by repurposing the nonprofit entity formerly known as Public Radio International (PRI), which has remained in good standing following its acquisition by PRX in 2018. This approach provides immediate legal and

financial governance while ensuring compliance with the RFP and all federal requirements." Townsend Decl., Ex. 80 at 4 (CPB_0078397).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

188.    In its response to the RFP, the PMI coalition asserted that "By September 30, 2025: The PRX board will act to formalize the transition of PRI to PMI consistent with the requirements set forth [in the RFP]." *Id.* at 7.

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

189.    On August 22, 2025, Merritt reached out to PMI representatives to schedule a meeting with CPB's internal RFP review team and representatives of Deloitte Consulting (Deloitte), CPB's consultant, to discuss PMI's response to the RFP. Townsend Decl., Ex. 81 at 2 (CPB_0097035).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

190.    CPB also addressed a number of questions to the PMI coalition members, including Davis, about their response to the RFP. Townsend Decl., Ex. 82 at 2 (CPB_0097069).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

191.    PMI's response to the RFP had not fully addressed these questions; for example, it did not give sufficiently detailed information to satisfy CPB regarding whether the non-existent entity had adequate "financial controls." Townsend Decl., Ex. 11 at 216:22-217:3 (Merritt Tr.).

**Defendant's Response**: **Disputed. Ms. Merritt clearly testified that she "did not think it was fair to say" that "[PMI] did not provide enough detail … in their response to the RFP." When asked why CPB would need to ask follow-up questions, Ms. Merritt responded, "[b]ecause we wanted additional information to what they had provided. I think they had provided responses to the questions in the RFP, and we were just looking for additional information." Townsend Decl., Ex. 11 at 216:22-217:3 (Merritt Tr.).**

192.    On August 27, 2025, CPB and Deloitte met with PMI representatives to discuss the PMI coalition's response to the RFP. Townsend Decl., Ex. 83 at 2 (CPB_0096562); *Id.* Ex. 84 at 2 (CPB_0097123); *Id.* Ex. 85 at 2 (CPB_0115230).

**Defendant's Response: Undisputed for purposes of summary judgment.**

193.    CPB asked the PMI coalition more than 20 additional questions in writing following the submission of the PMI coalition's response to the RFP. Townsend Decl., Ex. 86 at 2-3 (CPB_0066136).

**Defendant's Response: Undisputed for purposes of summary judgment.**

194.    CPB also asked the PMI coalition to change certain aspects of its proposal; for example, the proposal stated that PMI would not hire an executive director until mid-2026, and CPB thought that timeline was too long. Townsend Decl., Ex. 11 at 210:21-211:6 (Merritt Tr.).

**Defendant's Response: Undisputed for purposes of summary judgment.**

195.    CPB did not reach out to NPR with any questions about its RFP response at any point in time, nor did it attempt to schedule a meeting to discuss that RFP response. Townsend Decl., Ex. 11 at 204:1-12 (Merritt Tr.); see also Dkt. 38-3 at 4 17 (Second Munipalla Decl.).

**Defendant's Response: Undisputed for purposes of summary judgment.**

196.    Over the next several weeks, members of CPB management and its consultants with Deloitte who were tasked with evaluating the RFP responses continued to communicate questions, feedback, and suggestions to the PMI coalition to help it supplement its response to the RFP. *See, e.g.*, Townsend Decl., Ex. 82 at 2 (CPB_0097069); *Id.* Ex. 87 (CPB_0096573); *Id.* Ex. 86 (CPB_0066136); *Id.* Ex. 88 (CPB_0097153); *Id.* Ex. 89 at 2 (CPB_0096519); *Id.* Ex. 90 at 2 (CPB_0106461).

**Defendant's Response: Disputed. Any individual who reached out to the PMI coalition was not reaching out to "help" PMI and the evidence cited by NPR does not indicate such. *See, e.g.*, Townsend Decl., Ex. 82 at 2 (CPB_0097069); *Id.* Ex. 87 (CPB_0096573);**

*Id.* **Ex. 86 (CPB_0066136);** *Id.* **Ex. 88 (CPB_0097153);** *Id.* **Ex. 89 at 2 (CPB_0096519);** *Id.* **Ex. 90 at 2 (CPB_0106461).**

197.    On September 5, 2025, after extensive discussions with and input from CPB and Deloitte, PMI delivered a 200-day plan and an 18-month timeline. Townsend Decl., Ex. 91 at 2 (CPB_0066140).

**Defendant's Response: CPB disputes the averred fact, specifically NPR's characterization of such discussions as "extensive."**

198.    As of September 8, 2025, there remained "many open questions for [CPB's review team] around [PMI's] approach." Townsend Decl., Ex. 92 at 2 (CPB_0115374).

**Defendant's Response: Disputed. The questions were not for "CPB's review team." Rather, the document cited by NPR is an email from an individual, Lainie Tompkins, stating that "open questions" arose after Ms. Tompkins reviewed the "initial guideline" and "[put] some of it to paper." Townsend Decl., Ex. 92 at 2 (CPB_0115374).**

199.    On September 12, Deloitte Consulting sent CPB its analysis of the responses to CPB's radio interconnection RFP. Townsend Decl., Ex. 93 at 44 (CPB_0006606).

**Defendant's Response: Undisputed for purposes of summary judgment.**

200.    The first criterion the report considered was "Governance," weighted 25%. Deloitte rated the response prepared by PMI more favorably than NPR's because NPR's was inconsistent with "CPB's requirement for governance without a single organization holding majority control or undue influence." *Id.* at 45.

**Defendant's Response: Undisputed for purposes of summary judgment.**

201.    Deloitte also rated PMI more favorably than NPR on the factors of audience measurement, data and analytics, and sponsorship technology because NPR's "current service" did not include these factors, while PMI had a "plan" to address them. *Id.* at 46-47.

**Defendant's Response: Undisputed for purposes of summary judgment.**

202.    Regarding cost, Deloitte rated NPR and PMI's responses equally, despite PMI's budget proposal being roughly $9 million more than NPR's. *Id.* at 47.

**Defendant's Response: CPB disputes the averred fact because NPR and PMI's responses were not equal in substance related to the cost. Specifically, NPR's proposal did not include costs for "Audience Measurement and Sponsorship Technology solutions." Townsend Decl., Ex. 93 at 47 (CPB_0006606).**

203.    Deloitte concluded that PMI was a "better match to the requirements defined by CPB in the RFP." *Id.* at 44.

**Defendant's Response: Undisputed for purposes of summary judgment.**

204.    On September 15, 2025, Harrison delivered remarks at an executive session of CPB's Board regarding CPB's "options for survival." Townsend Decl., Ex. 94 at 2 (CPB_0167260). She said that "NPR funding must be addressed but CPB will be criticized whether we award it to NPR or return it to the Treasury." *Id.*

**Defendant's Response: Undisputed for purposes of summary judgment.**

205.    Harrison also stated at the September 15 Board meeting: "We currently have an EO prohibiting us from funding PBS and NPR. We are all in serious jeopardy because Congress has abdicated its role, the DOJ and the White House are in charge, and they have shown they will weaponize the executive, judicial and appropriation processes to harass and intimidate." *Id.*

**Defendant's Response: Undisputed for purposes of summary judgment.**

206.    In a draft document that formed the basis for those remarks, Harrison included: "[CPB's] legal counsel's insistence [sic] that [the Executive Order] does not apply to [CPB], or does not apply to the Board, only to management in terms of content, etc., may be technically correct but politically naïve." Townsend Decl., Ex. 95 at 2 (CPB_0006541). Ms. Harrison testified that she said this "[b]ecause we have a thug administration," and even "if you're playing by the

rules . . . who the heck knows what's going to happen?" Townsend Decl., Ex. 35 (Harrison Tr. 251:7-17).

      **Defendant's Response: CPB disputes the averred fact based on NPR's inaccurate characterization of the document as a "draft document that formed the basis for those remarks."**

      207.    No one at the September 15 meeting of CPB's Board raised concerns about the fact that PMI is not yet a legal entity, nor did the Board "develop backup plans" in case PMI cannot "get setup and … implement the plan" it had proposed to CPB. Townsend Decl., Ex. 11 (Merritt Tr. 225:25-227:7).

      **Defendant's Response: Disputed. Ms. Merritt's testimony actually stated that she thought CPB's Board members were "familiar with the partners" and that "[t]he problem CPB face[s] is that CPB will not be in existence …. We are going out of business because we have no funding." Townsend Decl., Ex. 11 (Merritt Tr. 225:25-227:7).**

      208.    On September 15, 2025, CPB's Board unanimously voted to approve the below resolution:

The Board authorizes CPB management to negotiate an agreement with PMI for the procurement and delivery of content distribution services for the public radio system, including content management and distribution for broadcast and digital platforms, data and analytics, emergency alerting, cybersecurity, and technology for a the term of five years a total grant amount not to exceed $57.9 million, subject to available appropriations. Townsend Decl., Ex. 96 at 51.

      **Defendant's Response: Undisputed for purposes of summary judgment.**

      209.    The continuity of radio interconnection services is critical for public radio. Townsend Decl., Ex. 11 (Merritt Tr. 31:4-8).

      **Defendant's Response: Undisputed for purposes of summary judgment.**

      210.    Ms. Merritt testified that if interconnection funds "went back to the Treasury," that would "have a negative impact across stations." *Id.* (Merritt Tr. 71:21-72:2).

**Defendant's Response: Disputed. Ms. Merritt's testimony was exclusively in the context where funds were clawed back from media entities that already received grants. Townsend Decl., Ex. 11 (Merritt Tr. 71-72)**

211.    Ms. Harrison testified that returning interconnection funds to the Treasury "would be a terrible thing." Townsend Decl., Ex. 35 (Harrison Tr. 243:15-17 ). When asked whether CPB would ever do this voluntarily, she answered, "Of course not." *Id.* at 244:11-14.

**Defendant's Response: Undisputed for purposes of summary judgment.**

212.    In a phone call on September 23, Merritt informed Merkley that CPB's Board had approved a decision to "award" the RFP to a "public media infrastructure" coalition made up of other public media organizations, service providers, and associations. Dkt.. 38-2 at 3-4 ( 16) (Merkley Decl.).

**Defendant's Response: Undisputed for purposes of summary judgment.**

213.    Merritt did not provide Merkley a reason for that decision other than that the PMI coalition "had a better response to what we were asking for in the RFP"; she did not identify any deficiencies in NPR's response to the RFP or in its performance as a manager and operator of the PRSS. *Id.* at 4 ( 17).

**Defendant's Response: Undisputed for purposes of summary judgment.**

214.    When the CPB Board voted to "authorize[] CPB management to negotiate an agreement" with the coalition known as "Public Media Infrastructure," CPB's President and CEO publicly announced the next day, before any contract was signed, that CPB was "awarding [a] grant to PMI." Townsend Decl., Ex. 96 at 51 (CPB_0148498).

**Defendant's Response: Disputed. The "awarding" indicates that CPB intended to award the grant to PMI after the required execution of an agreement.**

215.    Even after CPB selected PMI to receive interconnection funding, CPB continued to work with PMI to develop a plan to create a functioning entity that would be eligible to meet the minimum requirements stated in the RFP. Townsend Decl., Ex. 97 at 2 (CPB_0115430)

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

216.    Internal CPB communications and comments reflect ongoing uncertainty and confusion regarding the legal status of PMI, when and how it would become an independent legal entity, and who or what would have authority to authorize various agreements in the interim. See, e.g., *Id.* (acknowledging that "[t]here have been some shifting milestones" regarding PMI's timeline and plans on September 25, 2025); Townsend Decl., Ex. 98 at 2-3 (CPB_0115427) (CPB comments on PMI's 200-Day Plan document such as "Who will be authorized to sign agreements/make employment offers in interim period?"; "When is this happening? How is this happening?"; "WHAT DOES THIS MEAN?"; and "WHEN???????" from September 25, 2025); Townsend Decl., Ex. 99 at 3 (CPB_0115465) (August 28, 2025 email proposing "[j]oint PRX/PRI board meetings to confirm independence pathway" in mid-October; Townsend Decl., Ex. 100 at 2 (CPB_0097540) (discussing whether it would if it "be acceptable for CPB to have SRG be the fiscal agent of PRI DBA PMI" on October 8, 2025).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

217.    As of October 23, 2025, PMI did not exist as a legal entity, did not have a board of directors, did not have an executive director, and did not have a chief technology officer. Townsend Decl., Ex. 11 (Merritt Tr. 205:2-206:1).

**Defendant's Response**: **CPB disputes the averred fact on the basis of the vague term, "legal entity." As NPR's own statement of facts acknowledges, the entity PMI intends to use is already in existence.**

218.    CPB's public announcement of its "award" of interconnection funding to PMI indicates that PMI will be providing "interconnection services to public radio stations"; it does not mention television interconnection. Townsend Decl., Ex. 45 at 2 (Harrison Ex. 17).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

219.    As of April 13, 2025 CPB management believed that a vote would be necessary to change the governance of the PRSS. Townsend Decl., Ex. 11 (Merritt Tr. 153:4-154:12).

**Defendant's Response**: **Disputed. Ms. Merritt testified that if CPB felt it needed to undertake a vote, it would do so. Townsend Decl., Ex. 11 (Merritt Tr. 153:4-154:12).**

220.    As of October 24, CPB has not taken any steps to coordinate a vote to designate an entity other than NPR as the manager and operator of the PRSS. Townsend Decl., Ex. 11 (Merritt Tr. 239:16-240:6).

**Defendant's Response**: **Undisputed for purposes of summary judgment.**

Date: October 27, 2025              Respectfully submitted,

                                  By:  */s/ Jason W. McElroy*
                                  Jason W. McElroy (D.C. Bar No. 502733)
                                  Peter C. Nanov (D.C. Bar No. 230021)
                                  SAUL EWING LLP
                                  1919 Pennsylvania Avenue NW, Suite 550
                                  Washington, D.C. 20006
                                  Tel: (202) 295-6642
                                  jason.mcelroy@saul.com
                                  peter.nanov@saul.com

                                  Jeffrey S. Robbins (Admitted *Pro Hac Vice*)
                                  Joseph D. Lipchitz (Admitted *Pro Hac Vice*)
                                  SAUL EWING LLP
                                  131 Dartmouth St., Suite 501
                                  Boston, MA 02116
                                  Tel:  (617) 912-0941
                                  jeffrey.robbins@saul.com

joseph.lipchitz@saul.com
***Counsel for The Corporation for Public Broadcasting***

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2025, I filed the foregoing **DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL STATEMENT OF MATERIAL FACTS ABOUT WHICH THERE IS NO GENUINE DISPUTE** via the Court's CM/ECF system, which will serve the same on all parties and counsel of record.

*/s/ Jason W. McElroy*
Jason W. McElroy