# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL PUBLIC RADIO, INC., *et al.* <br><br> *Plaintiffs*, <br><br> *v.* <br><br> DONALD J. TRUMP, *et al.*, <br><br> *Defendants*. | Case No. 25-cv-1674-RDM |

## PLAINTIFF NATIONAL PUBLIC RADIO, INC.'S OBJECTIONS TO THE DECLARATION KATHY MERRITT

Pursuant to Rule 56 and 65 of the Federal Rules of Civil Procedure and Rule 7(h) of the Local Civil Rules of the U.S. District Court for the District of Columbia, Plaintiff National Public Radio, Inc. (NPR) hereby submits the following objections to the Declaration of Kathy Merritt (Merritt Declaration), Dkt. 61, filed by Defendant Corporation for Public Broadcasting (CPB).

## GENERAL OBJECTIONS

Kathy Merritt was deposed for more than seven hours on Thursday, October 23, 2025. *See* Declaration of Katie Townsend (Townsend Declaration), Dkt. No. 59-11. On re-direct, CPB's counsel asked Ms. Merritt one substantive question. *Id.* at 63 (Tr. 242:2-243:1).[1] The next day—

---

[1] Referring to Ms. Merritt's April 12, 2025 email in which she reported to other members of CPB's executive team that she "spoke with Ruby" Calvert, who was "adamant that she doesn't want funding to go to NPR," *see* Dkt. 57-2 at 18 (¶ 114); Dkt. 59-51 at 2, CPB's counsel asked: "What is your best memory of what [Ms. Calvert] conveyed to you about why she didn't want the funding to go to NPR?" Ms. Merritt responded: "Well, at this point we were focused on an independent entity. And the board had directed us to talk to NPR about spinning out PRSS to become independent, and Ruby [Calvert] wanted any funding to go to that entity and not to NPR." Dkt. 59-11 at 63 (Tr. 242:17-24).

and more than two hours after NPR filed its Motion for Preliminary Injunction and for Summary Judgment as to Defendant Corporation for Public Broadcasting, Dkt. No. 57[2]—CPB filed a 20-page declaration from Ms. Merritt in a patently improper (and patently transparent) effort to counter "harmful testimony" and distract from the damning documentary evidence now before the Court in the hopes of "defeat[ing] summary judgment" in NPR's favor. *Reetz v. Jackson*, 176 F.R.D. 412, 415 (D.D.C. 1997). That effort should be rejected and the belated Merritt Declaration disregarded in its entirety or, at minimum, in substantial part.

"A deposition is the time for [a party] to make a record capable of surviving summary judgment—not a later filed affidavit." *Cowan v. Prudential Ins. Co. of Am.,* 141 F.3d 751, 756 (7th Cir.1998); *see also Reetz*, 176 F.R.D. at 415 ("Statements in later-filed affidavits or declarations, often prepared by lawyers, are at the very least less reliable than deposition testimony developed through the crucible of cross–examination and a fuller exploration of issues."). For that reason, courts are "extremely wary of allowing a party to significantly supplement, expand, and/or contradict his or her deposition testimony with a *post hoc* affidavit attached to a dispositive motion or an opposition, given the lack of opportunity for effective cross-examination or further investigation by the opposing side." *Globalaw Ltd. v. Carmon & Carmon Law Office*, 452 F.Supp.2d 1, 8 (D.D.C. 2006). That is precisely the sort of "opportunism" CPB engaged in here. *Pyramid Securities Ltd. v. IB Resolution, Inc.,* 924 F.2d 1114, 1124 (D.C. Cir. 1991) (noting that such "opportunism should not readily imperil summary judgment").

---

[2] Pursuant to the expedited discovery and briefing schedule entered by the Court on October 7, 2025, and as discussed at the pre-hearing status conference on October 21, the parties had a 6:00pm deadline on October 24, 2025, to (1) file cross-motions for summary judgment and supporting evidence and (2) serve notice on witnesses for testimony at the October 28, 2025 hearing. CPB filed the Merritt Declaration at 8:23pm, well after NPR had filed its motion, brief, and supporting evidence, and after the deadline for NPR to notice CPB witnesses to appear for the hearing on October 28, 2025.

Taking advantage of the Court's expedited discovery and briefing schedule, CPB has put forward an eleventh-hour declaration from Ms. Merritt that NPR has no practical ability to cross-examine. That declaration consists of claims that are inconsistent with deposition testimony she gave the previous day, are wholly irrelevant to the issues before the Court, and that she lacks the foundation and personal knowledge to aver to. Indeed, if anything, the Merritt Declaration, which repeatedly purports to channel the inner thoughts of CPB Board members, only underlines CPB's effort to lay its actions at the feet of its Board members while simultaneously declining to provide (or cooperate with efforts to obtain) relevant discovery directly from them.

A party "cannot receive [the opposing party's] motion for summary judgment and then go in search of new evidence with which to attack [its] arguments. This contradicts the very notion of a discovery process.'" *Stanazai v. Broadcasting Board of Governors*, 2020 WL 6118183, *5, n.3 (D.D.C. 2020) (quoting *Galvin v. Eli Lilly & Co.*, 488 F.3d 1026, 1029 (D.C. Cir. 2007)). Because the Merritt Declaration was "submitted to withstand a motion for summary judgment" and, at best, "creates only a sham issue of material fact," it should be disregarded in its entirety. *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, 573 F.Supp.2d 152 (D.D.C. 2008).

But even if the Court does not "entirely discount the information provided" in the Merritt Declaration, it can and should, at minimum, disregard its irrelevant and inadmissible testimony and claims that are "so expansive and different from previous deposition testimony that they are contradictory," and apply a "healthy skepticism" to the declaration as a whole. *Globalaw Ltd.*, 452 F.Supp.2d at 8-9. In particular, the Court should disregard statements in the Merritt Declaration in which she purports to remember specific details about CPB Board meetings and statements by CPB Board members. During her deposition, Ms. Merritt repeatedly testified that she was unable to recall details about Board meetings that occurred in April of 2025—far more

recently than some of the meetings she now recounts in the Merritt Declaration. Dkt. 59-11 at 23 (Tr. 85:11-18) ("Q. But you don't recall what anybody said at the meeting, right? A. I don't recall the kind of specific quotes that you're asking me to—to come up with—you know, here we are how many months—later in a meeting that happened in April? I —I don't recall specifically what—what people said at the meeting."); *id.* at 26 (Tr. 96:3-23) ("Q. Who said that? A. You know, again, I'm—I'm not able to give you direct quotes from board members. I just don't have that kind of recall of statements made at the board meetings. . . ."). Ms. Merritt's memory of Board meetings that occurred on April 2, 4, 7, and 9 was particularly hazy: she did not recall who called the meetings, who proposed the resolutions on which the Board voted, whether she herself spoke, or "who specifically said what."[3] The assertions now offered in the Merritt Declaration regarding Board members' statements during this time period therefore contradict her own testimony

---

[3] Townsend Decl., Dkt. 59-11 at 26 (Tr. 97:8-25) (Q. —who is saying these things? I mean, clearly you must have a recollection of who on the board is talking about this, if you're able to tell me what your understanding of the general tenor was. A. Well, I mean, there were five board members, and they all participated in the discussion. And I don't recall who specifically said what. Q. Who came up with the idea that if NPR doesn't comply with CPB's spin-off demand that one-third of the funds for interconnection that Congress has appropriated for public radio interconnection would be withheld? A. I don't recall specifically who put that idea forward."); *see also id.* at 22 (Tr. 78:10-79:14) (Ms. Merritt testifying as to the April 4, 2025 Board meeting that she did not know or did not recall whether the it was entirely executive session; who called the meeting; when that meeting was called); *id.* (Tr. 80:19-81:14) (Ms. Merritt testifying as to the resolution passed by the Board at its April 4, 2025 meeting that she did not know or did not recall who proposed the amended resolution; who advanced it to a vote; who seconded the resolution); *id.* at 25 (Tr. 91:10-21) (Ms. Merritt testifying as to the April 7, 2025 Board meeting that she did not know or did not recall who called that meeting or when it was scheduled); *id.* at 27 (Tr. 100:22-101:20) (Ms. Merritt testifying as to the April 9, 2025 Board meeting that she did not know or did not recall who called for that meeting or what time of day it occurred); *id.* at 22 (Tr. 80:19-81:14) (Ms. Merritt testifying that she did not recall whether she spoke at the April 4th Board meeting); *id.* at 31 (Tr. 117: 21-25) (Ms. Merritt testifying that she did not recall "what [she] would have said" at the April 9th Board meeting); *id.* at 25 (Tr. 90:13-91:3) (Ms. Merritt testifying that she did not recall which Board member was absent from the April 9 Board meeting).

regarding her lack of memory.  Put another way, by her own admission, Ms. Merritt lacks the personal knowledge necessary to testify about these meetings or those that preceded it.

## SPECIFIC OBJECTIONS TO MERRITT DECLARATION

1.    NPR objects to paragraph 9, page 4, of the Merritt Declaration which reads: "On October 8, 2024, I attended a CPB Board meeting during which the board discussed governance, costs, and timelines for transforming public media interconnection, including PRSS distribution. The Deloitte consultant, Mr. Footen, also attended the meeting and 'reported on discussions with public media leaders, noting that there is widespread agreement on the need for change.'  The Board minutes also noted:

> Mr. Footen reported that the design envisions an independent entity to run the distribution services with a mission and governance structure that meets the needs of all parties . . . .  Discussion ensued about the design option, the independent governance entity, and ensuring commitment to project by all involved parties. Mr. Footen reported that the immediate next steps include continuing to brief stakeholders and obtain feedback.

*See* Exhibit B at 2."

**Objections:**  Lack of personal knowledge.  Fed. R. Evid. 602.  Hearsay.  Fed. R. Evid. 801; *see also, e.g., Dávila v. Corporación De P.R. Para La Difusión Pública,* 498 F.3d 9, 17 (1st Cir. 2007) ("It is black-letter law that hearsay evidence cannot be considered on summary judgment").  Sham Declaration Doctrine.  *See St. Paul Mercury Ins. Co*, 573 F.Supp.2d 152 at 160 ("Under the 'sham affidavit' doctrine, 'courts will disregard an offsetting affidavit that is submitted to withstand a motion for summary judgment when the affidavit contradicts prior deposition testimony without adequate explanation.")

Paragraph 9 of the Merritt Declaration consists of hearsay that would be inadmissible at trial.  Fed. R. Civ. P. 56(c).  Further, during her deposition, Ms. Merritt testified repeatedly that

she was unable to independently recall specific details about CPB Board meetings she attended.[4] By her own admission, Ms. Merritt therefore lacks the personal knowledge necessary to testify in detail as to what occurred at this October 8, 2024 meeting of the Board.  Her *post hoc* recollection of the meeting offered after her deposition should not be credited.

2.        NPR objects to paragraph 10, page 4, of the Merritt Declaration which reads: "On November 19, 2024, I attended another CPB Board meeting in which the members of the Board discussed pushback from NPR and PBS regarding an independent entity. As a result, Michael Levy, CPB's then-COO, proposed that 'CPB post a Request for Proposals for new content distribution to increase competition.' *See* Exhibit C at 4."

**Objections:**  Lack of personal knowledge.  Fed. R. Evid. 602.  Hearsay.  Fed. R. Evid. 801; *see also, e.g., Dávila,* 498 F.3d at 17.  Sham Declaration Doctrine.  *See St. Paul Mercury Ins. Co*, 573 F.Supp.2d 152 at 160.

Paragraph 10 of the Merritt Declaration consists of hearsay that would be inadmissible at trial.  Fed. R. Civ. P. 56(c).  Further, Ms. Merritt lacks the personal knowledge to testify in detail as to what occurred at a CPB Board meeting.  She testified repeatedly during her deposition that she was unable to independently recall specific details about CPB Board meetings she attended, fn. 3, *supra*, and that she was unable to independently recall specific statements made by CPB Board members.[5]  By her own admission, Ms. Merritt therefore lacks the personal knowledge

---

[4] *See supra* note 3.

[5] *See, e.g.*, Townsend Decl., Dkt. 59-11 at 23 (Tr. 83:21-85:25) (Q. So that was my—my question was, do you recall anything that any board member said, specifically, about NPR during this April 4th meeting?  A. Well, clearly they talked about NPR.  Q. Clearly, they did. But I'm asking you— A. Mm-hmm. Q. —since you were there, whether you recall anything any individual board member specifically said about NPR?  A. I don't recall specific things that people said—that board members said— Q. You don't recall— A. —at that meeting. Q. —anything Ms. Calvert, for example, said about NPR at that April 4th meeting? A. Well, she, clearly, would have been part of the conversation about NPR and interconnection. Q. Clearly.

necessary to testify in detail as to what occurred at this November 19, 2024 meeting of the Board. Her *post hoc* recollection of the meeting offered after her deposition should not be credited.

3.      NPR objects to paragraph 12, pages 4-5, of the Merritt Declaration which reads in pertinent part:  ". . . since at least 2021, CPB has been told from its independent consultants who review and analyze PRSS grant proposals, that NPR is not transparent in presenting critical information, over-projects budgets by as much as 54%, and does not spend taxpayer funds in the most efficient manner."

**Objections:**  <u>Relevance</u>.  Fed. R. Evid. 401.  <u>Lacks foundation</u>.  Fed. R. Evid. 602. <u>Hearsay</u>.  Fed. R. Evid. 801; *see also, e.g., Dávila,* 498 F.3d at 17.  Paragraph 12 of the Merritt

---

That's why I'm asking whether you remember anything specific that she said? A. And I — I —I don't remember specific quotes about NPR, but, I mean, interconnection was the—I think the— the topic that they were focused on at the meeting, because they realized they wanted to have a— an independent entity that was not dominated by any one organization but that could better represent the breadth of public radio stations moving forward. They felt that was the—the way forward for success to help stations, you know, be able to better serve their—their listeners— their communities. Q. How do you—how do you know that that's what the board felt was the best way forward for success? Did anyone say that? A. Well, I don't think they would have approved a resolution telling us to do that without speaking about it. Q. But you don't recall what anybody said at the meeting, right? A. I don't recall the kind of specific quotes that you're asking me to—to come up with—you know, here we are how many months—later in a meeting that happened in April? I —I don't recall specifically what—what people said at the meeting. Q. You don't recall Mr. Rothman—Tom Rothman saying anything about NPR during this April 4th meeting?  A. You know, again, I — I —I can't come up with specific quotes that—that people said, so I—no, I don't—I don't recall something specific Tom said—Mr. Rothman said."); *id.* at 26 (Tr. 96:3-23) (A. . . . at the same time, the board believed that an independent entity could do a better job in the future of serving all interconnected stations. Q. How do you know the board believed that? A. Because of the tenor of the conversation; the general discussion that they had. Q. Who said that? A. You know, again, I'm—I'm not able to give you direct quotes from board members. I just don't have that kind of recall of statements made at the board meetings. . . ."); *id.* (Tr. 97:8-25) (Q. —who is saying these things? I mean, clearly you must have a recollection of who on the board is talking about this, if you're able to tell me what your understanding of the general tenor was. A. Well, I mean, there were five board members, and they all participated in the discussion. And I don't recall who specifically said what. Q. Who came up with the idea that if NPR doesn't comply with CPB's spin-off demand that one-third of the funds for interconnection that Congress has appropriated for public radio interconnection would be withheld? A. I don't recall specifically who put that idea forward.")

Declaration purports to recount out-of-court statements by individuals other than Ms. Merritt (CPB's "independent consultants"); it consists of hearsay that would be inadmissible at trial. Fed. R. Civ. P. 56(c). Further, the Merritt Declaration's claim that "NPR is not transparent in presenting critical information, over-projects budgets by as much as 54%, and does not spend taxpayer funds in the most efficient manner" lacks foundation.

4.    NPR objects to paragraph 15, page 7, of the Merritt Declaration which reads in pertinent part: ". . . Diversified warned that they '[did] not support NPR's proposals to continue [NPR's satellite receive antenna maintenance strategy] beyond the 2022 budget year. Diversified does not believe that the cost for coordination is reasonable. . . . We have expressed concerns as to whether NPR will be able to test this amount of network hardware in a single year. . . . It should be noted that if NPR follows Diversified's recommendation to outsource file-based program distribution, some of this hardware may not be needed going forward.' [Citation.] Yet again CPB's independent consultant was expressing concerns about the cost projections set forth by NPR in its proposal."

**Objections:** Relevance. Fed. R. Evid. 401. Lacks foundation. Fed. R. Evid. 602. Hearsay. Fed. R. Evid. 801; *see also, e.g., Dávila,* 498 F.3d at 17. Paragraph 15 of the Merritt Declaration consists of a handful of out-of-context, out-of-court statements by individuals other than Ms. Merritt ("CPB's independent consultant"/Diversified) from 2021—hearsay that would be inadmissible at trial. Fed. R. Civ. P. 56(c). Further, this paragraph is irrelevant.

5.    NPR objects to paragraph 17, page 7, of the Merritt Declaration which reads: "Another example of NPR's inability to implement CPB's request for improvements that benefit all public radio stations relates to the Grove content management system (CMS), funded by CPB, which allows local stations to manage their websites and mobile content. While separate from

PRSS, it was intended to serve the same group of public radio stations. CPB and NPR agreed in 2023 that the Grove system would be implemented in two phases—the first phase included rolling out the Grove system to NPR member stations while Phase II, which NPR committed to implementing, included rolling out the Grove system to non-NPR member stations."

**Objections:**  Relevance.  Fed. R. Evid. 401.  Lacks foundation.  Fed. R. Evid. 602. Testimony related to the Grove content management system (CMS), which the Merritt Declaration acknowledges is "separate from PRSS," is irrelevant.  Indeed, CPB appears to agree this testimony is immaterial; it makes no mention of Grove in its Memorandum in Support of its Motion for Summary Judgment, *see generally*, Dkt. 58-1, or in its Statement of Facts Not in Genuine Dispute, *see generally*, Dkt. 58-2.  Further, the Merritt Declaration's claim that it is providing "[a]nother example of NPR's inability to implement CPB's request for improvements" lacks foundation.

6.      NPR objects to paragraph 18, page 7, of the Merritt Declaration which reads: NPR delivered the Grove system to NPR member stations but failed to submit a proposal to CPB for the second phase, which would deliver the technology to non-NPR member radio stations.

**Objections:**  Relevance.  Fed. R. Evid. 401.  Lacks foundation.  Fed. R. Evid. 602. Testimony related to the Grove content management system (CMS), which the Merritt Declaration acknowledges is "separate from PRSS," is irrelevant.  Indeed, CPB appears to agree this testimony is immaterial; it makes no mention of Grove in its Memorandum in Support of its Motion for Summary Judgment, *see generally*, Dkt. 58-1, or in its Statement of Facts Not in Genuine Dispute, *see generally*, Dkt. 58-2.  Further, the Merritt Declaration's claim that NPR "failed to submit a proposal to CPB for the second phase" lacks foundation.

7.    NPR objects to paragraph 19, page 8, of the Merritt Declaration which reads: "On May 28, 2024, Beth Jacobs from CPB emailed Nik Khilnani and Malik Abdullah from NPR about implementing Phase II of the Grove system:

> Mike has been working with your team for 9 months now – since last September. At this point, the draft proposal should be in a well-defined place. It should include all the underlying assumptions to justify your forecasted budget and cost estimates for each area. We need NPR to be at a point where we can review the proposal and start to assess how the overall project scope and cost estimates align; are realistic; and create efficiencies. Please let me know if you/the team will be ready to review the budget with Mike this week and if not, what is preventing this.

*See* Exhibit G."

**Objections:** Relevance.  Fed. R. Evid. 401.  Lacks foundation.  Fed. R. Evid. 602.  Lack of personal knowledge.  Fed. R. Evid. 602.  Hearsay.  Fed. R. Evid. 801; *see also, e.g., Dávila,* 498 F.3d at17.  Paragraph 19 of the Merritt Declaration consists of out-of-court statements by individuals other than Ms. Merritt—hearsay that would be inadmissible at trial.  Fed. R. Civ. P. 56(c).  Further, testimony related to the Grove content management system (CMS), which the Merritt Declaration acknowledges is "separate from PRSS," is irrelevant.  Indeed, CPB appears to agree this testimony is immaterial; it makes no mention of Grove in its Memorandum in Support of its Motion for Summary Judgment, *see generally*, Dkt. 58-1, or in its Statement of Facts Not in Genuine Dispute, *see generally*, Dkt. 58-2.

8.    NPR objects to paragraph 20, page 8, of the Merritt Declaration which reads: "On June 10, 2024, Ms. Jacobs again emailed NPR staff to identify the gaps that CPB identified in NPR's Phase two proposal, noting that:

> **The scope includes the user requirements for the Grove product dev, operations, training, support, etc. for each of the various station segments in Phase 2 such that it will <u>meet the majority of each segment's needs</u> (without over-scoping).** Using your station/user research, NPR should determine the **realistic needs over the project timeframe** of existing Grove stations to drive retention AND future, prospective needs of the majority of prospective non-Grove

stations…. The Phase 2 project needs to have clear, justifiable explanations of the proposed and forecasted fixed vs. variable costs for each of the project areas – product dev, operations, support, etc.).

*See* Exhibit H."

**Objections:** Relevance. Fed. R. Evid. 401. Lacks foundation. Fed. R. Evid. 602. Lack of personal knowledge. Fed. R. Evid. 602. Hearsay. Fed. R. Evid. 801; *see also, e.g., Dávila,* 498 F.3d at17. Paragraph 20 of the Merritt Declaration consists of out-of-court statements by individuals other than Ms. Merritt—hearsay that would be inadmissible at trial. Fed. R. Civ. P. 56(c). Further, testimony related to the Grove content management system (CMS), which the Merritt Declaration acknowledges is "separate from PRSS," is irrelevant. Indeed, CPB appears to agree this testimony is immaterial; it makes no mention of Grove in its Memorandum in Support of its Motion for Summary Judgment, *see generally*, Dkt. 58-1, or in its Statement of Facts Not in Genuine Dispute, *see generally*, Dkt. 58-2. Further, the Merritt Declaration's claim that "CPB identified" purported "gaps" in NPR's Phase two proposal lacks foundation.

9.    NPR objects to paragraph 21, page 8, of the Merritt Declaration which reads: "On November 13, 2024, Flaka Spahiu from CPB emailed Monica Ostolaza from NPR, reminding her that they had a Grove Phase II meeting the following day. However, Monica abruptly canceled the meeting and suggested 'restart[ing] the meetings in 2025.' *See* Exhibit I."

**Objections:** Relevance. Fed. R. Evid. 401. Lacks foundation. Fed. R. Evid. 602. Lack of personal knowledge. Fed. R. Evid. 602. Hearsay. Fed. R. Evid. 801; *see also, e.g., Dávila,* 498 F.3d at17. Paragraph 21 of the Merritt Declaration consists of out-of-court statements by individuals other than Ms. Merritt—hearsay that would be inadmissible at trial. Fed. R. Civ. P. 56(c). Further, testimony related to the Grove content management system (CMS), which the Merritt Declaration acknowledges is "separate from PRSS," is irrelevant. Indeed, CPB appears to

agree this testimony is immaterial; it makes no mention of Grove in its Memorandum in Support

of its Motion for Summary Judgment, *see generally*, Dkt. 58-1, or in its Statement of Facts Not in

Genuine Dispute, *see generally*, Dkt. 58-2.

10.    NPR objects to paragraph 22, pages 8-9, of the Merritt Declaration which reads:

"Frustrated by NPR's delay in providing equal access to non-NPR member stations, Ms. Jacobs

emailed her colleagues to explain the issues with NPR:

> I am attaching an email I sent to NPR last year as an example of how we have
> repeatedly clarified our expectations for Phase 2. This was one of many emails and
> repeated monthly meetings during 2023-2024 where I clearly articulated CPB's
> expectations…. In all of our communications we have emphasized the need to right-
> size Phase 2 **so that it is commensurate with a justifiable and defensible budget
> that we can be comfortable proposing to the CPB Board**. We told NPR it must
> meet the overall goals of providing a valuable CMS to existing and prospective
> stations **without overbuilding it**; with a high retention rate of Phase 1
> users/stations and a solid adoption rate of new Phase 2 cohorts. We reminded NPR
> that they are **NOT building a NEW GROVE CMS in Phase 2 so the product
> development costs should not be as high**.

*See* Exhibit J."

**Objections:**  Relevance.  Fed. R. Evid. 401.  Lacks foundation.  Fed. R. Evid. 602.  Lack

of personal knowledge.  Fed. R. Evid. 602.  Hearsay.  Fed. R. Evid. 801; *see also, e.g., Dávila,*

498 F.3d at17.  Paragraph 22 of the Merritt Declaration consists of out-of-court statements by

individuals other than Ms. Merritt—hearsay that would be inadmissible at trial.  Fed. R. Civ. P.

56(c).  Further, Ms. Merritt lacks personal knowledge as to whether Ms. Jacobs was "frustrated."

Further, testimony related to the Grove content management system (CMS), which the Merritt

Declaration acknowledges is "separate from PRSS," is irrelevant.  Indeed, CPB appears to agree

this testimony is immaterial; it makes no mention of Grove in its Memorandum in Support of its

Motion for Summary Judgment, *see generally*, Dkt. 58-1, or in its Statement of Facts Not in

Genuine Dispute, *see generally*, Dkt. 58-2.

11.     NPR objects to paragraph 23, page 9, of the Merritt Declaration which reads: "In my discussions with CPB management and staff, it became clear that NPR was dragging its feet on a rollout that was heavily emphasized by CPB as critical to the public radio system representing both NPR members and non-NPR members."

**Objections:**  Relevance.  Fed. R. Evid. 401.  Lacks foundation.  Fed. R. Evid. 602.  Lack of personal knowledge.  Fed. R. Evid. 602.  Hearsay.  Fed. R. Evid. 801; *see also, e.g., Dávila,* 498 F.3d at 17.  Paragraph 23 of the Merritt Declaration consists of out-of-court statements by individuals other than Ms. Merritt—hearsay that would be inadmissible at trial.  Fed. R. Civ. P. 56(c). Further, the Merritt Declaration's claim that "NPR was dragging its feet on a rollout that was heavily emphasized by CPB as critical" lacks foundation.  Further, testimony related to the Grove content management system (CMS), which the Merritt Declaration acknowledges is "separate from PRSS," is irrelevant.  Indeed, CPB appears to agree this testimony is immaterial; it makes no mention of Grove in its Memorandum in Support of its Motion for Summary Judgment, *see generally*, Dkt. 58-1, or in its Statement of Facts Not in Genuine Dispute, *see generally*, Dkt. 58-2.

12.     NPR objects to paragraph 24, page 9, of the Merritt Declaration which reads: "This non-performance only underscored CPB's desire for an independent entity for radio interconnection that represented ***all*** public radio stations across the country and which would meet their needs by allowing digital and broadcast content distribution to be integrated."

**Objections:**  Relevance.  Fed. R. Evid. 401.  Lacks foundation.  Fed. R. Evid. 602.  Lack of personal knowledge.  Fed. R. Evid. 602.  The Merritt Declaration's claim of "non-performance" on the part of NPR lacks foundation.  Further, Ms. Merritt lacks personal knowledge to testify as to the "desire" of "CPB" (*i.e.*, CPB's Board).  Further, testimony related to the Grove content

management system (CMS), which the Merritt Declaration acknowledges is "separate from PRSS," is irrelevant. Indeed, CPB appears to agree this testimony is immaterial; it makes no mention of Grove in its Memorandum in Support of its Motion for Summary Judgment, *see generally*, Dkt. 58-1, or in its Statement of Facts Not in Genuine Dispute, *see generally*, Dkt. 58-2.

13.     NPR objects to paragraph 28, page 10, of the Merritt Declaration which reads in pertinent part: "CPB Board members became concerned that DOGE would carry out the same acts of destruction it committed against USIP."

**Objections:** Lack of personal knowledge. Fed. R. Evid. 602. Ms. Merritt lacks personal knowledge to testify as to whether and why CPB Board members were "concerned."

14.     NPR objects to paragraph 30, page 10, of the Merritt Declaration which reads in pertinent part: "Out of urgency and consideration of the rumors of an imminent DOGE takeover, the Board passed a resolution . . . . To the best of my knowledge and belief, NPR has always understood the CPB process."

**Objections:** Lack of personal knowledge. Fed. R. Evid. 602. Sham Declaration Doctrine. *See St. Paul Mercury Ins. Co*, 573 F.Supp.2d 152 at 160.

Ms. Merritt lacks personal knowledge to testify as to why the CPB's Board passed a resolution. To the extent Ms. Merritt is offering testimony as to what occurred at a CPB Board Meeting in April of 2025, she lacks the personal knowledge to do so. Ms. Merritt testified repeatedly during her deposition that she was unable to independently recall specific details about CPB Board meetings she attended in April of 2025, fn. 3, *supra*, and that she was unable to independently recall specific statements made by CPB Board members, fn. 5, *supra*. By her own admission, Ms. Merritt therefore lacks the personal knowledge necessary to testify in detail as to

what occurred at an April 2025 meeting of the Board.  Her *post hoc* recollection offered after her deposition should not be credited

Ms. Merritt further lacks personal knowledge to testify as to what "NPR has always understood . . . ."  A declaration must set out facts that would be admissible in evidence at trial, Fed. R. Civ. P. 56(c)(4).  "[S]worn 'facts'" that are "prefaced with the phrase '[i]t is believed'" or that are averred to be "true 'to the best of [the witness's] knowledge *and belief*" are insufficient for summary judgment purposes. *Josendis v. Wall to Wall Residence Repairs, Inc*., 662 F.3d 1292, 1305-06, 1318 (11th Cir. 2011) (emphasis original).

15.    NPR objects to paragraph 33, page 11 of the Merritt Declaration which reads in pertinent part: "My discussions with CPB Board members and staff reflected a growing sentiment that if CPB's future was uncertain and we were making the last Interconnection grant that CPB would ever issue, we wanted to improve the interconnection system for all stations and position it for future success. . . . ."

**Objections:**  Lack of personal knowledge.  Fed. R. Evid. 602.  Hearsay.  Fed. R. Evid. 801; *see also, e.g., Dávila,* 498 F.3d at 17.  Sham Declaration Doctrine.  *See St. Paul Mercury Ins. Co*, 573 F.Supp.2d 152 at 160.

Paragraph 33 of the Merritt Declaration purports to testify about out-of-court statements by individuals other than Ms. Merritt (CPB Board members and staff)—hearsay that would be inadmissible at trial.  Fed. R. Civ. P. 56(c).  Further, Ms. Merritt lacks personal knowledge to testify as to the "sentiment" of others, including CPB Board members.  To the extent Ms. Merritt is offering testimony as to what occurred at a CPB Board Meeting in April of 2025, she lacks the personal knowledge to do so.  Ms. Merritt testified repeatedly during her deposition that she was unable to independently recall specific details about CPB Board meetings she attended in April of

2025, fn. 3, *supra*, and that she was unable to independently recall specific statements made by CPB Board members, fn. 5, *supra*.  By her own admission, Ms. Merritt therefore lacks the personal knowledge necessary to testify in detail as to what occurred at any April 2025 meeting of the Board.  Her *post hoc* recollection offered after her deposition should not be credited

16.     NPR objects to paragraph 36, page 12 of the Merritt Declaration which reads: "The Board determined that continuing to pass resolutions regarding contingent requirements for any agreement was inefficient and could be carried out more easily through direct negotiations with NPR. In addition, some Board members expressed that there was no need to micromanage the negotiations between NPR and CPB's management, who could simply relay this requirement to NPR during those negotiations. As a result, it passed a resolution rescinding its prior resolutions of April 2, 4, and 7 regarding interconnection funding for NPR. *See* Exhibit N. The Board's direction to CPB management was to negotiate with NPR and seek a plan from NPR as to how it would create and spin-out PRSS as an independent entity with broad-based governance."

**Objections:**  Lacks foundation.  Fed. R. Evid. 602.  Lack of personal knowledge.  Fed. R. Evid. 602.  Hearsay.  Fed. R. Evid. 801; *see also, e.g., Dávila,* 498 F.3d at17.  Sham Declaration Doctrine.  *See St. Paul Mercury Ins. Co*, 573 F.Supp.2d 152 at 160.  Paragraph 36 of the Merritt Declaration purports to testify about out-of-court statements by individuals other than Ms. Merritt (CPB Board members)—hearsay that would be inadmissible at trial.  Fed. R. Civ. P. 56(c).  Further, Ms. Merritt lacks personal knowledge to testify as to the intent of others, including CPB Board members.  Further, the Merritt Declaration's claim that the Board directed CPB management to "negotiate with NPR and seek a plan as to how it would create" an "entity with broad-based governance" lacks foundation.

To the extent Ms. Merritt is offering testimony as to what occurred at a CPB Board Meeting in April of 2025, she lacks the personal knowledge to do so. Ms. Merritt testified repeatedly during her deposition that she was unable to independently recall specific details about CPB Board meetings she attended in April of 2025, fn. 3, *supra*, and that she was unable to independently recall specific statements made by CPB Board members, fn. 5, *supra*. *See, e.g.*, Dkt. 59-11 at 31 (Tr. 117:14-25) (Q. Who on the board proposed this resolution? A. This may have been Tom Rothman. There are times when he just, you know, wants the—wants management to be able to carry out, you know, the direction of the—the board without a—a lot of, again, micromanaging."). By her own admission, Ms. Merritt therefore lacks the personal knowledge necessary to testify in detail as to what occurred at this April 2025 meeting of the Board. Her *post hoc* recollection offered after her deposition should not be credited

17.    NPR objects to paragraph 37, page 12, of the Merritt Declaration which reads: "Based on my knowledge and discussions with the Board in April, no one from the government told CPB to have NPR spin out PRSS as a separate independent entity. Similarly, based on my knowledge and discussions with the Board in April, the decision to negotiate with NPR to spin out PRSS had nothing to do with NPR's news reporting or content generation or CPB trying to curry favor with the Trump Administration."

**Objections:**  Lacks foundation. Fed. R. Evid. 602. Lack of personal knowledge. Fed. R. Evid. 602. Hearsay. Fed. R. Evid. 801; *see also, e.g., Dávila,* 498 F.3d at17. Sham Declaration Doctrine. *See St. Paul Mercury Ins. Co*, 573 F.Supp.2d 152 at 160.

Paragraph 37 of the Merritt Declaration purports to testify about out-of-court statements by individuals other than Ms. Merritt (CPB Board members)—hearsay that would be inadmissible at trial. Fed. R. Civ. P. 56(c). Further, Ms. Merritt lacks personal knowledge to testify as to the

intent of others, including CPB Board members, or what others at CPB were "told." To the extent Ms. Merritt is offering testimony as to what occurred at a CPB Board Meeting in April of 2025, she lacks the personal knowledge to do so. Ms. Merritt testified repeatedly during her deposition that she was unable to independently recall specific details about CPB Board meetings she attended in April of 2025, fn. 3, *supra*, and that she was unable to independently recall specific statements made by CPB Board members, fn. 4, *supra*. By her own admission, Ms. Merritt therefore lacks the personal knowledge necessary to testify in detail as to discussions with the Board in April of 2025. Her *post hoc* recollection offered after her deposition should not be credited.

18.    NPR objects to paragraph 38, page 12-13, of the Merritt Declaration which reads: "On April 11, 2025, I spoke on the phone with Ryan Merkley, NPR's Chief Operating Officer, about the CPB's Board decision to require NPR to provide a plan for spinning off PRSS into an independent entity with governance that would better reflect the breadth of the public radio system. I specifically called him before the weekly G4 meeting—a group that consists of the presidents of NPR, CPB, PBS and APTS. Mr. Merkley responded calmly and told me that NPR was happy to continue doing interconnection and was committed to it. He also said that it would be hard to come up with a plan in 30 days and that there was risk that CPB could go out of business by then based on what NPR was hearing about a potential executive order. However, he expressed that NPR was willing to explore the idea of spinning off NPR. I told him that the CPB Board was taking the time to consider the long-term future of interconnection and how best to support all stations across the public radio landscape."

**Objections:** Lacks foundation. Fed. R. Evid. 602. Lack of personal knowledge. Fed. R. Evid. 602. Hearsay. Fed. R. Evid. 801; *see also, e.g., Dávila,* 498 F.3d at17. Sham Declaration Doctrine. *See St. Paul Mercury Ins. Co*, 573 F.Supp.2d 152 at 160.

Paragraph 38 of the Merritt Declaration purports to testify regarding a telephone call that Ms. Merritt testified about at length in her deposition. *See* Dkt. 59-11 at 32–37 (Tr. 118:14–141:21). To the extent this testimony is drawn from subsequent email communications and/or the talking points she prepared in advance of that telephone call, *see, e.g.*, Dkt. 57-1 at 15–16, which she also testified about at length during her deposition, Dkt. 59-11 at 32–37 (Tr. 118:14-141:21), it is hearsay. To the extent the Merritt Declaration claims that NPR was willing and able to "spin[]" off" the PRSS or that the "CPB Board was taking the time to consider the long-term future of interconnection and how best to support all stations across the public radio landscape" it lacks foundation.

19.     NPR objects to paragraph 39, page 13, of the Merritt Declaration which reads: "On April 12, 2025, I had a phone conversation with Badri Munipalla, the vice-president of distribution at NPR who runs PRSS. Badri told me that NPR leadership viewed the PRSS spinoff as a "non-starter" and that he saw Ms. Maher as someone who always puts NPR first. Ms. Maher was not willing to consider the spinoff and Mr. Munipalla thought she might use it as a springboard to reject federal funding.

**Objections:** Lacks foundation. Fed. R. Evid. 602. Lack of personal knowledge. Fed. R. Evid. 602. Hearsay. Fed. R. Evid. 801; *see also, e.g., Dávila,* 498 F.3d at17. Sham Declaration Doctrine. *See St. Paul Mercury Ins. Co*, 573 F.Supp.2d 152 at 160.

Ms. Merritt testified during her deposition that she had no independent recollection of this April 12, 2025 telephone conversation with Mr. Munipalla. Dkt. 59-11 at 37–38 (Tr. 141:22-144:21). To the extent Ms. Merritt is restating information from her notes of that telephone call, *see id.* at 38 (Tr. 143:10–11, 144:18–21), her testimony is hearsay. To the extent Ms. Merritt is

offering additional testimony about that telephone call her testimony lacks foundation and contradicts her deposition testimony.

20.    NPR objects to paragraph 40, page 13, of the Merritt Declaration which reads: "Importantly, Mr. Munipalla told me that he was under the impression that a 'spinoff' meant that PRSS would have to move out of the NPR building, which he said would be an expensive and timely project. I told him that moving out of the NPR building immediately was not necessary, and that our goal was to have an independent governance and management structure that gave more control to the broad range of radio stations."

**Objections:**  <u>Lacks foundation</u>.  Fed. R. Evid. 602.  <u>Lack of personal knowledge</u>.  Fed. R. Evid. 602.  <u>Hearsay</u>.  Fed. R. Evid. 801; *see also, e.g., Dávila,* 498 F.3d at 17.  <u>Sham Declaration Doctrine</u>.  *See St. Paul Mercury Ins. Co,* 573 F.Supp.2d 152 at 160.

Ms. Merritt testified during her deposition that she had no independent recollection of this April 12, 2025 telephone conversation with Mr. Munipalla.  Dkt. 59-11 at 37–38 (Tr. 141:22-144:21).  To the extent Ms. Merritt is restating information from her notes of that telephone call, *see id.* at 38 (Tr. 143:10–11, 144:18–21), her testimony is hearsay.  To the extent Ms. Merritt is offering additional testimony about that telephone call her testimony lacks foundation and contradicts her deposition testimony.

21.    NPR objects to paragraph 41, pages 13-14, of the Merritt Declaration which reads: "Mr. Munipalla suggested that I reach out to NPR's CFO, Daphne Kwon, who could have a more productive conversation with me about how NPR might be able to structure a new independent entity. Mr. Munipalla even recommended that a PRSS spinoff might copy the structure of National Public Media, a corporate sponsorship organization jointly owned by NPR, PBS, and GBH."

**Objections:** Lacks foundation. Fed. R. Evid. 602. Lack of personal knowledge. Fed. R. Evid. 602. Hearsay. Fed. R. Evid. 801; *see also, e.g., Dávila,* 498 F.3d at 17. Sham Declaration Doctrine. *See St. Paul Mercury Ins. Co*, 573 F.Supp.2d 152 at 160.

Ms. Merritt testified during her deposition that she had no independent recollection of this April 12, 2025 telephone conversation with Mr. Munipalla. Dkt. 59-11 at 37–38 (Tr. 141:22–144:21). To the extent Ms. Merritt is restating information from her notes of that telephone call, *see id.* at 38 (Tr. 143:10–11, 144:18–21), her testimony is hearsay. To the extent Ms. Merritt is offering additional testimony about that telephone call her testimony lacks foundation and contradicts her deposition testimony.

22.    NPR objects to paragraph 44, page 15, of the Merritt Declaration which reads: "NPR declined to negotiate with CPB around creating a separate independent entity, as requested by CPB."

**Objections:** Lacks foundation. Fed. R. Evid. 602. The Merritt Declaration's claims that CPB sought to "negotiate" with NPR and only "requested" that NPR spin out the PRSS as a "separate independent entity" lacks foundation.

23.    NPR objects to paragraph 45, page 15, of the Merritt Declaration which reads: "CPB's request that NPR negotiate around a plan to spin out PRSS into a separate independent entity that NPR could participate in, but that neither it nor any one public media entity would be allowed to dominate, had nothing to do with NPR's editorial content or political views. At no time did I, or to my knowledge, any CPB Board member or employee, receive any direction, suggestion, or pressure from the Executive Office of the President, the Department of Government Efficiency, or any other governmental entity to have CPB request that NPR spin out PRSS as a separate independent entity with broad-based governance across the public radio spectrum. This was CPB's

decision, as the steward of federally appropriated funds, to improve the interconnection system for all stations and position it for future success."

**Objections:** Lacks foundation. Fed. R. Evid. 602. Lack of personal knowledge. Fed. R. Evid. 602. Sham Declaration Doctrine. *See St. Paul Mercury Ins. Co*, 573 F.Supp.2d 152 at 160.

Ms. Merritt lacks personal knowledge to testify as to the intent of others, including CPB Board members, and lacks personal knowledge with respect to whether any CPB Board member or employee, "received any direction, suggestion, or pressure" from any "governmental entity." To the extent Ms. Merritt is offering additional testimony about Board meetings that occurred in April 2025, her testimony contradicts her deposition testimony in which she claimed not to remember specifics from those meetings. By her own admission, Ms. Merritt lacks the personal knowledge necessary to testify in detail as to what occurred at any April 2025 meeting of the Board. Her *post hoc* recollection offered after her deposition should not be credited. Further, the Merritt Declaration's claims that CPB sought to "negotiate" with NPR, only "requested" that NPR "spin out the PRSS as a separate independent entity[,]" and sought "broad-based governance across the public radio spectrum" lack foundation.

24.     NPR objects to paragraph 51, page 17, of the Merritt Declaration which reads in pertinent part: ". . . .  CPB has not followed the May 1st EO . . . ."

**Objections:** Lacks foundation. Fed. R. Evid. 602. Lack of personal knowledge. Fed. R. Evid. 602. Sham Declaration Doctrine. *See St. Paul Mercury Ins. Co*, 573 F.Supp.2d 152 at 160.

Ms. Merritt lacks personal knowledge to testify as to the intent of others, including CPB Board members. The Merritt Declaration's claims that "CPB has not followed the May 1st EO" is argumentative and lacks foundation.

25.    NPR objects to paragraph 52, page 17, of the Merritt Declaration which reads in pertinent part:  "On May 9, 2025, CPB issued a letter to NPR and stakeholders across the public media system (including radio stations that were members and non-members of NPR) about its desire to shift the management of the interconnection system to an independent entity and inviting NPR's board members and public media stations to participate in a working group . . . ."

**Objections:**  Lacks foundation.  Fed. R. Evid. 602.  Hearsay.  Fed. R. Evid. 801; *see also, e.g., Dávila,* 498 F.3d at17.   Sham Declaration Doctrine.  *See St. Paul Mercury Ins. Co*, 573 F.Supp.2d 152 at 160.

Paragraph 52 of the Merritt Declaration consists of hearsay that would be inadmissible at trial.  Fed. R. Civ. P. 56(c).  Further, to the extent the Merritt Declaration's claim that CPB "invit[ed] NPR's board members and public media stations to participate" suggests an open "working group" it lacks foundation.  Ms. Merritt testified in her deposition that CPB selected the members of its "working group" and deliberately excluded Mr. Munipalla from that "working group" despite requests that he participate.  Dkt. 59-11 at 45–48 (Tr. 171:23-182:7).

26.    NPR objects to paragraph 54, page 18, of the Merritt Declaration which reads: "On July 9, 2025, CPB met with NPR's Chief Operating Officer, Ryan Merkley, to inform him that CPB was moving forward with its open competitive bid process for the Interconnection system. In stark contrast to contending that CPB was somehow not authorized to engage in this process, Mr. Merkley asked to see an advance copy of the Request for Proposals that CPB would be posting that Monday. CPB declined this request."

**Objections:**  Relevance.  Fed. R. Evid. 401.  Lacks foundation.  Fed. R. Evid. 602.  The Merritt Declaration's claim that CPB conducted an "open competitive bid process" lacks foundation.  The remainder of this paragraph is irrelevant.

27.     NPR objects to paragraph 56, page 19, of the Merritt Declaration which reads in pertinent part:  "Nowhere in the NPR Submission did it claim that it was somehow automatically entitled to an award from CPB, or that it was providing its submission "under a reservation of rights," or contending in any way that CPB's competitive bid process was somehow "retaliatory." In stark contrast to what NPR now contends . . . ."

**Objections:**  Relevance.  Fed. R. Evid. 401.  Lacks foundation.  Fed. R. Evid. 602.  The Merritt Declaration's claim that CPB conducted a "competitive bid process" lacks foundation.  The remainder of this paragraph is irrelevant.

28.     NPR objects to paragraph 59, page 20, of the Merritt Declaration which reads in pertinent part:  "In evaluating the competing bid submissions, NPR's submission was nonresponsive to the RFP in numerous ways. . . . Deloitte was clear:

> PMI's approach to the RFP response was found to better match CPB's vision for a selected entity to continue and evolve public radio services for the entire system.

*See* Exhibit X at 1."

**Objections:**  Lacks foundation.  Fed. R. Evid. 602.  Hearsay.  Fed. R. Evid. 801; *see also, e.g., Dávila,* 498 F.3d at 17.  Sham Declaration Doctrine.  *See St. Paul Mercury Ins. Co*, 573 F.Supp.2d 152 at 160.

Paragraph 59 of the Merritt Declaration contains hearsay that would be inadmissible at trial.  Fed. R. Civ. P. 56(c).  The Merritt Declaration's claim that NPR's submission was "nonresponsive to the RFP in numerous ways" lacks foundation.  Further, to the extent paragraph 59 of the Merritt Declaration asserts that CPB undertook a "com[petive] bid" process it lacks foundation.

October 27, 2025

Respectfully submitted,

*/s/ Miguel A. Estrada*

Miguel A. Estrada (D.D.C. Bar No. 456289)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
(202) 955-8500
MEstrada@gibsondunn.com

Theodore J. Boutrous, Jr. (D.D.C. Bar No.
420440)
Katie Townsend (D.D.C. Bar No. 1026115)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000
T Boutrous@gibsondunn.com
KTownsend@gibsondunn.com

Elizabeth A. Allen (*Admitted Pro Hac Vice*)
NATIONAL PUBLIC RADIO, INC.
1111 North Capitol Street, NE
Washington, D.C. 20002
(202) 513-2000
EAAllen@npr.org

*Counsel for Plaintiff*
*National Public Radio, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2025, I electronically filed the foregoing Motion and all supporting documents with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system, which will serve a copy of the same on the counsel of record.

Respectfully submitted,

*/s/ Miguel A. Estrada*