IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL PUBLIC RADIO, INC., *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States *et al.*,<br><br>*Defendants.* | Case No. 1:25-cv-01674-RDM |

### RESPONSE TO PLAINTIFFS' SUPPLEMENTAL DECLARATIONS

Pursuant to this Court's December 2, 2025 Minute Order, Defendants respectfully submit the following response to Plaintiffs' supplemental declarations.

Plaintiffs' supplemental declarations cannot salvage their otherwise moot or unripe challenges to Executive Order No. 14290, "Ending Taxpayer Subsidization of Biased Media." To start, the declarations postdate the stipulation of dismissal of the claims brought by National Public Radio, Inc. (NPR) against the Corporation for Public Broadcasting (CPB), which unequivocally states that CPB "will not implement or enforce the Executive Order." *See* Joint Stip. of Dismissal of Certain Claims, ECF No. 77 at 3. But Plaintiffs do not address the implications of that stipulation, and therefore provide no basis to conclude that CPB will imminently enforce the Executive Order notwithstanding its representations to the contrary. Accordingly, any opinion that this Court issues concerning Section 2 of the Executive Order—which is exclusively directed toward CPB—would have no legal effect. For that reason, Plaintiffs claims concerning Section 2 are moot.

1

Plaintiffs' supplemental declarations are similarly unable to create a live case or controversy as to the remaining sections of the challenged Executive Order. Each declaration states in a conclusory manner that the Executive Order causes present or imminent harm by seeking to dictate Plaintiffs' editorial choices. But any harm that Plaintiffs suffer is a result of their own actions to surrender control over those editorial choices because the Executive Order provides neither a means by which any federal agency may control Plaintiffs' programming, nor any imminent threat of harm sufficient to justify a change in Plaintiffs' programming. Indeed, Plaintiffs' own testimony refutes their claim that the Executive Branch will disfavor Plaintiffs because of their past association with NPR: one Plaintiff testifies that it received notice of an award of $333,897 nearly five months *after* the Executive Order issued and nearly four months *after* that Plaintiff brought this suit. Accordingly, Plaintiffs' claims as to Section 3 of the Executive Order must await an adverse agency action that causes actual, present harm. Until then, those claims remain unripe.

## LEGAL STANDARDS

A plaintiff bears the burden of demonstrating that the court has subject-matter jurisdiction over the case. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). If the plaintiff fails to carry that burden at any time, the court must dismiss the action, including at the summary judgment stage. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Auster v. Ghana Airways Ltd.*, 514 F.3d 44, 48 (D.C. Cir. 2008) ("When a court lacks subject matter jurisdiction, it must dismiss the case and not grant summary judgment.").

One element of subject-matter jurisdiction is mootness. *See, e.g.*, *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 79 (2013). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no

longer proceed and must be dismissed as moot." *Id.* at 72 (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990)). "The rule against deciding moot cases forbids federal courts from . . . 'deciding questions that cannot affect the rights of litigants in the case before them." *Hall v. CIA*, 437 F.3d 94, 99 (D.C. Cir. 2006) (quoting *Pharmachemie B.V. v. Barr Laboratories, Inc.*, 276 F.3d 627, 631 (D.C. Cir. 2002)). And mootness, like standing, must be assessed "independently [for] each form of relief sought." *McBryde v. Comm. to Rev. Cir. Council Conduct & Disability Ords. of the Jud. Conf. of the U.S.*, 264 F.3d 52, 55 (D.C. Cir. 2001).

Likewise, Article III permits the Court to adjudicate only those claims that are ripe for review. *See Texas v. United States*, 523 U.S. 296, 300–01 (1998) (ripeness "requir[es] us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967)). Ripeness requires that an alleged injury be "certainly impending." *Chlorine Inst., Inc. v. Fed. R.R. Admin.*, 718 F.3d 922, 927 (D.C. Cir. 2013). And a claim is not ripe if it is "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 592 U.S. 125, 131 (2020).

## ARGUMENT

None of the five asserted injuries in Plaintiffs' supplemental declarations creates a live case or controversy.

*First*, each declaration repeats in a conclusory manner that the Executive Order "on its face continues to infringe on" each station's "editorial and journalistic independence" because it "seeks to dictate [that station's] editorial choices." *See* Supp. Graham Decl., ECF No. 78-2 ¶ 8; Supp. Richardson Decl., ECF No. 78-3 ¶ 8; Supp. Vanderwilt Decl., ECF No. 78-4 ¶ 8. But the Executive Order has no bearing on the editorial choices of private news stations—Plaintiffs remain free to make whatever editorial choices they wish. Insofar as Plaintiffs intend to allege that they have

3

surrendered control of their editorial choices based on the fear of consequences threatened by agencies or CPB enforcing the Executive Order, this asserted injury rises and falls with Plaintiffs' ability to show that those consequences are "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013); *see also id.* (parties "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending").[1] And as explained *infra*, Plaintiffs are unable to establish any such impending harm.

*Second*, each declaration alleges that Plaintiffs "continue[] to be impacted by the Order's chilling effects," because the "Order sends a clear message that the government disapproves of NPR and will take aggressive measures to retaliate against local radio stations that choose[] to associate with NPR and air NPR programming." Supp. Graham Decl. ¶ 9; Supp. Richardson Decl. ¶ 9; Supp. Vanderwilt Decl. ¶ 9. But the Executive Order has nothing to do with the programming that local radio stations air, and Plaintiffs offer no basis to conclude that any federal entity intends to retaliate against local stations for their programming decisions. To the contrary, Plaintiffs' own supplemental declarations disprove that assertion. The Executive Director of KUTE Inc. testifies that one Plaintiff station (KSUT) obtained $333,897 in funding from the Bureau of Indian Affairs on September 26, 2025. *See* Supp. Graham Decl. ¶ 10. Plaintiffs cannot credibly claim their past association with NPR exposes them to retaliation when one Plaintiff received a significant grant nearly five months after the President issued the Executive Order and four months after that

---

[1] Although *Clapper* addressed Article III issues in terms of standing, standing and mootness are closely linked, as the "requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)). While the Supreme Court later clarified that that characterization of mootness "is not comprehensive," the circumstances in which it does not obtain—for example, where "a defendant claim[s] that its voluntary compliance moots a case"—are not present here. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

Plaintiff brought this suit. On this record, then, Plaintiffs' conclusory allegations "of a subjective chill are not an adequate substitute for a claim of a specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972).

*Third*, Plaintiffs claim that they are afraid to use the funding that they have received from CPB or an Executive Branch agency to license NPR programming. Supp. Graham Decl. ¶¶ 10-12; Supp. Richardson Decl. ¶¶ 10-12; Supp. Vanderwilt Decl. ¶¶ 10-12. But this theory of injury requires that Plaintiffs plausibly allege that there exists some mechanism by which CPB or an Executive Branch agency could cause harm to Plaintiffs for licensing NPR programs. The Executive Order provides no such mechanism: it does not contemplate either the CPB or any Executive Branch agency clawing back funds that were already distributed, and Plaintiffs identify no other plausible means by which the Executive Order could be implemented in a manner that could cause these Plaintiffs harm for licensing NPR programs.

Indeed, Plaintiffs' asserted fear of clawed-back funding is particularly far-fetched in the case of CPB, which stipulated before this very Court that "it will not implement or enforce the Executive Order unless and until it is ordered or required to do so by a court of competent jurisdiction," *see* Joint Stip. Of Dismissal at 3, and is winding down its operations, *see* CPB, *Corporation for Public Broadcasting Addresses Operations Following Loss of Federal Funding*, Aug. 1, 2025, available at: https://cpb.org/pressroom/corporation-public-broadcasting-addresses-operations-following-loss-federal-funding. Plaintiffs theorize that Congress may again "appropriate[] additional funding to CPB for local public radio stations" at some point in the future, *see, e.g.*, Richardson Decl. ¶ 11, but this speculation about the actions of third parties not before the Court is insufficient to maintain an Article III case or controversy. *See Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc) ("Even where litigation poses a live controversy

5

when filed, the doctrine [of mootness] requires a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'") (quoting *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir. 1990)).

*Fourth*, Plaintiffs hypothesize that other agencies may "wield their regulatory authority to retaliate against" them "for using federal funds" to license NPR contact, such as through "tax audits" or "revok[ing]" a "broadcast license." Supp. Graham Decl. ¶ 15; Supp. Vanderwilt Decl. ¶ 12. But the Executive Order does not contemplate the use of regulatory authority against private radio stations, and any harm associated with the use of such authority would therefore not be traceable to the Executive Order. More fundamentally, the use of such regulatory authority is purely hypothetical, and therefore insufficient to maintain an active case or controversy, *see Clarke*, 915 F.3d at 701.

*Fifth*, Plaintiffs claim that they will be unable to apply for or receive other sources of federal funding "on equal terms with non-NPR Member stations" because "[a]gencies would know that" NPR Member stations "carry content that is officially disfavored by the Administration." Supp. Graham Decl. ¶ 18; Supp. Richardson Decl. ¶ 18; Supp. Vanderwilt Decl. ¶ 16. But that, too, is pure speculation refuted by the record. As explained *supra*, at least one Plaintiff received significant funding from a federal agency months *after* this suit was brought. In any event, adjudication of Plaintiffs' claims pertaining to speculative future actions that may be taken by federal agencies must await those actions—until then, Plaintiffs' claims are unripe. *See Trump v. New York*, 592 U.S. 125, 131 (2020) (claim is not ripe if it is "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all'").

6

Dated: December 4, 2025                                  Respectfully submitted,

                                                         BRETT A. SHUMATE
                                                         Assistant Attorney General

                                                         YAAKOV M. ROTH
                                                         Principal Assistant Attorney General
                                                         Civil Division

                                                         ERIC HAMILTON
                                                         Deputy Assistant Attorney General

                                                         SEAN SKEDZIELEWSKI
                                                         Counsel to the Assistant Attorney General

                                                         JOSEPH E. BORSON
                                                         Assistant Branch Director

                                                         */s/ Alexander W. Resar*
                                                         ALEXANDER W. RESAR
                                                         Trial Attorney
                                                         United States Department of Justice
                                                         Civil Division, Federal Programs Branch
                                                         1100 L Street NW
                                                         Washington, DC 20530
                                                         Tel: (202) 616-8188
                                                         Email: alexander.w.resar@usdoj.gov

                                                         *Counsel for the Federal Defendants*